Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,*
*Celsius SPV Investors, LP, and Celsius*
*New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Community First Partners, LLC, Celsius SPV Investors,

LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "Series B

Preferred Holders"), as beneficial holders, or investment advisors or managers of beneficial

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

holders, of Series B Preferred Shares issued by Celsius Network Limited, hereby appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 158 and the Federal Rules of Bankruptcy Procedure 8001-8005, from the United States Bankruptcy Court for the Southern District of New York's April 18, 2023 *Order Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert Non-Contract Claims on Behalf of Account Holders* [Dkt. No. 2496] (the "Order").

A copy of the Order appealed from is attached hereto as **Exhibit A**.  A copy of the April 18, 2023 transcript and bench ruling, preceding the Order, is attached hereto as **Exhibit B**.

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective counsel are as follows:

Appellants:

> **MILBANK LLP**
> Dennis F. Dunne
> Nelly Almeida
> 55 Hudson Yards
> New York, NY 10001
> Telephone: (212) 530-5000
>
> **MILBANK LLP**
> Andrew M. Leblanc
> Melanie Westover Yanez
> 1850 K Street, NW, Suite 1100
> Washington, DC 20006
> Telephone: (202) 835-7500
>
> *Counsel to Community First Partners, LLC,*
> *Celsius SPV Investors, LP, and*
> *Celsius New SPV Investors, LP*
>
> **JONES DAY**
> Joshua M. Mester
> 555 South Flower Street
> Fiftieth Floor

Los Angeles, CA 90071
Telephone: (213) 489-3939

*Counsel to CDP Investissements Inc.*

Appellees:

> **WHITE & CASE LLP**
> David M. Turetsky
> Kimberly A. Havlin
> Samuel P. Hershey
> 1221 Avenue of the Americas
> New York, NY 10020
> Telephone: (212) 819-8200
>
> **WHITE & CASE LLP**
> Michael C. Andolina
> Gregory F. Pesce
> 111 South Wacker Drive, Suite 5100
> Chicago, IL 60606
> Telephone: (312) 881-5400
>
> **WHITE & CASE LLP**
> Keith H. Wofford
> Southeast Financial Center, Suite 4900
> 200 South Biscayne Blvd.
> Miami, FL 33131
> Telephone: (305) 371-2700
>
> **WHITE & CASE LLP**
> Aaron E. Colodny
> 555 South Flower Street, Suite 2700
> Los Angeles, CA 90071
> Telephone: (213) 620-7700
>
> *Counsel to the Official Committee of*
> *Unsecured Creditors*

Other parties:

> **KIRKLAND & ELLIS LLP**
> Joshua A. Sussberg, P.C.
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: (212) 446-4800
>
> **KIRKLAND & ELLIS LLP**

Patrick J. Nash, Jr., P.C.
Ross M. Kwasteniet, P.C.
Christopher S. Koenig
Dan Latona
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel to the Debtors and*
*Debtors-in-Possession*

**VENABLE LLP**
Jeffrey S. Sabin
Carol Weiner Levy
Arie Peled
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Telephone: (212) 503-0896

**VENABLE LLP**
Andrew J. Currie
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586

*Counsel for Ignat Tuganov*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin
Philip Kherzi
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
Telephone: (212) 262-6700

**LOWENSTEIN SANDLER LLP**
Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500

*Bankruptcy Counsel to the Proposed Lead*
*Plaintiffs and the Proposed Class*

**WILLIAM K. HARRINGTON**
**UNITED STATES TRUSTEE, REGION 2**
U.S. Department of Justice

Office of the United States Trustee
Shara Cornell
Mark Bruh
Brian Masumoto
One Bowling Green
New York, New York 1004
Telephone: (212) 510-0500

Dated: May 2, 2023
      New York, New York


/s/ *Dennis F. Dunne*

Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

- and -

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,*
*Celsius SPV Investors, LP, and Celsius*
*New SPV Investors, LP*

/s/ *Joshua M. Mester*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER GRANTING THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR AUTHORITY TO FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS

Upon the motion [Docket No. 2399] (the "**Motion**")[2] of the Committee for entry of an order (this "**Order**") authorizing the Committee and any specified lead claimant or claimants to file the class claim or other representative action (as appropriate) asserting non-contract claims of account holders against the Debtors, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution and that this matter is a core matter pursuant to 28 U.S.C. § 157; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Motion.

found that the notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having heard and considered any and all objections, reservations of rights, and responsive pleadings filed with respect to the Motion and statements in support thereof; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is granted as set forth in this Order.

2.      Any objections filed with respect to the Motion are overruled with prejudice

3.      Under Bankruptcy Rule 9014(c), Bankruptcy Rule 7023 shall apply in this matter. The Committee and any specified lead claimant or claimants are authorized to file the class claim asserting non-contract claims on behalf of account holders against CNL and any other Debtor. The Committee shall serve this Order and the class claim on account holders by publication on the Committee's case website and by electronic mail using the service list provided by the Debtors' claims and noticing agent.

4.      The Committee is directed to file a motion under Bankruptcy Rule 7023 for certification of the class claim as soon as is practicable after the filing of the Class Claim. The Committee and other parties in interest shall meet and confer on a discovery and briefing schedule with respect to class certification, which schedule shall be subject to approval by this Court. To the extent the Court conducts a hearing on class certification, such hearing shall occur at or before any hearing in connection with confirmation of a proposed chapter 11 plan for the Debtors. For

the avoidance of doubt, litigation regarding class certification shall not preclude or delay any litigation regarding the merits of the class claim.

5.      The Committee shall assert the class claim in concert with a lead claimant(s) who shall be an account holder(s) with amounts in Earn accounts.  The rights of all parties in interest to object to the allowance or certification of the class claim, or to the identity of the parties who will act as class representatives with respect to the class claim, are fully preserved and may be asserted in the claims allowance or certification litigation regarding the class claim.

6.      The Committee and the lead claimant(s) shall evaluate claims for fraud, fraudulent inducement, Ponzi scheme misconduct, negligent misrepresentation, restitution, and rescission as potential class claims.

7.      If a class is certified under Bankruptcy Rule 7023, the Committee shall provide account holders with notice and an opportunity to opt-out of the prosecution, voting, and settlement of the class claim, with such notice and opt-out procedures subject to approval by this Court.

8.      All claimants' rights under Section 1126 of the Bankruptcy Code and Bankruptcy Rule 3018 are preserved.

9.      The class claim shall only assert causes of action against the Debtors.

10.     The Committee shall consult with the Securities Plaintiffs regarding the claims to be asserted in the class claim.

11.     The bar date for claims set forth in the *Notice of Amended Bar Date for Submission of Proofs of Claim* [Dkt. No. 2310] is tolled pending an order of the Court with respect to the certification of the putative class under Bankruptcy Rule 7023.

12.     Nothing in this Order shall preclude the Committee from seeking any other relief or asserting any other claim or cause of action.

13.     The Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation of this Order.


**IT IS SO ORDERED.**

Dated:  April 18, 2023
      New York, New York

**_/s/ Martin Glenn_**
MARTIN GLENN
Chief United States Bankruptcy Judge

# Exhibit B

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9             Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   One Bowling Green

14                   New York, NY  10004

15

16                   April 18, 2023

17                   10:02 AM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  KS

Page 2

1    HEARING re Hearing Using Zoom for Government RE: Debtors'

2    Application for Entry of an Order (I) Authorizing the

3    Retention and Employment of Stout Risius Ross, LLC as

4    Valuation Advisor, Effective as of February 21, 2023,

5    and (II) Granting Related Relief [Docket No. 2335, 2458,

6    2460].

7

8    HEARING re Hearing Using Zoom for Government RE: Joint

9    Motion for Entry of an Order (I) Approving the Settlement By

10   and Among the Debtors, the Committee, and the Withhold Ad

11   Hoc Group and (II) Granting Related Relief. (Doc# 2334)

12

13   HEARING re Hearing Using Zoom for Government RE: Motion for

14   Entry of an Order (I) Approving the Settlement by and

15   Among the Debtors and Odette Wohlman and (II) Granting

16   Related Relief. (Doc# 2331, 2416)

17

18   HEARING re Hearing Using Zoom for Government RE: Series B

19   Preferred Holder's Motion for Entry of an Order Establishing

20   Estimation Procedure for The Intercompany Claim Between

21   Celsius Network LLC and Celsius Network Limited

22   in Furtherance of Formulating The Debtors Plan of

23   Reorganization. (Doc# 2367, 2438, 2471, 2472, 2478, 2480)

24   Hearing Using Zoom for Government RE: Motion of The Official

25   Committee of Unsecured Creditors for Entry of

Page 3

1    an Order (I) Establishing Procedures to Estimate the

2    Intercompany Claim that Celsius Network, LLC has against

3    Celsius Network Limited and (II) Granting Related Relief.

4    (Doc## 2369, 2371, 2438, 2439, 2472, 2473, 2477, 2480)

5

6    HEARING re Hearing Using Zoom for Government RE: Motion of

7    the Official Committee of Unsecured Creditors (I) for

8    Authority to File a Class Claim Asserting Non-Contract

9    Claims on Behalf of Account Holders or (II) to Appoint a

10   Third-Party Fiduciary to Assert a Class Claim on Behalf of

11   Account Holders. (Doc## 2399, 2396, 2400, 2432,

12   2439, 2400, 2439, 2467, 2468, 2474 to 2476, 2482, 2484)

13

14   HEARING re Hearing Using Zoom for Government RE: First

15   Application for Interim Professional Compensation for

16   Kirkland & Ellis LLP and Kirkland & Ellis International LLP,

17   Debtor's Attorney, period: 7/13/2022 to 10/31/2022. (Doc #

18   1721, 1071, 1451, 1705, 1736, 1823, 2387, 2483)

19

20   HEARING re Hearing Using Zoom for Government RE: First

21   Interim Fee Application of Akin Gump Strauss Hauer & Feld

22   LLP as Special Litigation Counsel to the Debtors and Debtors

23   in Possession for Allowance of Compensation for

24   Services Rendered and Reimbursement of Expenses for the

25   Period July 13, 2022 Through and Including October

Page 4

1   31 2022 for Akin Gump Strauss Hauer & Feld LLP, Special

2   Counsel, period: 7/13/2022 to 10/31/2022. (Doc. #

3   1707, 1072, 1407, 1668, 1736, 1823, 2387, 2483)

4

5   HEARING re Hearing Using Zoom for Government RE: First

6   Application for Interim Professional Compensation for

7   Centerview Partners LLC, Other Professional, period:

8   7/13/2022 to 10/31/2022. (Doc. # 1709, 1736, 1823, 2387,

9   2483)

10

11  HEARING re Hearing Using Zoom for Government RE: First

12  Application for Interim Professional Compensation for

13  Alvarez & Marsal North America, LLC, Other Professional,

14  period: 7/14/2022 to 10/31/2022. (Doc # 1710, 1001, 1419,

15  1688, 1736, 1823, 2387, 2483)

16

17  HEARING re Hearing Using Zoom for Government RE: First

18  Interim Fee Application of White & Case LLP for Compensation

19  for Services Rendered and Reimbursement of Expenses as

20  Counsel to the Official Committee of Unsecured

21  Creditors for the Period of July 29, 2022 Through October

22  31, 2022. (Doc # 1715, 1224, 1450, 1635, 1736, 1823,

23  2387, 2483)

24

25

Page 5

1  HEARING re Hearing Using Zoom for Government RE: First

2  Interim Fee Application of M3 Advisory Partners, LP for

3  Compensation for Services Rendered and Reimbursement of

4  Expenses as Counsel to the Official Committee of

5  Unsecured Creditors for the Period of August 1, 2022 Through

6  October 31, 2022. (Doc # 1716, 1287, 1408, 1606,

7  1736, 1823, 2387)

8

9  HEARING re HEARING re Hearing Using Zoom for Government RE:

10  First Interim Fee Application of Elementus Inc. for

11  Compensation for Services Rendered and Reimbursement of

12  Expenses as Blockchain Forensics Advisor to the Official

13  Committee of Unsecured Creditors for the Period of August 1,

14  2022 Through October 31, 2022. (Doc # 1718, 1274, 1275,

15  1374, 1736, 1823, 2387, 2483)

16

17  HEARING re Hearing Using Zoom for Government RE: First

18  Interim Fee Application of Perella Weinberg Partners LP for

19  Compensation for Services Rendered and Reimbursement of

20  Expenses as Counsel to the Official Committee of Unsecured

21  Creditors for the Period of August 2, 2022 Through October

22  31, 2022. (Doc # 1720, 1612, 1736, 1823, 2387, 2483)

23

24

25

Page 6

1    HEARING re Hearing Using Zoom for Government RE: First

2    Interim Fee Application of Huron Consulting Services LLC as

3    Financial Advisor to the Examiner for the Period from

4    October 10, 2022, Through and Including October 31,

5    2022 for Huron Consulting Services LLC, Other Professional,

6    period: 10/10/2022 to 10/31/2022. (Doc # 1719,

7    1685, 1717, 1740, 1736, 1823, 2387, 2483)

8

9    HEARING re Status Conference Using Zoom for Government RE:

10    Debtors' Motion for Entry of an Order (I) Approving the

11    Debtors' Key Employee Incentive Program and (II) Granting

12    Related Relief. (Doc ## 917, 997, 1003, 1114, 1130,

13    1132, 1133, 1140, 1139 to 1144, 1177, 1182, 1200, 1204,

14    1283, 1366, 1694, 1841, 1907, 2055, 2181, 2336, 2337,

15    2339, 2340, 2343, 2395, 2397, 2413, 2401, 2404, 2408 to

16    2411, 2430, 2481)Status Conference Going Forward on

17    4/18/2023 at 10 AM. Hearing will be held on 05/17/2023 at

18    10:00 am

19

20    HEARING re Status Conference RE: Application of Connor Nolan

21    Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for

22    Allowance and Payment of Professional Fees and Expenses

23    Incurred in Making a Substantial Contribution (ECF

24    Doc. # 2045, 2434, 2373, 2374, 2382, 2386, 2387, 2441)

25    Hearing RE: Motion Scheduled on 05/17/2023 at 10:00 am

Page 7

```
 1   A P P E A R A N C E S :

 2

 3   KIRKLAND & ELLIS LLP

 4        Attorneys for the Debtor

 5        300 N La Salle Street

 6        Chicago, IL 60654

 7

 8   BY:  ROSS M. KWASTENIET

 9        PATRICIA WALSH LOUREIRO

10        CHRIS KOENIG

11

12   KIRKLAND & ELLIS LLP

13        Attorneys for the Debtor

14        1301 Pennsylvania Avenue NW

15        Washington, DC 20004

16

17   BY:  LEAH HAMLIN

18

19   KIRKLAND & ELLIS LLP

20        Attorneys for the Debtor

21        601 Lexington Avenue

22        New York, NY 10022

23

24   BY:  ELIZABETH JONES DAY LLP

25        BOB ALLEN
```

Page 8

```
1    JONES DAY LLP

2         Attorneys for CDP Investments, Inc.

3         555 S Flower Street, 50th Floor

4         Los Angeles, CA 90071

5

6    BY:  JOSHUA MESTER

7

8    GODFREY & KAHN S.C.

9         Attorneys for Fee Examiner Christopher Sontchi

10        1 E. Main Street, Suite 500

11        Madison, WI 53711

12

13   BY:  KATHERINE STADLER

14

15   MCCARTER ENGLISH, LLP

16        Attorneys for Ad Hoc Group Of Borrowers

17        245 Park Avenue

18        New York, NY 10167

19

20   BY:  DAVID J. ADLER

21

22

23

24

25
```

Page 9

```
 1    MILBANK, TWEED, HADLEY & MCCLOY LLP

 2         Attorneys for Series B Preferred Holders

 3         1850 K St NW

 4         Washington, DC, DC 20006

 5

 6    BY:  ANDREW LEBLANC

 7         DENNIS DUNNE

 8

 9    Troutman Pepper Hamilton Sanders LLP

10         Attorneys for Ad Hoc Group of Withhold Account Holders

11         4000 Town Center, Suite 1800

12         Southfield, MI 48075

13

14    BY:  DEBORAH KOVSKY-APAP

15

16    TOGUT, SEGAL & SEGAL LLP

17         Attorneys for Ad Hoc Group of Custodial Account Holders

18         One Penn Plaza, Suite 3335

19         New York, NY 10119

20

21    BY:  BRIAN KOTLIAR

22

23

24

25
```

```
 1    VERMONT DEPARTMENT OF FINANCIAL REGULATION

 2         89 Main Street, Third Floor

 3         Montpelier, VT 05620

 4

 5    BY:  JENNIFER ROOD

 6

 7    OFFIT KURMAN

 8         Attorneys for Ad Hoc Group of Earn Account Holders

 9         590 Madison Avenue, 6th floor

10         New York, NY 10022

11

12    BY:  JASON NAGI

13

14    LOWENSTEIN SANDLER LLP

15         Attorneys for Plaintiffs in Securities Class Action

16         One Lowenstein Drive

17         Roseland, NJ 07068

18

19    BY:  ANDREW BEHLMANN

20

21

22

23

24

25
```

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Attorneys for the U.S. Trustee

3        201 Varick Street, Suite 1006

4        New York, NY 10014

5

6   BY:  SHARA CORNELL

7        ANDREA SCHWARTZ

8

9   VENABLE

10        Attorneys for Ignat Tuganov

11        151 W. 42nd Street, 49th Floor

12        New York, NY 10036

13

14   BY:  ARIE PELED

15

16   WHITE & CASE LLP

17        Attorneys for Official Committee of Unsecured Creditors

18        1221 Avenue of the Americas

19        New York, NY 10020

20

21   BY:  DAVID TURETSKY

22        SAMUEL P. HERSHEY

23        ANDREA AMULIC

24

25

Page 12

1    WHITE & CASE LLP

2         Attorneys for Official Committee of Unsecured Creditors

3         555 South Flower Street, Suite 2700

4         Los Angeles, CA 90071

5

6    BY:  AARON COLODNY

7

8    WHITE & CASE LLP

9         Attorneys for Official Committee of Unsecured Creditors

10        111 South Wacker Drive, Suite 5100

11        Chicago, IL 60606

12

13   BY:  GREGORY F. PESCE

14

15   MCELROY DEUTSCH MULVANEY CARPENTER

16        Attorneys for New Jersey Bureau of Securities

17        570 Broad Street

18        Newark, NJ 07102

19

20   By:  JEFFREY BERNSTEIN

21

22

23

24

25

Page 13

1    STOUT

2         Attorneys for the Debtor

3         One South Wacker Drive, 38th Floor

4         Chicago, IL 60606

5

6    BY:  JOEL COHEN

7

8    CHRIS FERRARO, Celsius Network

9    LEVI RACHMAN, PHX Financial, Pro Se Creditor

10   JASON IVENE, Pro Se Creditor

11   IMMANUEL HERRMANN, Pro Se Creditor

12   VICTOR UBIERNA de las Heras, Pro Se Creditor

13   JAMES TURPIN, Pro Se Creditor

14   DANIEL FRISHBERG, Pro Se Creditor

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Thank you very much, and good morning

3    to everybody.  I have the amended agenda in front of me.

4    We'll follow that.  Mr. Kwasteniet, are you going to begin?

5    I see you standing at a podium.

6           MR. KWASTENIET:  Yes, I will.  Good morning, Your

7    Honor.  Can you see and hear me okay?

8           THE COURT:  I can.  Thank you.

9           MR. KWASTENIET:  Great.  Thank you very much, Your

10   Honor.  Last night we filed at Docket 2490 a copy of a

11   presentation that Mr. Ferraro our CEO would like to give the

12   Court this morning to open our proceedings.  So if it's okay

13   with Your Honor, we request that my colleague Mr.

14   Christopher Koenig be given access rights so he can present

15   the presentation on the screen.

16          THE COURT:  That's fine.

17          CLERK:  Yes, (indiscernible).

18          THE COURT:  Okay.  It's on the screen.  Thank you

19   very much, Deanna.  Okay, Mr. Kwasteniet.  Are you going to

20   introduce Mr. Ferraro to do this?

21          MR. KWASTENIET:  Yes, I will, Your Honor.  We --

22   I'm joined on the line today by the Debtor's CEO Mr.

23   Christopher Ferraro.  So Chris, if you can identify yourself

24   and then maybe we'll go through this in a series of

25   questions.

Page 15

1              MR. FERRARO:  Yeah, Chris Ferraro, Interim CEO

2      with the Debtor.

3              THE COURT:  Good morning, Mr. Ferraro.

4              MR. FERRARO:  Good morning, Your Honor.

5              MR. KWASTENIET:  Great.  Thank you.  Mr. Ferraro,

6      can you please tell the Court about the current status of

7      the custody account withdrawal process?

8              MR. FERRARO:  Yes.  Thanks, Ross.  Since February

9      15th when we started the KYC refresh process or custody

10     account withdrawal, 68 percent of the users by count has

11     successfully passed KYC.  Measured in value, those users

12     represent almost 90 percent.  Beginning March 2nd, eligible

13     users that finished the KYC process were allowed to begin

14     custody withdrawals.  As of April 16th, we have completed

15     $32 million of withdrawals or about 65 percent of the

16     distributable value with 17 million remaining to be

17     withdrawn.

18              As expected, we have seen customers with higher

19     balances withdraw first.  Customers who have withdrawn have

20     a balance four times higher than those who have not.  We

21     will continue to provide emails and (indiscernible)

22     messaging to remind eligible customers to start the KYC

23     process and withdraw from the platform.  We've already sent

24     two reminder emails with another round of notifications

25     going out in the next week.

Page 16

1          With respect to the remaining assets in the

2     custody accounts that were not part of the pure custody

3     tranche, on March 21st, the Court approved a settlement

4     among Celsius, the Custody Ad Hoc Group, and the UCC that

5     will return custody assets not currently eligible for

6     withdrawal to users that elect to participate in the

7     settlement.  In addition, pursuant to the order approving

8     the settlement, Celsius is now authorized to return the

9     remaining six percent of each eligible user's distributable

10    custody assets that were originally held back in accordance

11    with the Court's previous order.

12          Celsius filed a revised distribution schedule

13    noting that change yesterday at Docket 2491.  Custody

14    account users who opt into the settlement will receive 72.5

15    percent of their remaining assets in their custody accounts

16    that were not previously authorized for withdrawal less any

17    fees in two different payments.  Eligible custody account

18    holders that would like to opt into the settlement are

19    required to submit an election form to (Indiscernible) no

20    later than April 24th at 5 p.m.  Thus far, 37 percent of

21    eligible users have opted into the settlement representing

22    55 percent of the value.  Now turning to the next slide.

23          MR. KWASTENIET:  All right.  Thanks, Mr. Ferraro.

24    Can you now provide the Court an update on the company's

25    mining operations?

1           MR. FERRARO:  Yes.  We ended March with 45,000

2    rigs deployed.  Since my last update in early February, we

3    executed a new hosting agreement for 45 megawatts or over

4    13,000 machines.  The rigs will be hosted in Hardin,

5    Montana, and we expect that all the rigs will be hashing by

6    early May.  This is the second hosting deal that we have

7    signed since the Core Scientific rejection in early January,

8    and the two deals are for a total of 30,000 rigs.

9           For March, we had an adjusted EBITDA of 900,000

10   down nine percent from February.  Quick reminder that the

11   EBITDA for this business is effectively the pre-tax income

12   adjusted down back to appreciation, and there's a good proxy

13   for cash flow from operations.  The adjusted gross margin

14   was 16 percent in March down 14 percent from February driven

15   by volatile energy costs at proprietary sites, and the 12

16   percent higher network cash rate.

17          The up time, or the percentage of time our

18   machines are (indiscernible) declined to 59 percent due to

19   economic curtailment at our proprietary sites and

20   transformer outages at the Oklahoma City facility.  The

21   average value of mined bit coin increased 7 percent from the

22   previous month to approximately 25,000 in March.

23          Moving to the next slide, which notes a longer

24   trend in the metrics I just discussed, most of the details

25   we just covered, but I did want to point out one item.  On

Page 18

1    the bottom left graph you see the 45,000 rigs deployed at

2    the end of March, which is a sizable increase to the 28,000

3    deployed immediately following, excuse me, the Core

4    Scientific rejection in early January.  With the new hosting

5    agreements, we expect the rigs deployed to increase to

6    58,000 in May and expect 58,000 rigs deployed by the end of

7    June when our last proprietary site in Texas comes online.

8    So we're well on our way to mitigating the impact from the

9    37,000 rigs that were part of the core research.

10              MR. KWASTENIET:  I think we can move onto the next

11   --

12              MR. FERRARO:  Onto the next slide, please.

13              MR. KWASTENIET:  -- to the next slide.  Mr.

14   Ferraro, can you please provide the Court an update on the

15   company's current financial situation?

16              MR. FERRARO:  Yeah.  As a reminder, we started the

17   case with 138 million of cash, and we now have 166 million

18   on hand as of March month end, an increase of 28 million

19   since the petition date.  That's all I have, Your Honor.

20   Sorry I'm losing my voice.  I'm getting a little under the

21   weather.  Thanks for your time today.

22              MR. KWASTENIET:  Great.  So unless (indiscernible)

23   --

24              THE COURT:  Mr. Ferraro, let me ask you a

25   question.  So, you know, the value of bitcoin has increased

1    substantially since the start of the case.  I think it was

2    about 22,000 as I recall when the petition was filed.  As of

3    today, it's a little over 30,000.  How much of the increase

4    of liquidation is attributable to the increase in value of

5    bitcoin?

6          MR. FERRARO:  Your Honor, not very much.  You

7    know, we started the case with, you know, margins that were

8    a little bit healthier to where we are right now.  We had

9    the EBITDA back then of a couple of million a month, and

10   right now it's at about a million a month.  At the very low

11   point of bitcoin prices in December, you know, our EBITDA

12   was effectively zero-ish.  So you can think of the rise in

13   bitcoin as having a favorable impact of about $1 million a

14   month on our cashflows.

15         THE COURT:  All right.  Mr. Kwasteniet, do you

16   want to move on as -- let's move on with the agenda.

17         MR. KWASTENIET:  That's great, Your Honor, but

18   before I get to the rest of the agenda, I just have one

19   other quick update.  It'll just take a minute.

20         THE COURT:  Sure.

21         MR. KWASTENIET:  Your Honor, yesterday was the bid

22   deadline in the Debtor's Stalking Horse sale process, and I

23   wanted to inform Your Honor and the parties listening that

24   the Debtors received bids yesterday from three different

25   parties in addition to the Stalking Horse.  So we have a

Page 20

1    total of four bids that we are now considering.  The Debtors

2    have shared these bids with the Committee, and we will be

3    evaluating the bids and deciding on next steps in the coming

4    days.  So the Stalking Horse process is working as we

5    intended and hoped that it would in terms of generating

6    interest and competition.

7              Your Honor, importantly, these bids are

8    confidential, and it's important that the bids remain

9    confidential at this time while we are going through the

10   negotiation process.  The Debtors have already had

11   conversations with the Committee and will continue to do so

12   about the right place and time and manner to disclose the

13   terms and details of the competing bids.

14             They will not be kept under wraps forever, but for

15   right now while we are negotiating with the parties, it's

16   obviously important that the parties' different bids and

17   positions be known to the Debtors and the Committee, but not

18   known to the other parties.  So hence, the layer of

19   confidentiality that applies at this time.  That's it in

20   terms of the general update, Your Honor, and we're now ready

21   to move into the agenda.

22             THE COURT:  Let me ask a couple of questions that

23   arose from what you've just talked about.  So you had

24   previously filed -- recently filed on the docket a statement

25   explaining the delay in filing a disclosure statement until

1    this bidding process is done in light of additional

2    interested parties.  You've now said there are three

3    additional bids that have been made.  What are you -- what

4    is the Debtor and the Committee contemplating?  Is there

5    going to be a deadline to the bidders for best and final

6    bids?  What's the process going forward?

7              MR. KWASTENIET:  Yes, Your Honor.  So with

8    receiving a very significant volume of materials over the

9    weekend and yesterday from the prospective bidders, we've

10   got a lot of work ahead of us over the next few days to

11   process through the bids, compare them, analyze them.

12   There's a bunch of people who are not on this call this

13   morning because they're focused on working through and

14   summarizing and analyzing the bids.

15             The bids, Your Honor, are not all exactly on fours

16   with each other.  Some of the bids propose different

17   structures.  So it's not clear yet that it's going to make

18   sense to do a traditional auction because, you know, you

19   have some bids that are one structure and others that are

20   another structure, and they don't really compete directly

21   against each other.

22             So but I do expect that as part of the process in

23   the coming days and, you know, probably later this week that

24   we'll be going back to all the parties to try to improve

25   their bids again in furtherance of our goal of making a

Page 22

1    decision as soon as possible.  Your Honor, we've extended

2    the deadline to file the disclosure statement to April the

3    28th.  We're very much hoping to hit that deadline.  There

4    is a possibility, of course, if we end up switching to a

5    different bid or materially change the path forward as a

6    result of the bidding process that we may need additional

7    time to finalize that.

8           But for all the creditors who are listening,

9    shareholders who are listening, all of whom are very

10   interested in as we are in an expeditious resolution of the

11   case, I can assure everybody that the time we're spending

12   right now is very much focused on making sure we have the

13   right -- the best bid to deliver the most value to

14   everybody.

15          So we've not yet decided, Your Honor, on whether

16   we're going to have an auction or further final -- last and

17   final deadline.  If we do, I expect we'll file a subsequent

18   notice on the docket, but we're just -- we're working

19   through and still analyzing how best to proceed in light of

20   the different, you know, style of bids that we've received.

21          THE COURT:  So let me raise another issue, and

22   that is certainly when you got my approval for the breakup

23   and expense reimbursement as revised, before I ruled on

24   that, I gave a deadline to the regulators, state and

25   federal, to advise what their views were.  They all

Page 23

```
1    obviously reserved all their rights, and I certainly fully

2    understand that.  But regulatory compliance is really very

3    important.  And to the extent that either the successful

4    bidder is different than the current one or the structure

5    changes, that could -- conceivably could have an impact on

6    the regulatory issues as well.

7             I do think it's important.  I'm not ordering you

8    do at this point.  I don't know what the structures are, who

9    the bidders are, etcetera, but I really do urge that

10   Debtors' counsel and Committee counsel, before you go live

11   with a selection of a successful bidder that you have

12   further discussions with the Office of the United States

13   Trustee and the federal and state securities regulators.  It

14   would be unfortunate if we wind up with a surprise that you

15   select someone and then there's a whole new round of

16   objections because of the change in structure.

17            You know, I don't -- let me make clear.  I'm not

18   expecting, if there is that discussion with the regulators,

19   that they're going to be bound by what their discussions

20   with you are, but I do think it's important.  I just -- as

21   this goes forward, I want whatever the successful bid is,

22   structure and bidder, actually can move forward to

23   hopefully, you know, voting -- a disclosure statement,

24   voting, and a plan.  So let me leave it at that.  I just --

25   you know, the structure was known.  The Stalking Horse was
```

Page 24

1   known, and that may change for a very good reason.  But let

2   me leave it at that.

3            MR. KWASTENIET:  Thank you, Your Honor.  We very

4   much agree with and appreciate your comments, and we've

5   spent a lot of time.  These bids didn't just come in out of

6   the blue.  We've had many diligence calls with the three

7   parties who submitted bids.  Some more than others.  Some

8   have been involved for longer than others, but certainly

9   regulatory compliance has been something we've spent a lot

10  of time on, and we --

11           THE COURT:  You've cut out, Mr. Kwasteniet.  I

12  can't hear you.

13           MR. KWASTENIET:  Your Honor, can you hear me

14  again?

15           THE COURT:  I can, yes.  Go ahead.

16           MR. KWASTENIET:  Okay.  We got an alert that the

17  system had been muted, so I had to figure out how to unmute.

18           CLERK:  I was trying to mute another party that

19  was speaking and Zoom jumped on me.  My apologies.

20           MR. KWASTENIET:  No problem.  I'll take that as a

21  signal to wrap up my opening remarks.

22           THE COURT:  Go ahead.

23           MR. KWASTENIET:  Your Honor, we have been meeting

24  regularly, almost weekly, with the state and federal

25  regulators.  I believe we have another update call later

1    today, so I can assure you and everybody listening that

2    we're going to be very mindful of any go-forward bid and how

3    it will work from a regulatory standpoint.  That is first

4    and foremost in our minds and is one of the primary criteria

5    that we're using to evaluate.

6             I mean, certainly the value of a bid is important,

7    but the ability to get a bid executed is equally important.

8    And you know, that's something that we're very, very focused

9    on, Your Honor.

10            THE COURT:  All right.  Thank you very much.  All

11   right.  So let's move onto the agenda.  First is the --

12            MR. KWASTENIET:  Your Honor --

13            THE COURT:  Go ahead.

14            MR. KWASTENIET:  Yes.  And I'm going to be

15   yielding the podium to my colleague Ms. Jones for the second

16   item on the agenda, which is the Stout retention.  Your

17   Honor, after the Stout retention, I think it makes sense

18   with Your Honor's permission to maybe handle the fee

19   matters.  It occurs to us that there's a great many

20   professionals on the line, virtually all of whom are billing

21   the estate who are on for the fee matters and who, if we

22   handle the fee -- took the fee issues out of order perhaps

23   after the Stout retention because Stout is also on the line

24   for their retention, and that's uncontested, maybe we pull

25   up the fee matters to then be able to free up and release

1    all the many advisors who are on for their fee hearings.

2            THE COURT:  I'm in agreement.  Go ahead.  Let's

3    deal with Stout first.  Go ahead, Ms. Jones.

4            MS. JONES:  Good morning, Your Honor.  Elizabeth

5    Jones with Kirkland and Ellis on behalf of the Debtors.

6    Your Honor, the next item on the agenda is the Debtor's

7    retention application seeking to employ Stout as the

8    valuation advisor, which was filed at Docket Number 2335.

9    In addition, Your Honor, Mr. Joel Cohen, the managing

10   director of Stout, is on the line.  He provided a

11   declaration both in support of the original application and

12   a supplemental declaration filed at Docket Number 2460.

13           Your Honor, as explained both in the original

14   application and supplemental declaration, the Debtors are

15   seeking to retain Stout to provide specific valuation work

16   related to the Debtors' illiquid crypto and specifically in

17   connection with the valuation that will be provided in the

18   Debtors' disclosure statement.  Given the unique nature of

19   the Debtors' assets, it was necessary to retain a specialist

20   that could handle that type of valuation work.

21           Your Honor, since we filed the application, we had

22   constructive conversations with both the Committee and the

23   U.S. Trustee, and we were able to respond to their questions

24   and resolve any of the concerns both by filing a revised

25   proposed order at Docket Number 2458, and as we further

Page 27

1   explained in the supplemental declaration filed at Docket

2   Number 2460.  Other than that, Your Honor, we received no

3   objections or other questions or informal comments.  So

4   unless Your Honor has any questions, we respectfully request

5   entry of the revised proposed order filed at Docket Number

6   2458.

7              THE COURT:  Thank you, Ms. Jones.  Ms. Schwartz,

8   do you want to say anything on behalf of the U.S. Trustee?

9              MS. SCHWARTZ:  Thank you, Your Honor.  Andrea

10   Schwartz on behalf of the U.S. Trustee.  Good morning,

11   Judge.  I just want to say, Judge, that I'm pinch-hitting

12   today.  Although Ms. Cornell my colleague, and I believe now

13   Mr. Masumoto are on the line, but Ms. Cornell has lost her

14   voice.  So I'm coming in today, so I'm sure you'll give me

15   your indulgences.

16              But with respect to this retention application, we

17   don't have any objection.  As counsel stated, they filed a

18   supplemental declaration.  They took our comments to the

19   proposed form of order.  My only regret is that I don't have

20   a podium and background like that because I feel somewhat

21   casual compared to my counsel.  But we'll have to roll with

22   that for today.  So we have no objection.

23              THE COURT:  Okay.  Thanks very much, Ms. Schwartz.

24   Anybody from the Committee want to speak?

25              MR. PESCE:  No, Your Honor.  Our -- this is

Page 28

1    Gregory Pesce on behalf of the Committee.  We've reviewed

2    the application and we don't have an objection either today.

3              THE COURT:  Okay.  All right.  There are no

4    objections that have been filed, and I -- we've reviewed the

5    retention application.  It's appropriate and it's approved,

6    okay?  Thank you very much.

7              MS. SCHWARTZ:  Thank you, Your Honor.  With that,

8    I will cede the lectern over to Ms. Katherine Stadler as

9    counselor to the Fee Examiner.

10             MS. STADLER:  Thank you.  Good morning --

11             THE COURT:  Ms. Stadler, good morning.

12             MS. STADLER:  Good morning, Your Honor.

13             THE COURT:  Go ahead.

14             MS. STADLER:  Okay.  We are happy to report that

15   the Fee Examiner has reached consensual resolution with 9 of

16   the 11 interim fee applicants.  With the Court's permission,

17   the other three will be adjourned to allow us to continue

18   our discussions with those professionals and hopefully reach

19   consensual resolutions with them as well.

20             I want to note that the applications that are on

21   for hearing today are for the first interim fee period,

22   which ran from the petition date through the end of October

23   2022.  The second interim fee period, November 2022 through

24   February of 2023, is not on the agenda for today.  Those

25   applications were filed last week, and the fee examiner will

Page 29

1   review and report on those consistent with the procedure

2   outlined in the interim compensation order and the fee

3   examiner order.

4          I have reviewed -- we have reviewed the Debtor's

5   UCC responses to the fee objections that are on the record.

6   I just wanted to note that for purposes of the Fee

7   Examiner's reporting, we will be addressing objections as we

8   report and recommend the application.  In other words, the

9   Fee Examiner's recommendation with respect to objections

10  currently on file only relate to the nine applications that

11  are currently recommended for court approval.  They do not

12  relate to any monthly fee application objections that may be

13  out there, or do they relate to any second interim fee

14  applications that may be out there.

15         We also note that the Fee Examiner did not receive

16  service of Mr. Hirschberg's most recent statement on fees.

17  I was able to get that after seeing it on the agenda from

18  Debtors' counsel.  But I would simply ask that anyone filing

19  objections or comments related to fees please copy the Fee

20  Examiner counsel using the contact information in the

21  interim compensation order.

22         We do have one issue that Ms. Schwartz advised us

23  of just a little before the hearing.  She reported that the

24  standard in New York is to continue withholding the 20

25  percent holdback of fees even after entry of an interim

Page 30

```
1    compensation order.  Ms. Schwartz, as she's pinch-hitting,

2    didn't have a chance to review the full record in the

3    Interim Compensation Order.  So rather than have a

4    discussion about that on the record, we're going to wait,

5    submit, and upload the proposed order arising from today's

6    hearing until the U.S. Trustee is comfortable with the way

7    the Interim Compensation Order is worded.  So her rights

8    with respect to that are reserved.

9            THE COURT:  Let me just say that what Ms. Schwartz

10   advised you is correct.  It is our practice in New York,

11   unless there's a specific order releasing part of a

12   holdback, is that the -- you know, the 20 percent holdback

13   continues on during the case.  It's certainly in those

14   instances where I've either reduced it or eliminated it.

15   It's usually where a case is, for all practical purposes,

16   done, you know, where there are no objections, there is a

17   confirmed plan or something.

18            But it wouldn't in my view -- I'll certainly hear

19   argument about it if it comes to that, but it certainly

20   wouldn't be in a case of the stage where this case is.  But

21   again, I'm -- I'll reserve ruling until actually hearing it,

22   but certainly that does remain an issue, and you can

23   continue your discussions with the U.S. Trustee, and we can

24   -- we don't need to have another -- if your position is that

25   you agree with what has been our practice here and are not
```

Page 31

1   seeking to deviate from it, we don't have to have another

2   hearing to do that if, in fact, the issue is whether it'll

3   be reduced or waived as to what's approved.  We'll have to

4   have another hearing, but --

5               MS. SCHWARTZ:  Judge?

6               THE COURT:  Yeah, go ahead, Ms. Schwartz.

7               MS. SCHWARTZ:  Thank you, Your Honor.  Andrea

8   Schwartz for the U.S. Trustee.  I don't think you're going

9   to need another hearing.  I'm fairly confident speaking with

10  Ms. Stadler and Judge Sontchi that we'll get it resolved.

11              THE COURT:  Okay.

12              MS. SCHWARTZ:  I believe that that standard

13  practice was in the first fee order, but there was a revised

14  fee order and somehow somebody missed it --

15              THE COURT:  Okay.

16              MS. SCHWARTZ:  -- you know, going forward.  So I

17  don't think it's a problem then.

18              THE COURT:  Okay.

19              MS. SCHWARTZ:  Each of Ms. Stadler and Judge

20  Sontchi have been very gracious when I called them this

21  morning to advise them.  So -- and the only other thing that

22  I'd say, Your Honor, with respect to all of the fee

23  applications is that the U.S. Trustee is just going to

24  reserve its rights until the finals to the extent we want to

25  file anything.

1          THE COURT:  Sure.  All right.  Mr. Sontchi, do you

2    want to be heard?  First let me say I appreciate -- I have

3    in front of me the Examiner's Summary Report, which is ECF

4    Docket 2387, and I appreciate all the work that's gone into

5    this in reviewing the fee applications.  And I appreciate

6    the cooperation of all of the counsel who've submitted fee

7    applications in working out with the Examiner and his

8    counsel, you know, the issues that have come up.

9          You know, I said before the Fee Examiner was

10   appointed when the issue was presented and it was

11   consensually agreed by the parties, I made the comment that

12   I've never been a giant fan of fee examiners.  In this case,

13   I am.  The volume of fee applications which the Court has

14   reviewed but takes great comfort from the fact that there's

15   a fee examiner who was truly expert in all of this and is

16   able counsel in doing this.  So I'm very appreciative.  Mr.

17   Sontchi, do you want to be heard?

18          MR. SONTCHI:  Well, Your Honor, I was taught very

19   early in my career that when things are going well, shut up.

20   And things couldn't be going better based on your comments.

21   No, I want to just thank Ms. Stadler's team and the

22   incredible amount of work they've done, very sophisticated

23   analysis.  And all the lawyers, even the ones we haven't

24   agreed to go forward with today that we're still in

25   discussions with, they've been extremely cooperative.

1          The information flow has been excellent.  We're

2     just still trying to work through some issues with two of

3     them, and then one of them came in so late we didn't have an

4     opportunity to actually get it done in time.  But for the

5     second and the third, maybe who knows how many more, we will

6     be -- and we've told the parties this, we will be a little

7     tougher, well, maybe quite a bit tougher, on issues about

8     staffing now that the case has settled into more of a normal

9     rhythm.

10          We all know what it's like to file a case.  We all

11     know how chaotic they are at the beginning.  This one was a

12     particularly chaotic case.  We've also asked them to track

13     on a fee basis interactions with pro se participants so we

14     can get a better idea of how much time is being spent

15     dealing with pro ses, who, as you know, are very active in

16     this case, which is perfectly fine, to make sure that the

17     resources that are being put to that are appropriate given

18     what's going on in the case.

19          But things have been going well.  I've got a lot

20     of cooperation from the professionals, and I very much

21     appreciate it, and hopefully it'll be smooth going forward.

22     Thank you, Your Honor.

23          THE COURT:  Thank you very much.  Let me -- I just

24     want to make a couple of other comments, and really apropos

25     of what Mr. Sontchi just said.  So this case is certainly

Page 34

1    unusual from my experience by the number of pro ses who've

2    been actively involved in this case from the start.  It --

3    you know, it's in part reflected by the fact that I'm

4    looking at the bottom of my Zoom screen and I see there are

5    261 participants who've logged onto Zoom today.  Of course,

6    many of them may be counsel, but more are pro ses.  And

7    we've had throughout this case, and I think it's extremely

8    important, that there be complete transparency about how

9    this case is progressing.

10            And so I assume that many of the 262 who are on

11   are, in fact, pro se litigants not only from the United

12   States, but from outside the United States as well.  And so

13   this case, perhaps more than most others, there has been --

14   and I encouraged right at the outset that Debtors' counsel

15   and Committee's counsel be accessible to the pro ses.  I

16   think many of the objections or filings of the pro ses made

17   have raised important issues.  I've said that from time to

18   time.

19            And even when the result has been have an

20   objection overruled, I think that points that have been

21   raised have been very important and have been taken into

22   account by the Debtor and the Committee in some of the

23   relief they've sought or the form of the orders that have

24   been filed.  So I would reiterate that.  So yes, there has

25   been a lot of time of professionals taken up with

Page 35

1    communicating with pro ses, but I do think that that is

2    important here.

3           Let me make one other comment about pro ses.  So I

4    received this morning Mr. Frishberg's most recent objection

5    with respect to the Kirkland fees.  The objection is

6    untimely, but the issues that it raise certainly have been

7    something that have been on my mind for some time, although

8    not articulated or raised.  This is really the issue about

9    any fees incurred in connection with an effort to file a

10   late claim in the Voyager case.

11          As I think people are aware, Kirkland is counsel

12   for the Debtor in Voyager and is counsel for the Debtor in

13   Celsius.  I won't explore -- I'm not sufficiently versed in

14   it to be able to address the issue concretely at this stage,

15   but it certainly raises issues about if a claim was not

16   timely filed on behalf of Celsius in the Voyager case, why

17   was that?  And is it appropriate in those circumstances for

18   fees to be awarded in this case?

19          What I would say is, you know, Ms. Stadler and Mr.

20   Sontchi, it may be something that can't be fully resolved at

21   this time with respect to these fee applications for which

22   approval is sought.  And I don't want to unnecessarily hold

23   up approval of Kirkland's fees or other's fees if the

24   conclusion -- if there's a recommendation that there be an

25   adjustment to Kirkland's fees.  That adjustment, as far as

Page 36

 1    I'm concerned, can be reserved and made in the next

 2    application that is reviewed.

 3            So again, it's -- I will wait.  I think, Ms.

 4    Stadler, you and Mr. Sontchi should review the issue, if not

 5    necessarily the late-filed objection because I think it is a

 6    serious issue.  And again, it doesn't -- in my view, does

 7    not need to hold up the approval of the Kirkland fees.  To

 8    the extent there's an adjustment, it can be made when the

 9    next fee applications are up for consideration.  I don't

10    know, Ms. Stadler or Mr. Sontchi, is that satisfactory to

11    the two of you?

12            MR. SONTCHI:  It is, Your Honor.  And we will

13    definitely look at that in the context of the next round of

14    interim fee applications.  And I think since I'm 99 percent

15    sure based on your comments and Ms. Schwartz's comments that

16    we're going to allow -- or not allow, but that the 20

17    percent holdback is going to remain in place, that we don't

18    need to worry about reducing the fee application allowed

19    about under this interim order for Kirkland at this point.

20            That I think can be dealt with the next time.

21    Because if money is going to be withheld because of this

22    issue in Voyager, I cannot imagine it would rise above the

23    level of 20 percent --

24            THE COURT:  Right.

25            MR. SONTCHI:  -- of the approximately $18 million

Page 37

```
 1    in allowed fees from the (indiscernible).

 2            THE COURT:  I'm fine with it.  Look, there's a lot

 3    of work that's being done.  The work has been, in my view,

 4    well done in everything I've seen.  This is a separate issue

 5    really, and I'll await any recommendation from you as the

 6    Fee Examiner and your counsel.  And obviously, I'm sure

 7    you'll have discussions with Kirkland as necessary in

 8    dealing with it, okay?

 9            MR. SONTCHI:  We will, Your Honor.

10            MS. SCHWARTZ:  Judge, Andrea Schwartz.  Just --

11            THE COURT:  Go ahead.

12            MS. SCHWARTZ:  -- one thing I just want to mention

13    that we're aware of that issue as well.  And similarly, with

14    respect to all fees, we'll reserve until all of the interim

15    fees are up for final.

16            THE COURT:  That's fine.  Let me be clear.  While

17    -- you know, in my time on the bench, there have only been a

18    handful of instances where, yeah, all issues are reserved

19    for the final.  So the fact that interim fees are approved

20    does not mean issues can't be raised in the final.  There've

21    only been a handful of times when the Court has concluded

22    that further adjustments are required at the time of the

23    final fee hearing.  So that's not now, okay?  But the point

24    is well-taken, Ms. Schwartz.  All right.  Let me see.  Is

25    there anybody else?  Mr. Pesce, you want to be heard?
```

```
 1              MR. PESCE:  Yes, Your Honor.  On behalf of the
 2     Committee, just two quick points.  We wanted to thank the
 3     Fee Examiner for working with us on our application, and you
 4     know, the consensual reduction we negotiated.  We're going
 5     to reserve on the characterization that the U.S. Trustee
 6     made regarding the two fee orders.  We disagree with that,
 7     and we can follow up with the U.S. Trustee and the Fee
 8     Examiner regarding the alleged change that she referenced.
 9     And we can come back to the Court if need be after that.
10              But I did want to thank Mr. Sontchi for his
11     efforts to work with us over the last few months and his
12     counsel's efforts over the last few months to work on this
13     issue.
14              THE COURT:  You know, it doesn't look like you're
15     in Singapore at the moment, Mr. Sontchi.
16              MR. SONTCHI:  I'm not.  For once.  My trip was
17     canceled at the last minute.  I just -- I will say, and I
18     didn't -- I don't want to get into it, Ms. Schwartz, at all
19     because this happened last minute --
20              THE COURT:  Let's -- Mr. Sontchi, let's leave this
21     --
22              MR. SONTCHI:  Okay.
23              THE COURT:  -- let's leave this issue.  I'm
24     satisfied with where the record is at this point.  Let me
25     see whether anybody else wants to be heard.  I'm -- again, I
```

Page 39

1    expressed my reservations about fee examiners.  I may change

2    my view about it, but --

3              MR. SONTCHI:  Okay.  Like I said, time to shut up.

4              THE COURT:  Okay.  Mr. Frishberg, very briefly,

5    but your -- the most recent objection is untimely.  Go

6    ahead, Mr. Frishberg.

7              MR. FRISHBERG:  I'm sorry about it being untimely.

8    I have no issue with it being reviewed in the final interim

9    fee applications, and I also reserve on the rights.  Thank

10   you very much.

11             THE COURT:  Okay.  Thank you.  Anybody else wish

12   to be heard?  All right.  There were some other objections,

13   and I would give anybody else who filed an objection -- Mr.

14   Ubierna De Las Heras filed an objection, but I'm prepared to

15   rule now.  I think it's -- and I think -- Ms. Stadler, I

16   think because I think you said that there was an agreement

17   with counsel as to which fee applications are being -- are

18   not going to be approved at this point, are being held back,

19   could you just indicate specifically so our record's clear

20   as to which ones those are, so I don't have to go through

21   each individual one?

22             MS. STADLER:  Yes, Your Honor.  They are listed on

23   Exhibit B to our report.  It's the Ernst and Young first

24   interim fee application Docket Number 2170.  That was filed

25   very late, so that's the one Mr. Sontchi referred to as we

Page 40

1    haven't had time to finish our analysis yet.  The other two

2    are Latham and Watkins, Special Counsel to the Debtor,

3    Docket Number 1712, and Jenner and Block and Shoba Pillay,

4    the examiner and her counsel, Docket Number 1717.

5    Discussions with those two latter parties are continuing.

6            THE COURT:  All right.  And I guess what I would

7    say on that score, if you finished your discussions with

8    them and there's a proposed resolution, don't wait for the

9    next (b) hearing --

10            MS. STADLER:  Yes.

11            THE COURT:  -- to bring that on.  You can -- I

12    would permit you to do it on presentment.  If there are

13    objections, obviously we'll have to have a hearing, but I'll

14    review carefully what it is that you report with respect to

15    those.  But you can -- I'll permit you to notice it on

16    presentment.  And you know, if there are objections, we'll

17    set a quick hearing on it and deal with that, okay?  I don't

18    want to unnecessarily hold up their professionals and their

19    fees, okay?

20            MS. STADLER:  Yes.  Thank you for that

21    instruction.  We will do so.

22            THE COURT:  All right.  So if there anybody else

23    who wishes to be heard with respect to the fees that are on

24    for approval today, interim approval today?  All right.  I

25    must say I think it -- it's been rare over the years when I

Page 41

1    haven't had issues that I've raised.  One of the points that

2    I've always made is when -- for example, when the U.S.

3    Trustee has negotiated adjustments in an application, I

4    never want to be in the position of sort of DD'ing an

5    applicant because there may be issues that I had and where I

6    view the adjustments that have been made based on either the

7    U.S. Trustee's work or, here, the work of the Fee Examiner

8    and his counsel.

9            I will report myself as satisfied.  So each of the

10   applications that are on for interim approval is approved.

11   Submit -- work out the exact terms of the order, submit the

12   order, and it will be entered.  I'm sure all the counsel

13   will be happy about that.  Okay?  Thank you very much.  And

14   certainly, any of the counsel who are here running their

15   clock because they're here for the -- their fee

16   applications, you're excused unless you want to stay on your

17   own nickel.

18           MR. SONTCHI:  Thank you, Your Honor.  Good-bye.

19           MS. SCHWARTZ:  Thank you.

20           THE COURT:  Thanks very much.  All right, Mr.

21   Kwasteniet.  I don't know where -- who's going to pick up?

22   Ms. Jones, are you picking up again, or --

23           MS. JONES:  Yes.

24           THE COURT:  Okay.

25           MS. JONES:  Good morning again, Your Honor.

Page 42

1    Elizabeth Jones of Kirkland and Ellis on behalf of the

2    Debtors.  We will go ahead and back into order on the agenda

3    and move forward with Agenda Item Number 3, the motion to

4    approve the withhold settlement, which was filed at Docket

5    Number 2334.

6            Your Honor, as we've noted on our March 8 omnibus

7    hearing, we had reached an agreement in principle with the

8    withhold Ad Hoc Group and the Committee, and we're very

9    pleased to be here today in front of you with a full and

10   consensual motion and no objections filed on the docket.

11   Since March 8, Your Honor, we have worked hard in

12   documenting that settlement agreement, and signing and

13   executing, which is also attached to the motion at Docket

14   2334.

15           Your Honor, as further explained in the motion and

16   the papers, the settlement agreement resolves the current

17   pending litigation between these three parties, both with

18   respect to the Ad Hoc Group's list day motion that was filed

19   back in September at I believe Docket Number 737.  I may

20   have may have misstated that, but also the pending

21   litigation with respect to Phase 1 and 2 that was previously

22   settled with the Custody Ad Hoc Group.

23           Your Honor, pursuant to the settlement, we are

24   settling claims and causes of action related to withhold

25   assets held by the members of the Withhold Ad Hoc Group.  In

Page 43

1    exchange for those settling of claims, we have agreed that

2    the Debtors will pay those members after entry of the

3    settlement order 15 percent of the value of their claim as

4    of the petition date, and the remaining 85 percent will be

5    recharacterized as an earned claim.  So going forward and in

6    connection with the plan, they'll be voting an earn claim,

7    not a withhold claim.

8              Your Honor, after seven months of pending

9    litigation with the parties, we believe that this settlement

10   meets the requirements of Bankruptcy Rule 9019 that it is

11   reasonable and in the Debtor's best interest and business

12   judgment to enter into that, and that it provides a

13   consensual good resolution for all parties involved.  So

14   Your Honor, unless you have any questions, we respectfully

15   request entry of that.  And I'm also happy to explain some

16   of the other differences and similarities with respect to

17   the custody settlement if that's also helpful.

18             THE COURT:  Let me ask a couple of questions, and

19   other counsel may want to address them.  There were no

20   objections filed to the approval of the settlement, but I

21   have a couple of questions.  So if I'm correct, there was no

22   true withhold wallets, and the coins for the settlement will

23   be coming out of the general aggregate wallets, which is

24   potentially to the detriment of earn Creditors.  Why do you

25   -- is that correct?  And do you believe the settlement is

Page 44

```
 1    fair and reasonable given that it averts coins from the

 2    general earn Creditors to a smaller group of Creditors?

 3              MS. JONES:  Yes, Your Honor.  First, with respect

 4    to your first question, that's correct.  It's coming from

 5    the aggregator wallets.  And with respect to your second

 6    question, we do believe that it is fair and equitable given

 7    that the Court has found that the assets tell that, on

 8    behalf of earned customers, are property of the estate,

 9    which means the costs and expenses to continue litigating

10    these issues with the withhold Claimants would also come out

11    of that amount.

12              Here we believe, given the size of the Withhold Ad

13    Hoc Group, which is about 1.3 million in withhold assets,

14    that paying the 15 percent of that value is significantly

15    less than the cost that would be associated with litigation.

16    So it is going to benefit all parties.

17              THE COURT:  Okay.  The other question I have is

18    what's the total estimated recovery for withhold Creditors

19    and how that compares to the recovery for the settling

20    custody holders and the general earn Creditors.  For custody

21    holders, I think they were getting 72.5 or they were

22    potentially getting 72.5 percent recovery, which made it

23    easier for me to compare numbers.  Let me stop there.

24              MS. JONES:  Yes.  That's correct.  And I will

25    note, Your Honor, that the earn recovery is still -- given
```

Page 45

1    our valuation work and disclosure statement still subject to

2    change.  But I will say when we were negotiating the

3    settlement, the -- this 15 percent and 85 percent breakdown

4    puts the withholder recovery right in the middle of earn

5    Creditors and custody.  So I would say if earn is projecting

6    around a 50 percent recovery or so, and custody is at 72 and

7    a half, this puts the withhold group around the 60 percent

8    mark.

9              And again, given where we stand in litigation and

10   that there was still no decision yet as to whether withhold

11   is or is not property of the estate, we thought that

12   appropriate and reasonable settlement would be in between

13   those two amounts.

14             THE COURT:  All right.  Thank you.  Ms. Kovsky, do

15   you want to be heard on this?

16             MS. KOVSKY:  Thank you, Your Honor.  Deb Kovsky

17   for the Ad Hoc Group of Withhold Account Holders.  First I

18   wanted to thank the Debtors and the Committee for working

19   with us to get to a consensual resolution.  As Ms. Jones

20   said, we believe that this is a reasonable sort of split-

21   the-baby resolution for our claims in addition to stopping

22   the bleeding of the litigation costs.

23             I also wanted to point out, and I know that Your

24   Honor and I had had words about this at our last hearing on

25   this matter back in December, but the withhold account

1    holders do believe that they had a constructive trust claim

2    with respect to a general earn asset or the general property

3    of the estate that we certainly would have pursued.  So in

4    light of our claims, the cost of litigation, and the small

5    size of the Creditor group, we do believe that this is an

6    appropriate outcome and is fully consensual.

7              THE COURT:  I didn't ask Ms. Jones as I'll ask

8    you, either one of you can answer it.  So how does the

9    election process work with respect to this proposed

10   settlement?

11             MS. JONES:  The --

12             MS. KOVSKY:  I'm sorry, Ms. Jones.  Go ahead.

13             MS. JONES:  Thank you, Your Honor.  Again,

14   Elizabeth Jones of Kirkland and Ellis on behalf of the

15   Debtors.  So Your Honor, the election process is something

16   that we thought very long and hard here, and considered a

17   lot of different factors to determine what we thought would

18   be the most fair and equitable result for all holders of

19   withhold claims or all holders of withhold assets.

20             And in this scenario, we are offering the

21   settlement only to members of the Withhold Ad Hoc group.

22   They have already signed the agreement.  Unlike custody,

23   there won't be a proposed settlement election process, but

24   there will be the opportunity for all the full payments to

25   have the same settlement in connection with the plan if the

Page 47

```
 1    class carries the plan.  The reason again for that is at the

 2    time we entered into the settlement, the period that we were

 3    thinking of for solicitation and in connection with the plan

 4    disclosure statement, the 30-day election period likely

 5    would have overlapped, which would have created very

 6    confusing and potentially harmful results for those trying

 7    to vote and understand what classes of plans they were going

 8    to be classified.

 9            We also wanted to make sure that everybody had the

10    opportunity to receive this settlement, but without it

11    creating a number of other problems, which is why we

12    ultimately thought this would be the best resolution.  And

13    again, given that the only parties right now that have an

14    open claim dispute the Debtors is the Withhold Ad Hoc Group

15    because there has not yet been a determination as to whose

16    property withhold assets belong to.

17            THE COURT:  How many are in the Ad Hoc Group

18    Withhold --

19            MS. JONES:  Thirteen.

20            THE COURT:  I'm sorry?  Say it again.

21            MS. JONES:  Thirteen.

22            THE COURT:  Thank you very much.  Okay.  All

23    right.  Mr. Hermann, you want to be heard?

24            MR. HERMANN:  Sure, Your Honor.  Immanuel

25    Herrmann, pro se Creditor.  I think the settlement's fair
```

1    and reasonable.  I support it.  You know, there's a lot of

2    ambiguous situations and contractual ambiguity in this case.

3    I think the settlement's needed.  I think, you know, other

4    similar settlements may be needed down the road to deal with

5    some of the complexity of this case.  And I think it would

6    cost Creditors a lot more to actually -- you know, we have

7    13 people here.  I think it would cost Creditors a lot more

8    to actually -- and even if it goes to all the withhold

9    people, I just think that it's -- we should end the

10   bleeding, and I support it.

11             THE COURT:  Thank you, Mr. Hermann.  Does anybody

12   else wish to be heard?  All right.

13             MS. AMULIC:  Yes, Your Honor.

14             THE COURT:  Oh, I'm sorry.

15             MS. AMULIC:  Sorry.

16             THE COURT:  Go ahead.

17             MS. AMULIC:  Andrea Amulic from White and Case for

18   the Committee.  Just really briefly --

19             THE COURT:  Yeah, please.

20             MS. AMULIC:  -- wanted to express our support for

21   the settlement, and we agree with Ms. Jones and Ms. Kovsky's

22   statements as to the cost savings and the benefits of the

23   settlement relative to what would ultimately be a really

24   time consuming and resource heavy process in terms of

25   proceeding with phase two.  So we are vigorously in support.

```
 1              THE COURT:  Thank you very much.  So I'm ready
 2     rule, and yes, I'm approving the settlement.  So but just
 3     briefly to give the reasons, so this is a 9019 motion.  You
 4     know, settlements are favored in bankruptcy, in fact
 5     encouraged.  The Court has to determine whether the
 6     settlement is fair and equitable and in the best interest of
 7     the estate.  As is typical, I apply the seven non-exclusive
 8     factors set forth by the Second Circuit in its decision in
 9     In re Iridium Operating, LLC, 478 F.3d 452.  It's a 2007
10     decision.
11              Since there are no objections filed, I will not go
12     through each of those seven factors.  They're not all
13     applicable in the circumstances, but I've considered the
14     factors to the extent that they're applicable.  And I have
15     concluded that this settlement is fair, reasonable, and
16     appropriate.  It forgoes what would be complicated and
17     expensive litigation, both for the Ad Hoc Committee members
18     and for the Debtor.  And so I think that this is a -- you
19     know, is a perfectly appropriate and reasonable settlement,
20     and I'm pleased to approve it.
21              So provide me the order in Word format, and it
22     will be entered.  Thank you very much.  And I really do
23     appreciate the efforts of the Debtor, the Committee, Ms.
24     Kovsky on behalf of the Ad Hoc Committee.  And you know, I'm
25     glad you were able to read a consensual result.  You know, I
```

Page 50

```
 1   think, as usual, the best settlements don't make anyone

 2   entirely happy, but that's the nature of the process.  So

 3   all right.  Thank you.  Let's move on, on the agenda then.

 4              MS. AMULIC:  Thank you very much, Your Honor.

 5   With that I --

 6              MS. KOVSKY:  Thank you, Your Honor.

 7              MS. AMULIC:  Oh, apologies.  I will cede the

 8   podium to my colleague Ms. Patricia Loureiro.

 9              THE COURT:  Okay.

10              MS. LOUREIRO:  Good morning, Your Honor.  For the

11   record, Patricia Loureiro from Kirkland and Ellis on behalf

12   of the Debtors.  Up next on the agenda is another settlement

13   motion.  This approving a settlement we reached with a

14   former employee of the Debtors.  Before we get into the

15   substance, I'd like to introduce into evidence the

16   declaration of Mr. Christopher Ferraro, the interim

17   (indiscernible) --

18              THE COURT:  May I ask are you -- you don't have a

19   camera?  You're just on the phone?

20              MS. LOUREIRO:  I'm on a camera with the video.

21              THE COURT:  Oh, okay.  I'm seeing a box around a

22   different one.  Now I can see you.  Go ahead.  Please go

23   ahead.  I'm sorry.  You want to introduce the declaration of

24   Mr. Ferraro, which is what ECF 2416?

25              MS. LOUREIRO:  That's correct, Your Honor.  And
```

Page 51

1    Mr. Ferraro is here on Zoom and available to testify to the

2    extent any party wishes to cross-examine him.

3             THE COURT:  Are there any objections to the Court

4    admitting in evidence the Ferraro declaration, which is ECF

5    Docket Number 2416?  Hearing no objection, it's admitted

6    into evidence.  Go ahead.

7             MS. LOUREIRO:  Thank you, Your Honor.  As a bit of

8    background, on June 1, 2022, six weeks ahead of the petition

9    date, Ms. Wohlman was separated from her employer Debtor

10   Celsius Network Limited, which was formed under the laws of

11   England and Wales.  Historically, the Debtors provided

12   severance benefits to employees in the event of a

13   termination that is not for cause.

14            As a condition to receiving severance benefits,

15   the Debtors required that employees execute a separation

16   agreement releasing any claims held against the company.

17   Ms. Wohlman was offered a separation agreement, but did not

18   sign the agreement.  As a result, the Debtors did not seek

19   authority to pay Ms. Wohlman any severance benefits in the

20   wages motion filed on the petition date.  Ms. Wohlman filed

21   a limited objection to the wages motion seeking payment of

22   severance she believed she was entitled to, and the Court

23   overruled this objection.

24            Ms. Wohlman then filed a claim in the U.K.

25   Employment Tribunal alleging claims including that Celsius

Page 52

1    discriminated against her because of her alleged disability.

2    The Debtors asked that the tribunal recognize the authority

3    of this court and the global nature of the automatic stay.

4    The tribunal indicated that additional briefing was required

5    to understand whether it was appropriate to apply the

6    automatic stay absent a formal recognition proceeding in the

7    U.K.  The tribunal then proceeded to schedule further

8    hearing dates, including evidentiary hearing set for this

9    July.

10            In light of this, the Debtors sought to settle

11   with Ms. Wohlman, and the results of these negotiations are

12   embodied in the settlement agreement attached as Exhibit 1

13   to the proposed order.  The settlement agreement

14   contemplates an 85,000 pound payment to be paid to Ms.

15   Wohlman in exchange for the withdrawal and release of her

16   claim.  The settlement agreement was presented to and

17   approved by a conciliator appointed by the U.K. Employment

18   Tribunal, and also reflects comments from counsel to the

19   Committee who support entry into the settlement agreement.

20            The Debtors believe the settlement is the most

21   cost-effective path forward that also happens to provide the

22   greatest amount of certainties.  Given the expected cost of

23   defending against these claims range from 100,000 pounds to

24   350,000 pounds, as well as the risk and uncertainty

25   associated with fully litigating this claim, the Debtors, in

Page 53

1   an exercise of their business judgment, believe that the

2   settlement is fair and equitable and in the best interest of

3   the estate.  Your Honor, with that background, I'm happy to

4   answer any questions you may have.

5           THE COURT:  I don't have any questions.  Does

6   anybody else want to be heard?  Okay.  As I say, there were

7   no objections that were filed.  So the Motion to Approve the

8   Wohlman Settlement is ECF Docket Number 2331.  Attached to

9   the motion as Exhibit A is a proposed order.  And the

10  deadline for objections was April 11th.  As I say, no

11  objections were filed.  Mr. Ferraro's declaration, ECF 2416,

12  addresses this as well.  The Court is approving the

13  settlement.

14          I've considered the usual factors.  You know, I've

15  described the In re Iridium Operating seven non-specific

16  factors.  There's a long line of cases in this district and

17  in this circuit with regard to the standards for approving

18  settlements.  What's clear to me is if this actually had to

19  be litigated, it would be very expensive to the estate to do

20  that.  I think that the proposed settlement amount is fair

21  and reasonable in the best interest of the Debtor's estate.

22          Consequently, the Court will enter an order --

23  enter the order approving the settlement.  Thank you very

24  much.

25          MS. LOUREIRO:  Thank you, Your Honor.  At this

Page 54

1    time we'll cede the podium.  I think that the Committee is

2    next on the agenda.

3              THE COURT:  Yep.

4              MR. COLODNY:  Good afternoon, Your Honor.  Aaron

5    Colodny from White and Case on behalf of the Official

6    Committee of Unsecured Creditors.  Can you hear me okay?

7              THE COURT:  I can.  Go ahead, Mr. Colodny.

8              MR. COLODNY:  Thank you, Your Honor.  We are here

9    to present our motion to file a class claim on behalf of

10   account holders.  Or alternatively, to have an independent

11   fiduciary bring a class claim on behalf of account holders.

12             I think I'll begin by saying there's no question

13   here that there is serious claims by account holders for

14   pervasive fraud, misrepresentation, deceptive practices, and

15   material omissions by the Debtors.  That was acknowledged by

16   the Court in its ruling on the claim objections.  It's in

17   the examiner's report, and I don't believe any party,

18   including the Debtors or the preferred equity holders,

19   contest those allegations exist.

20             The issue brought by our motion is how those

21   claims should be pursued.  Should they be pursued in an ad

22   hoc fashion by pro se creditors without the resources to

23   properly bring those actions, that's what the preferred

24   equity holders would advocate.  Or should they be pursued in

25   an organized collective approach that gives account holders

Page 55

1      a fair fight and allow these cases to proceed in an

2      efficient manner?  That's the approach the Committee's

3      advocating.

4              Our approach is informed by Your Honor's comments

5      at the last hearing that the claims process needs to be a

6      fair fight.  It's also informed by a personal experience

7      pursuing the Debtor's initial path, which was the Bellwether

8      claims objection process, and the difficulty of wading

9      through the various issues, even to get close to a

10     litigation scheduling order in those matters.  In light of

11     those facts, we sought your authority to file a class claim

12     on behalf of all account holders.

13              At the top, I want to address a comment made in

14     Ms. Cornell's statement filed yesterday that we brought this

15     in haste.  That's absolutely not true.  We carefully

16     considered the facts, the circumstances, and the options.

17     We requested that the Debtors schedule non-contract claims

18     and mark them as disputed so that we could then seek an

19     estimation for purposes of confirmation.

20              When that was denied, we sought to inform our

21     constituents of your ruling and the amended bar date through

22     both posting on our website and Twitter town halls to make

23     sure everyone knew about the amended bar date deadline and

24     what was coming.  And at the end of the day after careful

25     consideration, we determined to request your permission to

Page 56

1    bring the class claim.

2            That decision is supported by the facts uncovered

3    in the examiner's report in our own investigation.  Those

4    facts demonstrate that Celsius fundamentally misrepresented

5    its business to account holders and failed to inform its

6    account holders of significant risk that the company took

7    and suffered.  Those misrepresentations and omissions

8    pervaded CNL's entire advertising and messaging strategy.

9    They were part of its sales pitch to account holders to

10   convince them to transfer their savings to Celsius, and they

11   went to the heart of their business.

12           Now, those claims aren't before Your Honor today.

13   The claim is not on file.  Rather, we're requesting

14   permission to file that claim as is required by the

15   bankruptcy code.  And I understand that the examiner's

16   report is not admissible evidence, but what it is, is a 476-

17   page report that was provided by -- that was prepared by an

18   experienced and independent investigator, which demonstrates

19   the basis and the factual underpinnings of our claim.

20           A claim is like a complaint, and if permitted by

21   this court, we will establish through admissible evidence

22   that that claim is true.  But in light of the Series B in

23   Ms. Cornell's comments that we proceeded in haste and did

24   not specify our claims, I want to spend a bit of time to go

25   a bit backwards and highlight some of the key themes that

Page 57

```
1    pervaded CNL in Mr. Mashinsky's marketing.  Mr. Mashinsky --

2              MS. SCHWARTZ:  Your Honor?  Excuse me, counsel.

3    Your Honor?

4              THE COURT:  I'm sorry, Ms. Schwartz.  He's -- yes?

5              MS. SCHWARTZ:  No, I was just going to say it

6    might be helpful -- just suggesting it might be helpful if

7    we could just clarify that because --

8              THE COURT:  No, let's let Mr. Colodny --

9              MS. SCHWARTZ:  Okay.  No problem.  No problem.

10             THE COURT:  -- proceed with his argument.  Go

11   ahead, Mr. Colodny.

12             MR. COLODNY:  Thank you, Your Honor.  Find where I

13   left off.  So Mr. Mashinsky and CNL's misrepresentations

14   started from day one when it announced that the ICO was

15   fully funded and that it sold $50 million of cell token.

16   That was not true.  From that point forward, as I said

17   before, those misrepresentations pervaded Celsius'

18   marketing.  It was part of their sales pitch.

19             And I'd like to touch on a couple of those, which

20   are not exclusive, but I think demonstrate what we are

21   trying to accomplish here.  First, Mr. Mashinsky repeatedly

22   told people that Celsius was safer than a bank, but that

23   wasn't -- that general statement was not it.  He repeatedly

24   told customers that Celsius passed 80 percent of its

25   revenues back to those customers.  That was not true.  And
```

1    how do we know it wasn't true?

2            Well, first, as the examiner found, there's no

3    evidence that Celsius at any point in time set its rewards

4    rates based on its revenue.  That's on Page 249 of the

5    report.  CNL also admitted as much.  Indeed, when the U.K.

6    regulators pointed that passing along profits made Celsius

7    an unlicensed investment scheme, CNL quickly back pedaled

8    and said that the rates as offered to customers were not

9    tied to its profits.

10           Unlike account holders, the U.K. regulars didn't

11   buy it.  And instead of fixing the problem, the company fled

12   to the United States, but it did not stop repeating that

13   message to customers.  It also fundamentally misrepresented

14   the risk it was undertaking with account holders' assets.

15   CNL and Mr. Mashinsky repeatedly told account holders it did

16   not issue uncollateralized loans.  Mr. Mashinsky made those

17   statements in 2019, 2020, 2021, and as late as April 2022.

18   Those are documented on Page 244 to 246 of the examiner's

19   report.

20           Again, they were lies.  Celsius had billions of

21   dollars of uncollateralized loans.  All customers thought

22   Celsius was only investing in collateralized secured loans

23   from reputable financial institutions.  In fact, Mr.

24   Mashinsky repeatedly said these are Wall Street

25   institutions.  That also was not true.

Page 59

```
1              And how did account holders know that?  Because
2   CNL told them over and over and over again.  Mr. Mashinsky
3   was constantly promoting Celsius, and it wasn't just on the
4   AMAs.  It was at conferences, it was on public new
5   broadcasts.  One of the instances of the collateralized
6   loans where Mr. Mashinsky specifically makes the point that
7   there are no uncollateralized loans was on CNBC.
8              And I want to take a second to talk about the
9   Bellwether Claimants.  Now, I spent a lot of time with the
10  Bellwether Claimants over the past couple of weeks, and I
11  want to focus on Ms. Gallagher.  You know, she watched an
12  interview of Mr. Mashinsky that was broadcast on a program
13  called Real Vision on April 18, 2021.  That video she found
14  on CNL's website, and this was before the migration
15  happened.
16             In that video, Mr. Mashinsky states that Celsius
17  does not issue uncollateralized loans.  He also states that
18  it passes 80 percent of its gross revenues back to account
19  holders.  He made those statements to induce people like Ms.
20  Gallagher to deposit their crypto with Celsius.  And in
21  fact, Ms. Gallagher transferred substantially all of her
22  life savings to Celsius.
23             Now, after that, Ms. Gallagher would watch each of
24  Mr. Mashinsky's MNAs, a majority of which she would watch
25  live.  And that's important because we now know that
```

Page 60

1    Celsius, starting in 2021, was editing the AMAs after they
2    were broadcast live.  One email I was looking at last night
3    from Celsius' chief risk officer to its chief regulatory
4    officer referred to this as a censorship process.  Ms.
5    Gallagher had no reason to know that what Mr. Mashinsky was
6    telling her live was not in fact true because Celsius didn't
7    tell her.  Instead, they edited the videos.
8              Now, I keep returning to the examiner's opening
9    line in his report, which I think really succinctly sums
10   this up.  The business model that Celsius advertised and
11   sold to its customers was not the business that Celsius
12   actually operated.  And since the beginning of these cases,
13   I've spoken to many Creditors.
14             I answer, try to answer, all of the emails I get.
15   I try to pick up all the phone calls I get, and oftentimes
16   they don't agree with our strategy.  They don't agree with
17   what we're doing, but the one thing they all agree on is
18   that they were lied to.  And I don't believe that anyone
19   disputes that fact.  Even the Debtors now.
20             Now to return to the matter that's before the
21   Court, whether the Committee on behalf of a lead Plaintiff
22   or a fiduciary should be able to file a class claim.  As
23   this Court stated in the MF Global opinion, that
24   determination turns primarily on whether it will affect the
25   administration of the place.  Here, I don't believe there's

Page 61

1    a question that it will aid the administration.  As

2    confirmed by the Bellwether process, there can be little

3    argument that pro se Plaintiffs proceeding with protracted

4    discovery is not conducive to the efficient administration

5    of this estate, nor should other Claimants be bound by

6    litigation against unrepresented parties.

7            The Court asked that this litigation be a fair

8    fight, and our proposed process will provide that.

9    Moreover, the Committee's conducted its own investigation,

10   and we're prepared to move quickly here right alongside

11   confirmation.

12           Now, the preferred equity holders argue that class

13   certification will impose additional complexity, but that

14   complexity is far outweighed by the burden that prosecuting

15   thousands of individual fraud claims than non-contract

16   claims would impose on the Debtors' estates.  That's exactly

17   why the Debtors began with the Bellwether claim process.

18   And if the Debtors are not correct that all claims for

19   fraud, misrepresentation, any other tort are limited to the

20   value of the crypto on the platform, that's going to be an

21   inevitability.

22           Now, the preferred equity holders also seem to say

23   that we could never certify a class and prove reliance on a

24   wide scale.  We disagree.  More importantly, it's not before

25   the Court this time.  And even if we can't prove common

Page 62

1    reliance, we intend to bring statutory claims on behalf of

2    Celsius as misleading advertising and deceptive business

3    practices that do not require a Plaintiff to prove that

4    element.

5            Now, the second factor, which I don't think is

6    that instructive here, is whether a class was certified pre-

7    petition.  I found this argument by the preferred equity

8    holders to be particularly astonishing to say that customers

9    that were defrauded should've known to raise those claims

10   before that fraud was uncovered.  I just don't think that

11   factor should be considered here.

12           The third factor, the bar date, I think it speaks

13   in favor of allowing the class claim.  As raised in our

14   reply, we looked at the Certificate of Service, and it does

15   not provide that the bar date was served on all account

16   holders.  I spoke with the Debtors last night.  I understand

17   it should've been served on all account holders, and they

18   were confirming it.  As of now, I don't know.

19           But the one thing that's been very clear from my

20   conversations with account holders is that the 30 days for a

21   pro se Creditor to put together and synthesize the

22   examiner's report and file a -- what in essence would be a

23   complaint on account of these actions is a tall task for

24   anyone to accomplish.

25           And I want to point out that if the class -- if

Page 63

1    Your Honor is -- permits us to move forward and we are able

2    to file a claim, I think that we would -- or I know that we

3    would request that the bar date be tolled so that thousands

4    of Creditors are not required to file proofs of claims,

5    protected proofs of claim, by the April 28th amended bar

6    date.

7              Now, I want to get to my last point, which is the

8    preferred equity holders and remarkably United States

9    Trustee's argument that we are somehow violating our

10   fiduciary duties by filing the motion.  In Residential

11   Capital, Your Honor found that the very nature of a

12   Creditor's Committee is to represent varying creditor

13   constituencies with divergent and sometimes even opposing

14   interests.  And each member is charged with a fiduciary duty

15   to serve the interests of Creditors generally.  A committee

16   must guide its actions so as to safeguard as much as

17   possible the minority as well as the majority.  Very true.

18             But that does not mean that every time there is a

19   conflict between unsecured Creditors the Committee must sit

20   idly by.  In ResCap, Your Honor cited the Circle K Corp.

21   case, which is 199 B.R. 92, where Jude Bernstein explicitly

22   noted that the Committee and its counsel often take

23   positions against particular Creditors.  For instance,

24   Committee may object to a Creditor's claim.  It also may

25   obtain STN standing to sue third parties, which can include

Page 64

```
 1    Creditors.  And it may also seek to equitably subordinate

 2    the claims of Creditors.

 3              If the Committee couldn't act if there was a

 4    conflict between one particular creditor or a small group,

 5    it would never be able to take positions adverse to other

 6    creditors in these cases, which we've done.  I will admit

 7    that.  We have taken positions adverse to the withhold

 8    group.  We have filed the claims in every box and litigated

 9    that issue.  These claims were not raised in either of those

10    actions.

11              And I would submit that the hallmark of a well-

12    functioning committee has the ability to take positions on

13    tough issues, which potentially have consequences for

14    everyone.  It's a bankruptcy case.  When you take a piece of

15    the pie away from one creditor, it goes to another, and it

16    is to the detriment of that other creditor necessarily.

17              Here, at the request of the United States Trustee,

18    the Court appointed an independent examiner to investigate

19    the Debtors.  We used the facts uncovered by that

20    independent examiner to take a reasonable position that is

21    entirely consistent with our fiduciary duties.  And although

22    that report is in evidence, it represents a thorough and

23    independent recitation of the facts.

24              I don't believe that the existence of unsecured

25    creditors and the mere fact that unsecured creditors exist
```

1    at CNL prevents us from taking an action to remedy the

2    collective action problem that we face and witness

3    firsthand.  And I think that our fiduciary duties, in fact,

4    compel that to ensure an equitable recovery for all

5    Creditors.

6            However, to the extent the Court has an issue with

7    that, we requested the alternative relief for an independent

8    fiduciary to be appointed to bring the claim on behalf of

9    all account holders.  The point here is we think a

10   collective process is the best way to go.  You know, given

11   our investigation, the process we've made on the claim thus

12   far, we believe that it would be a waste of estate resources

13   for another set of professionals to come in, and it would

14   lead to unnecessarily delay.  But the paramount concern

15   here, as the Court said, is administrative efficiency in

16   providing a collective process to vindicate the account

17   holders' rights.

18           And finally, to respond to (Indiscernible)'s

19   comments and put it explicitly on the record, this is no way

20   meant to affect the voting process on a plan in any way,

21   shape, or form.  We are willing to stipulate to whatever

22   relief to make it clear that account holders will get to

23   vote on this plan, and this will not be the Committee

24   allowing a billion dollar claim so that it can vote its

25   preferred plan through.  That decision is going to be for

Page 66

```
 1    account holders, and that will be done according to a

 2    disclosure statement in solicitation procedures that are

 3    approved by this Court.  Unless Your Honor has any

 4    questions, I'll pass the podium to Mr. Leblanc.  I think

 5    you're on mute, Your Honor.

 6             THE COURT:  I absolutely was on mute.  And the

 7    words I say more often in a hearing is unmute, unmute.

 8    Okay.  Let me ask you this hypothetical.  Assume that the

 9    Court grants the Committee leave to file a class claim and

10    you bring on a motion for class certification.  And let's

11    assume that I don't require independent fiduciaries to be

12    appointed to do that.  What is the timeline that you

13    anticipate going forward assuming that, for example, the

14    preferred holders strenuously oppose the relief that you'd

15    be seeking?  What's the timeline?

16             MR. COLODNY:  So I think we can get our proof of

17    claim on file by the bar date or shortly thereafter.  And I

18    believe we're prepared to move forward with the motion for

19    class certification in the first or second week of May.  I

20    think it would be shortly thereafter putting it on file.

21    Again, we're not looking to delay anything.  And I think

22    that the litigation schedule with respect to that class

23    certification motion can proceed in line with confirmation.

24             I know there's been some disputes about the

25    litigation schedule between Mr. Leblanc and his clients and
```

Page 67

1    our clients and the Debtors.  However, I believe that all

2    can proceed together.  You know, that would be based off of

3    what amount of discovery is required with respect to that

4    class certification motion obviously.

5              THE COURT:  All right.  Just bear with me another

6    moment, okay?  So I just -- I do want to briefly address the

7    issue not yet resolved despite the fact that I've given

8    plenty of time to do that is for the Committee and the

9    Series B holders to resolve to see whether they can come to

10   an agreement about a schedule with respect to procedures for

11   estimating the intercompany claims with the Debtor.  Have

12   you been able to resolve that issue?  The schedule.

13             MR. COLODNY:  We have not, Your Honor.

14             THE COURT:  All right.

15             MR. LEBLANC:  Your Honor, this is Andrew Leblanc.

16   I'm happy to speak to that whenever is appropriate, Your

17   Honor.  I know the Debtors moved that to an adjourned --

18             THE COURT:  Yeah, but here's -- we'll get to the

19   -- you know, here's what I'm going to do.  My patience is

20   running out.  I think that I always -- my strong preference

21   is for counsel to agree on a reasonable schedule that

22   invariably I approve.  But again, my patience is running

23   out, and so I think, as I understand it, there was -- you

24   have until the 20th, two days from now, to agree on a

25   schedule.

Page 68

```
1            And I'm just telling you, if you don't, I'm

2       imposing a schedule.  You may not -- neither of you may like

3       it.  One of you may like it.  I don't know.  Would you

4       please resolve this?  I mean, you're not that far apart on

5       schedule.  I can't believe you haven't resolved it.  We

6       don't need to talk about it anymore.  You've got until the

7       20th to work it out, okay?

8            MR. LEBLANC:  Your Honor, can I just speak to that

9       topic just briefly, Your Honor?  And the -- we've proposed a

10      schedule.  Both sides filed a motion to deal with one issue

11      estimation.  The Committee in their reply brief on Saturday

12      added two additional issues that haven't even been --

13           THE COURT:  Mr. Leblanc, Mr. Leblanc, I don't want

14      to hear anymore about this.  I'm just telling you you've got

15      until the 20th to work it out.  If you don't agree on a

16      schedule, I'm imposing a schedule.  It's as simple as that.

17      There's no reason to take up time today talking about it

18      further.  I just want to get that message across.  It's time

19      for you to work it out.  If you can't, I will just -- we

20      won't have another hearing about it.  I'll just impose a

21      schedule, okay?

22           I think if the Court hadn't already agreed to give

23      you all until the 20th to try to do that, I would just use

24      my frustration today and just enter an order.  So I'm not

25      going to do that.  I'm giving you another couple of days to
```

Page 69

```
1    do it, okay?  So Mr. Leblanc, go ahead and address the issue
2    of the -- whether to permit the Committee to file a class
3    claim.
4             MR. LEBLANC:  I don't know if Your Honor wanted to
5    hear from anyone else who's supportive of it, or you wanted
6    me to just go now.
7             THE COURT:  I want you to go now.
8             MR. LEBLANC:  Okay.  Your Honor, we've said, and
9    you and I talked about this at the -- with the -- whether
10   there were claims at every entity, that if there are fraud
11   claims, those can be dealt with, and they can be dealt with.
12   No one has suggested, including the Debtors or the
13   Committee, how many people believe they have fraud claims
14   against CNL.  And I think it's critical to be clear about
15   this.
16             And when Your Honor and I talked about this at the
17   last hearing, I made the point that many people never even
18   dealt with CNL at any point in time.  Alex Mashinsky was the
19   CEO of Celsius LLC at every point in time through its
20   existence.
21             THE COURT:  And do you -- was he also the CEO of
22   CNL?
23             MR. LEBLANC:  He was, Your Honor.
24             THE COURT:  Okay.  And you think that any
25   communication have to have -- he's talking with out of both
```

1    sides of his mouth?

2              MR. LEBLANC:  Your Honor, I believe that for

3    somebody to establish that they relied on his capacity as --

4    where -- and I think you have to draw the distinction

5    between people who were post-migration and pre-migration.

6    For a party who came into the Celsius network joining only

7    as a Creditor of Celsius LLC, the statements made by Mr.

8    Mashinsky, for them to say that they were relying on him in

9    his capacity as --

10             THE COURT:  Oh, I'm sure, Mr. Leblanc, you'd be

11   very happy for the amended bar date to run and very few earn

12   Creditors having actually filed a proof of claim.  What the

13   Committee -- I think this goes to Mr. Colodny's point, I

14   don't think it's necessary to -- because what I understand

15   the law on class actions, if they -- if I permit them to

16   file a class claim and it's not certified, the putative

17   members of that class will be given an opportunity to --

18   will be advised that that's what's happened and will be

19   given a further opportunity to file amended claims.

20             So I'm sure your constituency would be very happy

21   if no more than a handful of amended claims were filed.

22   That's not going to happen today, okay?  I'm just telling

23   you that right now.

24             MR. LEBLANC:  Your Honor, we don't know how many

25   claims have even been filed today.  It's not as though the

1    Committee's coming here -- and MF Global, Your Honor, was a

2    case where liability was conceded as to the issue.  And the

3    only issue for the class was how many vacation days did each

4    of the 250 or so members of the class have.  This is a very,

5    very different situation.  The Committee described it in

6    their reply brief as -- and I'll quote it here -- somewhat

7    novel.  Your Honor, this is wholly unprecedented.

8              We didn't see this.  We represented the Committee

9    in Enron, Refco, Lehman.  This isn't the process that was

10   used.  In none of those cases did a Creditor's Committee or

11   we on behalf of the Creditor's Committee bring a class proof

12   of claim on behalf of Creditors in those instances.  We

13   didn't -- it's not appropriate, and I'll leave Ms. Schwartz

14   to the argument that they've made.  We don't think it's

15   appropriate, Your Honor, and it's just not what happens, and

16   with good reason.

17             The Committee isn't even a member of the class

18   that could bring a Rule 23 class action.  We also do

19   believe, Your Honor, it is inconsistent with their fiduciary

20   duties.  It's why creditors' committees don't file proofs of

21   claim on behalf of individual Creditors, what they're

22   proposing to do here.  Your Honor, it should be left to --

23   we'll see how many customers, in fact, believe that they

24   were defrauded when they filed proofs of claim, and we'll

25   deal with those claims.

1           The notion that the Committee would file on behalf

2    of 600,000 customers, some of whom may never have seen any

3    of those videos, may never even -- don't -- may not even

4    speak the English language and say that they were all relied

5    upon, that they all relied upon these statements, I don't

6    know how, Your Honor, that could happen consistent with Rule

7    11, and I don't know how that could be part of a certified

8    class.

9           When I've seen this process, Your Honor, and I've

10   seen it -- it's sparsely granted.  I think everyone

11   acknowledges that.  It's scarce that you have class proofs

12   of claim.  When I've seen it, what the movant has done is

13   they filed the motion seeking authority under 9014 to apply

14   Rule 23, and they've included their proof of claim or their

15   complaint that would allege that.  And that's been true of

16   cases that have had classes certified pre-petition or not --

17   or file pre-petition, and those that have not.

18          Here, and in large part I think because it did

19   start, we had four days to respond to what is an

20   unbelievably complex issue.  And I think that's part of the

21   concern that we have had.  I think this is being rushed to

22   try -- and the Committee was clear in the Tweet that they

23   Tweeted about this, the reason they're doing this is because

24   they're dissatisfied with Your Honor's decision on where

25   claims sit.  And this is just another mechanism that they've

Page 73

1    now devised to try to deny the preferred equity any

2    recovery.

3           We do not believe that this brings any measure of

4    efficiency to the process, Your Honor.  This litigation just

5    over the class issues likely to run long past confirmation,

6    and that doesn't even get to the question of liability and

7    damages.  We don't even know what the Debtors' position on

8    the underlying merits of it are going to be.  Are the

9    Debtors -- and in particular, is the CNL estate and their

10   directors, are they going to concede that they're liable to

11   all customers for fraud?

12          THE COURT:  Well, they took the position that they

13   were liable, the customers.  The Committee and the Debtor

14   both believed that all of the entities were liable on

15   customer claims.  You prevailed, they didn't, but their

16   position was that CNL was liable on customer claims.

17          MR. LEBLANC:  They took the position, Your Honor,

18   that they were liable on customer claims contractually.  And

19   you're right.  They were wrong on that.  I don't know what

20   position the Debtors are going to take.  I don't know if the

21   Debtors are a Defendant defending this, or if this is going

22   to again be left to the preferred equity holders to defend

23   CNL from this liability.

24          THE COURT:  I'm sure you'll do a very able job,

25   Mr. Leblanc.

1           MR. LEBLANC:  Your Honor, we'll do our best, but

2     to put this additional burden into the system with the other

3     issues that Your Honor doesn't want to talk about with

4     respect to the schedule, it just doesn't -- there's no

5     prospect that this is going to bring efficiency to the

6     process as opposed to just inflating the number of claims

7     that have to be dealt with, rather than just dealing with

8     the claims that have been filed.

9           And it is not as though this Committee has been

10    silent or been sitting on their hands.  The Committee -- and

11    we note this in our papers, Your Honor, the Committee has

12    been actively encouraging parties to file fraud claims

13    showing them how to do it.  They have FAQs that they've put

14    out on social media showing people how to file fraud claims.

15    We should see what the fruits of that was.  How many people

16    actually believe that they have fraud claims --

17           THE COURT:  I had that argument.  Move on.

18           MR. LEBLANC:  Your Honor, we do think that Your

19    Honor should be considering the other elements of Rule 23

20    and considering whether to approve it under 9014.  Obviously

21    the full class certification analysis will only come when

22    Your Honor -- when a motion is made for class certification

23    and the complaint is actually filed.  But for the reasons

24    discussed in our papers, Your Honor, I think none of these

25    issues are amenable to class certification and we shouldn't

1   belabor this point anymore.

2           It is an inefficient process that has never --

3   it's not somewhat novel, has never been used in the way that

4   it's proposed to be used here, and it shouldn't be used in

5   this way in this instance.  Your Honor, unless you have any

6   other questions, I'll pause there.

7           THE COURT:  Thank you, Mr. Leblanc.  Ms. Schwartz,

8   I cut you off earlier.  Do you want to be heard?

9           MS. SCHWARTZ:  Yes, Your Honor.  And I apologize

10  because it appeared to me that Mr. Colodny might have read

11  our papers to be critical of him.  That really wasn't the

12  intent.  And so before he went down a whole colloquy about

13  it, I thought --

14          THE COURT:  Let me just say what my reading, that

15  the U.S. Trustee argued that the motion seeks relief, that

16  it isn't consistent with the Committee's fiduciary duty to

17  all Creditors because it focuses only on one subsection,

18  even if that subsection is a majority or large proportion of

19  the committee.  The U.S. Trustee believes that there are

20  constituents of the Committee that would not benefit from

21  the filing of the class action.  So I'm not relying on Mr.

22  Colodny's reading --

23          MS. SCHWARTZ:  Okay.

24          THE COURT:  -- of the response.

25          MS. SCHWARTZ:  Then let me address that.

Page 76

```
 1              THE COURT:  I'm relying on my own --

 2              MS. SCHWARTZ:  Right.

 3              THE COURT:  -- my own reading of it

 4              MS. SCHWARTZ:  Yeah.  No, no, no, but what I --

 5     all I wanted to say about that, Your Honor, which I thought

 6     would be helpful, is that where we said that it was filed in

 7     haste, the point was that there was only two weeks, and it

 8     was a very serious motion that was being filed.  Because

 9     there's no question that the Creditors' Committee has a

10     fiduciary duty that runs to every single one of its

11     constituents.

12              It doesn't look like I'm impressing you with that

13     argument, Judge, but what I'm trying to get across here is

14     that we understand.  And I think Mr. Colodny made a very

15     compelling argument with regard to the difficulties of a

16     body of Creditors that are largely, if not entirely, pro se.

17     I completely understand that, and I completely understand

18     the need for efficiency and the ability to have a good

19     process.  There's no question about that.  Our problem --

20              THE COURT:  But the amended -- the --

21              MS. SCHWARTZ:  -- really --

22              THE COURT:  Excuse me.  The amended bar date, as I

23     understand it, is April 28, 2023.

24              MS. SCHWARTZ:  Right.

25              THE COURT:  And you would -- you know, Mr. Leblanc
```

Page 77

```
1    will love it if that bar date sticks and only a small number

2    of pro se Creditors actually file amended proofs of claim.

3    That's not going to happen, okay?

4              MS. SCHWARTZ:  Okay.  But Your Honor, what I --

5              THE COURT:  Let me make it crystal clear.

6              MS. SCHWARTZ:  Right, but what -- I understand

7    that, Your Honor.  I got that, but the one thing that I

8    think that what we said to Your Honor was that it's really

9    not the place for the Creditor's Committee to file this

10   claim.  They proposed an alternate process.  They say, oh,

11   where it's going to be taking -- it's going to take too much

12   time, etcetera, it's a cost to the estate.

13             It may be a cost to the estate, but clearly where

14   the cost is outweighed by the structure and integrity of the

15   system which uses an unsecured Creditors' Committee to

16   represent all constituents, that the better approach would

17   be to have their independent person be able to do it.

18   Because if in fact, Your Honor, they do file their motion

19   for class certification, and let's say Your Honor actually

20   grants the class certification, who's going to be counsel to

21   the class?  Is then counsel to the Creditors' Committee also

22   going to be counsel to a class of the constituents?

23             THE COURT:  Let me ask you, Ms. Schwartz.  The

24   Committee argued forcefully, was unsuccessful, but argued

25   forcefully that all of the earn assets were property of the
```

1    estate.  And a fairly -- you know, a sizeable number of pro

2    se Creditors opposed that position.  They said it's mine,

3    not the Debtors'.  Did Committee counsel violate a fiduciary

4    duty of the Debtor when it took the position that it

5    believed was the correct position?  That actually on this

6    they were successful, that it was property of the estate?

7              MS. SCHWARTZ:  No, I --

8              THE COURT:  There were plenty of people who argued

9    the other side, but it --

10             MS. SCHWARTZ:  I hear what you're saying, Judge.

11             THE COURT:  No, wait.  Stop.  Does it happen all

12   the time?  No, but I've had lots of cases where the

13   committee in a case takes a position that's contrary to the

14   position of some of the people who are their constituency.

15   I mean, that happens all the time.

16             MS. SCHWARTZ:  That's right.

17             THE COURT:  And the position of the U.S. Trustee

18   is, no, they can't do that.  Well, of course they can.

19             MS. SCHWARTZ:  I don't think it's that broad, Your

20   Honor.  I wouldn't say that that's what we're arguing.  What

21   we're saying here is that what they're proposing here is

22   something that, as Mr. Leblanc mentioned, has never before

23   been done.  They want to file a -- they're actually taking a

24   formal class within the entire constituency.  It's not clear

25   from the motion, and I think that's part of the reason why

Page 79

```
1    we said that it was filed in haste.

2             It's not clear what conflicts can arise between

3    the -- who the Creditors are in the various creditor holder

4    groups that they have.  And also, Your Honor, that an

5    unsecured Creditors Committee, also in the process when the

6    United States Trustee appoints the members of the Committee,

7    it is a fundamental principle that the Creditors Committee

8    has a fiduciary duty to all of the constituents.  And that

9    to spend its effort to represent one group --

10            THE COURT:  (Indiscernible) right back.  No, wait

11   a second now.  The Committee took the position that all of

12   the earn assets were property of the estate.  That was not

13   the position of all the Creditors.  Are you saying they did

14   something wrong when they took the position --

15            MS. SCHWARTZ:  No.  No.

16            THE COURT:  -- that the earn assets were property

17   of the estate?  That's exactly a similar circumstance.  Not

18   everybody agreed with it.  It wasn't because simply the

19   Committee advocated for a position that the Court ruled the

20   way it did.  I evaluated all the arguments, including the

21   pro se arguments, and some were represented by counsel.

22            MS. SCHWARTZ:  Then I'm not clear.  Then I'm not

23   being clear, Judge.

24            THE COURT:  Look, I've heard the argument.  I

25   understand --
```

```
 1            MS. SCHWARTZ:  But I didn't get --
 2            THE COURT:  I read the paper that your office
 3      filed.
 4            MS. SCHWARTZ:  Okay.  Fair enough.  But Judge, you
 5      know, I would just close by saying that we are -- I
 6      definitely understand the dynamics.  I understand that
 7      you've allowed certain things in other cases.  I think that
 8      this would be a poor precedent on a go-forward basis to
 9      permit Creditor Committee counsel to be representing in a
10      separate process.  And also, I would like an answer to the
11      question would the Creditors Committee then, if the class
12      was certified, be counsel to the class as well as the
13      Creditors Committee?
14            THE COURT:  Well, we'll have to wait until there's
15      a class certification hearing if I grant the motion before
16      me, and the U.S. Trustee can take the position that it
17      wants.  And it may be that Creditors Committee counsel will
18      come up with a solution that, you know, satisfies everyone
19      but Mr. Leblanc --
20            MS. SCHWARTZ:  Well, that --
21            THE COURT:  No.
22            MS. SCHWARTZ:  -- well, we might -- but --
23            THE COURT:  But you know --
24            MS. SCHWARTZ:  -- Your Honor, the better --
25            THE COURT:  -- I heard -- stop.  Andrea, I'm done.
```

```
 1    Stop.  I've heard enough.  I don't want to hear anymore,

 2    okay?  There are a number of hands raised.  Let me hear --

 3    Mr. Koenig, do you want to be heard on behalf of the Debtor?

 4           MR. KOENIG:  Good morning, Your Honor.  Chris

 5    Koenig, Kirkland and Ellis for the Debtor.  Thank you.  I'll

 6    be brief.  We didn't file a pleading in support of or

 7    opposing --

 8           MS. SCHWARTZ:  Did you see the judge wave his

 9    hands to shut me up?

10           MR. KOENIG:  -- the motion.  We believe that --

11           MS. SCHWARTZ:  That was bad.  (Indiscernible) --

12           THE COURT:  Andrea, mute your line, please.  I

13    could hear that.  You're talking.  You're muted now.  I

14    don't appreciate the comment you made about shutting you up,

15    okay?  It was completely inappropriate.  Mr. Koenig, go

16    ahead.

17           MR. KOENIG:  Thank you, Your Honor.  While we

18    don't have a position, of course the Committee hasn't filed

19    a proof of claim or a class claim motion.  We'll have to

20    review what is filed.  We do believe that the process that

21    the Committee is proposing is very reasonable and frankly

22    will aid efficiency.  As Your Honor knows, we've been

23    struggling with the issue of how to deal with the claims

24    that have been filed.  We filed Bellwether objections and

25    we've talked about at prior hearings how we were trying to
```

Page 82

1    use that process to advance resolution of claims in this

2    matter.

3            What we've done is we've pushed pause on the

4    Bellwether claims process in light of what the Committee is

5    suggesting, we've done that because we do believe that this

6    is going to be a much more efficient process than having to

7    deal with 23,000 claims on an individual basis.  The

8    Committee can deal with claims that are common to all

9    account holders.  That should aid the resolution process.

10           But you know, I find it very astonishing, frankly,

11   that Mr. Leblanc is actually arguing that there's, I wrote

12   it down, no measure of efficiency here.  This is certainly

13   going to be far more efficient than what the alternative is,

14   which is for each and every individual Creditor to have to

15   receive an amended bar date notice, decide whether they have

16   a claim to be filed, and file claims.

17           I note that the Debtors have 600,000 account

18   holders approximately.  Only 23,000 claims were filed prior

19   to the original bar date.  That's about three percent.  And

20   so you know, certainly we -- you know, Creditors are advised

21   of their rights and are receiving mailings and emails and,

22   you know, hopefully are filing what they need to file.  But

23   in this case in particular when you have so many pro se

24   Creditors who are similar situated to one another, it would

25   be unfair to expect each and every one of them to file a

1   claim by an amended bar date on 35 days' notice.

2           We believe that this process is far more efficient

3   and is likely to lead to, as Mr. Colodny said, a fair fight

4   on the merits between the Committee, the Series B, and we'll

5   see what position the Debtors take after the Committee file

6   their papers.  But we believe that there is significant

7   efficiency, as Mr. Colodny said, compared to the Bellwether

8   claims objection process, which was what we devised when

9   there were individual Creditors.  But given now that the

10  Committee is going to be advancing a common argument on

11  behalf of all Creditors, we think that that will be far more

12  efficient.  So --

13          THE COURT:  Thank you.

14          MR. KOENIG:  -- I'll pause my remarks there.

15  Thank you, Your Honor.

16          THE COURT:  Thank you, Mr. Colodny.  All right.  I

17  have all these arguments down on this.  I've spent a lot of

18  time on this motion.  I don't need to hear anybody else.

19  I'm approving the motion, granting the Committee leave to

20  file a class claim.  This does not resolve the issue of

21  whether the class is going to be certified or whether there

22  are -- well, we'll see how that does.

23          Let me give a brief statement of reasons.  I'm not

24  going to write an opinion on it as I don't want to slow the

25  process down.  Some of these issues will be dealt with when

Page 84

1   I rule on any motion for class certification.  But class

2   actions in bankruptcy, certainly in contested matters,

3   they're at the discretion of the bankruptcy court, and I

4   apply Rule 9014.  Bankruptcy Rule 9014 applies only to

5   contested matters, but authorizes the bankruptcy court on

6   motions to direct that one or more of the rules of Part 7,

7   which includes 702.3 shall apply.

8            While most courts agree that class proofs of claim

9   are allowed in bankruptcy proceeding, the right is not

10  absolute.  I've written on this issue before in MF Global

11  and in other cases as well.  And although the exercise of

12  discretion is necessarily case-in-fact specific, bankruptcy

13  courts generally consider three factors in determining

14  whether to apply Rule 23 to claims process.

15           One, whether the class was certified pre-petition.

16  Here it's not, but pre-petition -- the alleged facts

17  establishing fraud were not known.  Whether the putative

18  class members received notice of the bar date, well, there's

19  an amended bar date, but it's totally unrealistic to expect

20  that 600,000 or even a fraction of those people will file an

21  amended proof of claim.

22           While the focus of Mr. Leblanc and others has been

23  on a fraud claim where reliance may or may not be required

24  under these circumstances, there may well be statutory

25  claims that don't include the same reliance requirement.

Page 85

1    When I wrote the opinion on against which entity claims

2    would reside, I made clear that that was only a ruling with

3    respect to the contract claims.  And so there may be both

4    common law claims and statutory claims, so I don't know the

5    full range of claims that may be asserted in a class proof

6    of claim.

7              And the third factor is -- the second factor was

8    about notice of the bar -- amended bar date.  I talked about

9    that, and whether class certification would adversely affect

10   administration of the estate.  Those are the three factors

11   that I will refer to as the Music Land factors, 362 B.R. at

12   pages 654 and 655.  I won't go through a separate discussion

13   at each of the Musicland factors, but I've certainly

14   considered it with respect to this pending motion.

15             Here, it seems that equitable considerations weigh

16   strongly in favor of granting this motion.  In considering a

17   request for class proofs of claim filed by creditors, the

18   Court of Appeals in the Fourth Circuit held that Bankruptcy

19   Rule 7023 is an equitable manner to give effect to the

20   purposes of the Bankruptcy Act.  See Gentry v. Siegel, 668

21   F.3d 83, 89 (4th Cir. 2012).  I consider these equitable

22   considerations to be highly relevant here.

23             A minority of the 600,000 putative class members

24   are represented by counsel, and none of them have had enough

25   time to review the customer claims opinion or research

Page 86

1    theories.  And the Committee has appealed from the customer

2    claims opinion, as it certainly could.

3             A significant portion of the claimants do not have

4    and have not ever lived in the United States and are

5    completely unfamiliar with the American legal system.

6    Indeed, the pro se creditors who have filed papers on this

7    motion are highly supportive of the Committee's motion to

8    proceed to class or by any other collective process

9    available.

10            Denying the motion is likely to result in only the

11   sophisticated and representative claimants submitting their

12   claims prior to the amended bar date to the detriment of the

13   great majority of creditors.  That outcome goes against the

14   fundamental tenet of bankruptcy, which is a fair and

15   equitable distribution of assets to creditors.

16            I've certainly taken seriously the Series B

17   preferred holders' objection.  It's premature.  They will no

18   doubt litigate strenuously whether the class should be

19   certified and the Court will deal with that when it arises.

20            Mr. Colodny, submit the order in Word format and

21   it will be entered.  Let's move on on the agenda.

22            MR. COLODNY:  Thank you, Your Honor.

23            MR. KOENIG:  Thank you, Your Honor.  I'm going to

24   cede the lectern to Mr. Kwasteniet, who will handle the

25   balance of the agenda.  We're at the status conference

Page 87

```
 1    section of the agenda this morning.

 2              THE COURT:  Okay.  Go ahead, Mr. Kwasteniet.

 3              MR. KWASTENIET:  Ross Kwasteniet again from

 4    Kirkland & Ellis on behalf of the Debtors.  I believe that

 5    brings us to Item 16 on the agenda.

 6              Your Honor, we previously filed at Docket 2336

 7    Debtor's motion to approve a key employee incentive plan.

 8    Your Honor, we requested adjournment of that motion as we

 9    are continuing to engage in active discussions with counsel

10    to the committee as well as the U.S. Trustee's Office about

11    the design, the metrics, who should be included in that

12    program.  We are hopeful that with additional time, we'll be

13    able to resolve or narrow objections to the proposed KEIP.

14    And that has been adjourned to our May omnibus hearing, Your

15    Honor.

16              THE COURT:  All right.

17              MR. KWASTENIET:  Your Honor, the next items on the

18    agenda are related, and I am aware that Your Honor has

19    adjourned those to a future hearing date.  They include a

20    request from an individual employee for reimbursement of

21    legal fees as well as the Debtor's motion for approval of

22    procedures pursuant to which the Debtors may pay legal fees

23    for employees current and former who cooperate in the

24    various ongoing investigations.

25              As I understand it, Your Honor, you had asked for
```

Page 88

```
 1   a status conference today, so I'm happy to answer any
 2   questions, hear any remarks you have, or say anything that
 3   you would like me to in connection with either of those.
 4   And I believe also counsel for the individual employee, Mr.
 5   Nolan, is on the line and should be available to address
 6   that application for reimbursement, Your Honor.
 7            THE COURT:  No, my comment would be this.  And
 8   I'll certainly give Mr. Nolan's counsel an opportunity to
 9   address it.  So there was on the docket for today the
10   application of Connor Nolan pursuant to 11 U.S. Code §
11   503(b)(3)(D) and 503(b)(4) for allowance and payment of
12   professional fees.  His application is at ECF Docket 2045.
13            There also has been I think adjourned several
14   times is the Debtor's motion for approval of fees.  I don't
15   have the exact docket number, but it's for -- with
16   cooperation agreements, reimbursement of fees.  And I
17   thought they could be handled together.  I mean, Mr. Nolan
18   is certainly entitled to have his motion heard.  But the
19   issues really are very much the same in the Court's view.
20   And that's why I adjourned Mr. Nolan's application as well.
21            You know, Mr. Colodny, let me ask, does the
22   Committee -- where are these discussions going?  And then
23   I'll ask Ms. Schwartz as well if she wants to address the
24   issue.  I'm not deciding it today.  This is really a status
25   conference.  Go ahead, Mr. Colodny.
```

1           MR. COLODNY:  Yes, Your Honor.  What the Debtors

2     proposed was a procedures motion to provide for a framework

3     through which we could both determine whether employees'

4     cooperation and the reimbursement of their expenses is for

5     the benefit of the estate.  And what Mr. Kwasteniet made

6     clear in the motion and we've been discussing since then is

7     that no expenses would be paid without both the Debtor and

8     the Committee consent and full disclosure.

9           We've been working I think cooperatively with Mr.

10    Kwasteniet to reach an agreement and also been working

11    cooperatively with the United States Trustee.

12          I sent revised forms of order over the weekend

13    before -- I believe it was Friday before Your Honor

14    adjourned the hearing.  And I think that we were fairly

15    close.  But we're not there yet.  And I completely agree

16    with Your Honor that the reimbursement of Mr. Nolan should

17    either be dealt with with those procedures if we are able to

18    reach agreement, or separately on his own application if the

19    procedures are not able to move forward.

20          So I think where I sit on it is whether the

21    payment of fees benefits the estate is going to be an

22    extremely detailed and fact-intensive determination.  And I

23    believe that together the Debtors, the Committee, and the

24    United States Trustee can make that determination.  And I

25    hope we can get there on the procedures to find a way that

1    we can strike the appropriate balance of making sure that

2    any payment benefits the estate.

3              THE COURT:  All right.  Ms. Schwartz, do you want

4    to be heard on this?

5              MS. SCHWARTZ:  Thank you, Your Honor.  Andrea

6    Schwartz for the U.S. Trustee.

7              We are having continued discussions with the

8    Committee.  We have some fundamental differences, but we are

9    trying to work through to see as much progress as we can

10   make on it.

11             THE COURT:  Okay.  Look, you know, one way or the

12   other either as -- hopefully if it can be resolved

13   consensually, fine.  I mean, if it can't, then there's a

14   contested motion, the Court will deal with it.  So we'll

15   leave it at that for today.  Okay?  All right.

16             Anything else that we have to cover?

17             MR. KWASTENIET:  Thank you, Your Honor.  I believe

18   that's it on the agenda.  And the Debtors did not have

19   anything further for today.

20             THE COURT:  Okay.  Anybody else have any issues

21   they want to raise?

22             Mr. Herrmann?

23             MR. HERRMANN:  Yes.  Immanuel Herrmann, pro se

24   creditor.  Thank you, Your Honor.  Just a quick thing.  I

25   think it would extraordinarily helpful if a transcript of

1    today's hearing could be posted.  And I also wanted you to

2    consider -- I mean, I can file a motion, but maybe sua

3    sponte it would be I think very helpful to creditors if we

4    could get transcripts for every hearing basically going

5    forward and backwards.  I know there's redaction issues and

6    other issues.  But I think for transparency and just going

7    forward, it would be extremely helpful.

8              THE COURT:  I won't rule generally.  I would

9    request that Debtor's counsel order a transcript for today,

10   that it can be put on.  I'm not sure, Mr. Herrmann, I agree

11   that every hearing we've had is worthy of having a

12   transcript posted.  There actually have been some not

13   controversial hearings that we've had.

14             MR. HERRMANN:  That's true, Your Honor.  Well,

15   thank you.  I appreciate that.  And I'll look at filing a

16   motion or just talking with the Debtors and others about --

17             MR. KOENIG:  Your Honor, with your permission, we

18   will order a transcript and then file a notice on the docket

19   that attaches a transcript when it's available.

20             THE COURT:  Great.  Thank you very much.  All

21   right.

22             Mr. Holcomb?  Mr. Holcomb, you need to unmute if

23   you want to be heard.

24             MR. HOLCOMB:  I'm sorry.  Can you hear me, y h?

25             THE COURT:  Yes, I can.  Go ahead.

Page 92

1          MR. HOLCOMB:  Thank you, Your Honor.  Lucas

2     Holcomb, pro se creditor.  I've been watching these court

3     proceedings since the case began and I've learned that pro

4     se creditors, including myself, have no idea how to

5     effectively represent ourselves in court.  So I do

6     appreciate the approval of the classifying motion.

7          I would like to bring up an issue I've had with

8     the Debtors since approval of the Pure custody withdrawals,

9     which, again, as a pro se creditor I'm not aware if this is

10    the correct process to present this dispute.  But since the

11    Pure custody withdrawal began, I have several -- in fact,

12    four accounts with the debtor.  And I completed KYC

13    verification on all four of them.  And then I started my

14    withdrawal process.  There was about $500 in each account

15    that was in Pure custody.  And I had about $100,000 in Earn

16    split between those four accounts.

17         I did start that withdrawal process.  But

18    unfortunately, the withdrawals never came through.  And in

19    attempt to log in, I found that my accounts were suspended.

20    I had an email exchange with the Debtors, I believe it was

21    March 2nd, with the customer service.  And I complete

22    another third-party KYC verification at their request.

23         However, the customer service discontinued

24    responding to my emails as of March 21st with no resolution

25    to unsuspending my account and allowing me to withdraw my

1    Pure custody assets.  And since then, I'm been in contact

2    with (indiscernible), but we have been unable to

3    (indiscernible) resolution on the matter.

4              THE COURT:  Mr. Holcomb, let me ask you this.  I

5    know you said you've been exchanging emails.  Have you been

6    able to speak with one of the lawyers from -- the Debtor's

7    lawyers at this point or just exchanging emails

8              MR. HOLCOMB:  I've been exchanging emails with

9    Celsius creditors answers, and they've responded several

10   times.  And they've said we are attempting to resolve this

11   issue with the company and appreciate your patience.  But

12   again, it's been going on for a little bit now.

13             THE COURT:  Mr. Koenig, I see you've moved in

14   front of the microphone.  Can you address this?

15             MR. KOENIG:  Again, Chris Koenig for the Debtors.

16   Thank you, Your Honor.

17             So, yes, I've been corresponding with members of

18   our team.  We've been in contact with Mr. Holcomb.  The

19   issue is that his accounts are suspended under the Debtor's

20   procedures.  So we need to continue to work through that.

21   We've been exchanging emails with him, and we're happy to

22   continue to do so.  But --

23             THE COURT:  Let me ask this.  Either you or

24   designate someone from your team speak with Mr. Holcomb by

25   telephone.  I mean, it can be -- I mean, emails are fine,

```
 1    but it can be frustrating sometimes going back and forth.

 2    If it can't be resolved, Mr. Holcomb will have to, you know,

 3    seek to get relief from the Court.  But would you please

 4    reach out and speak with Mr. Holcomb and see whether the

 5    issue can be resolved and you can narrow exactly what needs

 6    to be done?  Okay?

 7              MR. KOENIG:  We certainly will.  Thank you.

 8              THE COURT:  Okay.  Mr. Holcomb, let's move forward

 9    on that basis.  I don't have facts on which I can rule at

10    this stage.  So let's see if you can cut through it by

11    speaking directly with either Mr. Koenig or one of the other

12    lawyers of Kirkland.  Okay?

13              MR. HOLCOMB:  Thank you, Your Honor.  I appreciate

14    that.  And I've just emailed him my phone number so he can

15    contact me.  Thank you so much.

16              THE COURT:  Great.  All right.

17              Mr. Porter?

18              MR. PORTER:  Thank you so much, Judge.

19              Judge Glenn, I asked you take into consideration

20    the fact that we --

21              THE COURT:  You've just muted again, Mr. Porter.

22              MR. PORTER:  I'll start again, Judge.  I

23    apologize.

24              THE COURT:  Go ahead.

25              MR PORTER:  I asked you to take into consideration
```

1    the fact that we were lied to and most of us are typical

2    retail depositors who fell for Celsius' marketing scheme.

3              Sir, we need to maximize our recovery as creditors

4    and move on with our lives.  Under ordinary circumstances,

5    most of us would never consider investing in a hedge fund

6    that has no track record.  This would not be a suitable

7    investment for most of the depositors.  Please make sure

8    that we are permitted to see all of the competing bids at

9    the appropriate time.  The offers that compete with

10   NovaWulf's plan to lock us up into a hedge fund.  Please

11   empower our UCC to give the appropriate weighting to our

12   assets on deposits, not the number of creditors with very

13   small balances.

14             Creditors fear a cramdown of NovaWulf's hedge fund

15   plan and we hope to avoid that fate.  Allow us to maximize

16   our recovery as soon as possible.  We are anxious to put

17   this Celsius experience behind us.  Thank you.

18             THE COURT:  Mr. Ivene?

19             MR. IVENE:  Jason Ivene, pro se creditor.

20             I just wanted to see if there was an update on

21   assets sent in after the petition date.  Because I've seen

22   no updates or anything.

23             THE COURT:  Okay.  I understand that issue.  And

24   maybe, Mr. Koenig, can you address that?  Because that's

25   been discussed at prior hearings.  Obviously it was after

Page 96

1    the pause and assets were received and they were sort of --

2    go ahead.

3                MR. KOENIG:  Thank you, Your Honor.  We're in the

4    process of filing the schedule of eligible creditors, and I

5    expect that that's going to be filed in the coming days.

6    It's taken a little bit of time, obviously, but we have had

7    other withdrawals that we've been working on processing.

8    And that is next up in the queue, and it will be filed in

9    the coming days.  I expect this week.

10               THE COURT:  Okay.  Thank you very much.

11               Mr. Mendelson.

12               MR. MENDELSON:  Good afternoon, Judge.  Thanks

13   again for your time.

14               Very quickly, regarding the class claims, are we

15   allowed to go after the C-suite level executives, the

16   individual executives at Celsius, Alex Mashinsky and Daniel

17   Leon, Nuke, et cetera?  Or is it just against business

18   entities?

19               THE COURT:  So, look, I can't give you legal

20   advice.  I would just say this.  There already has been

21   litigation that's been filed against Mr. Mashinsky and

22   others.  And the automatic stay does not apply by its terms

23   to anyone other than the Debtor.  So I'm not going to give

24   you any legal advice.  You're not the only creditor with an

25   interest in pursuing a recovery from any source that's

```
 1    available.  I'm going to leave it at that.  That's not my

 2    role here.

 3              MR. MENDELSON:  Okay.  Thank you.

 4              THE COURT:  (indiscernible).

 5              MR. PELED:  Thank you, Your Honor.  I represent

 6    Ignat Tuganov, who filed a response --

 7              THE COURT:  You have to -- stop.  Just identify

 8    you -- I called you by your name, because I see it on the

 9    screen.

10              MR. PELED:  No problem.

11              THE COURT:  I may have mispronounced it.  But you

12    have to identify yourself.

13              MR. PELED:  Arie Peled of Venable LLP on behalf of

14    Ignat Tuganov.  We filed a response to the class claim

15    motion.  Your Honor, you ruled on the motion, so I'm not

16    going to get through any of those points.  I just wanted to

17    make one point if I could with respect to the proposed

18    order.  And you mentioned it when you were discussing it,

19    that you envisioned that customers would be able to file an

20    individual claim if ultimately class cert is denied.  We

21    were just hoping that that could be made explicit in the

22    order somewhere so that people have that comfort with

23    respect to the procedure going forward.

24              THE COURT:  I guess my response to that would be

25    to work with the Committee's counsel.  I thought that there
```

```
 1    had been an agreement on modifying the form of the order to
 2    deal with that.  Obviously your client has already filed a
 3    claim, filed a lawsuit that raises many of these same
 4    issues.  So I'm going to leave it at that.
 5             MR. COLODNY:  Your Honor, we included some
 6    language in the proposed order --
 7             THE COURT:  You have to identify -- Mr. Colodny,
 8    you have to identify yourself for the record when you speak.
 9             MR. COLODNY:  Sorry, Your Honor.  Aaron Colodny
10    from White & Case on behalf of the Official Committee of
11    Unsecured Creditors.
12             We included language in the proposed order which
13    was meant to address Mr. Tuganov's objection.  We didn't get
14    a chance to discuss it with his counsel.
15             I would propose, and I think the Debtors -- well,
16    I'll let Mr. Koenig speak for himself.  But we can include
17    in the proposed order some language that embodies your
18    Court's -- Your Honor's oral ruling that the bar date will
19    be told pending class certification.
20             THE COURT:  That's fine.  Okay.  Mr. Turpin?
21             MR. TURPIN:  Basically I think I might just have
22    the same question that was just addressed.  So I'm James
23    Turpin, pro se.  And I just wanted to know if the -- if the
24    class claim is not certified, is the bar date going to be
25    extended?
```

1              THE COURT:  Yes.  The answer is yes.

2              MR. TURPIN:  Okay.  Because I think many of us

3     have not retained counsel.

4              THE COURT:  Right.

5              MR. TURPIN:  And if we're out of state or --

6     obviously you mentioned there's many people out of the

7     country.  And so it's -- it would be very costly to retain

8     counsel unnecessarily.

9              THE COURT:  I agree with everything you've said.

10    And my understanding of class action law is if a class

11    certification motion is denied, the putative class members

12    will be given opportunity to either file a claim or a

13    lawsuit as they choose.  So that will have to be dealt with

14    in any order that's entered if class certification is

15    denied.  But that is certainly what my intention is, and

16    it's certainly my understanding of what the state of the law

17    with respect to denial of class certification is.

18             MR. TURPIN:  Thank you, Your Honor.

19             THE COURT:  Okay.  All right.  Mr.  -- don't know

20    whether it's -- I guess Ms. Kuhns.  Excuse me.  Go ahead.

21             MS. KUHNS:  Yes, Your Honor.  Good morning or good

22    afternoon.  I guess it's afternoon now.  Joyce Kuhns for the

23    Ad Hoc Group of Earn Account Holders.

24             First of all, I wanted to extend my appreciation

25    to the Committee for looking forward to a collective

1    process.  You've heard today that this has been time-

2    consuming, complicated, and burdensome.  And particularly to

3    the Earn account holders.  And so we are looking forward to

4    working hopefully cooperatively with the Committee and the

5    constituents to a mutually-beneficial result.  I think that

6    a collective voice has been missing, obviously, on behalf of

7    the Earn accountholders.  And as I said, I hope we can

8    streamline this process to make it the most effective one

9    for all involved and the most efficient with the least cost.

10            THE COURT:  Thank you, Ms. Kuhns.

11            All right.  Anybody who has not been heard yet

12   wishes to be heard?

13            All right.  The Court is going to stand in recess.

14   We are adjourned.

15            (Whereupon these proceedings were concluded.)

16

17

18

19

20

21

22

23

24

25

Page 101

1                            I N D E X

2

3                            RULINGS

4                                            Page      Line

5    Settlement, GRANTED                     49        2

6    Motion to Approve the Wohlman Settlement,

7    GRANTED                                 53        12

8    Motion for Committee to File a Class Claim,

9    GRANTED                                 83        19

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 19, 2023

| & | | | |
|---|---|---|---|
| **&**   3:16,16,21 4:1,13,18 7:3 7:12,19 8:8 9:1 9:16 11:16 12:1,8 87:4 98:10 | **10167**   8:18 **1071**   3:18 **1072**   4:3 **10:00**   6:18,25 **10:02**   1:17 **11**   6:21 28:16   72:7 88:10 | **1407**   4:3 **1408**   5:6 **1419**   4:14 **1450**   4:22 **1451**   3:18 **15**   43:3 44:14   45:3 | **18**   1:16 36:25   59:13 **1800**   9:11 **1823**   3:18 4:3,8   4:15,22 5:7,15   5:22 6:7 |

| 0 | | | |
|---|---|---|---|
| **05/17/2023**   6:17,25 **05620**   10:3 **07068**   10:17 **07102**   12:18 | **111**   12:10 **1114**   6:12 **1130**   6:12 **1132**   6:13 **1133**   6:13 **1139**   6:13 **1140**   6:13 **1144**   6:13 | **151**   11:11 **15th**   15:9 **16**   17:14 87:5 **1606**   5:6 **1612**   5:22 **1635**   4:22 **166**   18:17 **1668**   4:3 | **1841**   6:14 **1850**   9:3 **19**   101:9   102:25 **1907**   6:14 **199**   63:21 |

| 1 | | | 2 |
|---|---|---|---|
| **1**   5:5,13 8:10   19:13 42:21   51:8 52:12 **1.3**   44:13 **10**   6:4,17 **10/10/2022**   6:6 **10/31/2022**   3:17 4:2,8,14   6:6 **100,000**   52:23   92:15 **10004**   1:14 **1001**   4:14 **10014**   11:4 **10020**   11:19 **10022**   7:22   10:10 **1003**   6:12 **10036**   11:12 **1006**   11:3 **10119**   9:19 | **11501**   102:23 **1177**   6:13 **1182**   6:13 **11th**   53:10 **12**   17:15 101:7 **1200**   6:13 **1204**   6:13 **12151**   102:6 **1221**   11:18 **1224**   4:22 **1274**   5:14 **1275**   5:14 **1283**   6:14 **1287**   5:6 **13**   3:25 48:7 **13,000**   17:4 **1301**   7:14 **1366**   6:14 **1374**   5:15 **138**   18:17 **14**   17:14 | **1685**   6:7 **1688**   4:15 **1694**   6:14 **16th**   15:14 **17**   15:16 **1705**   3:18 **1707**   4:3 **1709**   4:8 **1710**   4:14 **1712**   40:3 **1715**   4:22 **1716**   5:6 **1717**   6:7 40:4 **1718**   5:14 **1719**   6:6 **1720**   5:22 **1721**   3:18 **1736**   3:18 4:3,8   4:15,22 5:7,15   5:22 6:7 **1740**   6:7 | **2**   5:21 42:21   101:5 **20**   29:24 30:12   36:16,23 **20004**   7:15 **20006**   9:4 **2007**   49:9 **201**   11:3 **2012**   85:21 **2019**   58:17 **2020**   58:17 **2021**   58:17   59:13 60:1 **2022**   3:25 4:1   4:21,22 5:5,6   5:14,14,21,22   6:4,5 28:23,23   51:8 58:17 **2023**   1:16 2:4   28:24 76:23   102:25 **2045**   6:24   88:12 |

**2055**  6:14
**20th**  67:24
    68:7,15,23
**21**  2:4
**2170**  39:24
**2181**  6:14
**21st**  16:3 92:24
**22,000**  19:2
**22-10964**  1:3
**23**  71:18 72:14
    74:19 84:14
**23,000**  82:7,18
**2331**  2:16 53:8
**2334**  2:11 42:5
    42:14
**2335**  2:5 26:8
**2336**  6:14 87:6
**2337**  6:14
**2339**  6:15
**2340**  6:15
**2343**  6:15
**2367**  2:23
**2369**  3:4
**2371**  3:4
**2373**  6:24
**2374**  6:24
**2382**  6:24
**2386**  6:24
**2387**  3:18 4:3,8
    4:15,23 5:7,15
    5:22 6:7,24
    32:4
**2395**  6:15
**2396**  3:11
**2397**  6:15
**2399**  3:11

**2400**  3:11,12
**2401**  6:15
**2404**  6:15
**2408**  6:15
**2411**  6:16
**2413**  6:15
**2416**  2:16
    50:24 51:5
    53:11
**2430**  6:16
**2432**  3:11
**2434**  6:24
**2438**  2:23 3:4
**2439**  3:4,12,12
**244**  58:18
**2441**  6:24
**245**  8:17
**2458**  2:5 26:25
    27:6
**246**  58:18
**2460**  2:6 26:12
    27:2
**2467**  3:12
**2468**  3:12
**2471**  2:23
**2472**  2:23 3:4
**2473**  3:4
**2474**  3:12
**2476**  3:12
**2477**  3:4
**2478**  2:23
**2480**  2:23 3:4
**2481**  6:16
**2482**  3:12
**2483**  3:18 4:3,9
    4:15,23 5:15
    5:22 6:7

**2484**  3:12
**249**  58:4
**2490**  14:10
**2491**  16:13
**24th**  16:20
**25,000**  17:22
**250**  71:4
**261**  34:5
**262**  34:10
**2700**  12:3
**28**  18:18 76:23
**28,000**  18:2
**28th**  22:3 63:5
**29**  4:21
**2nd**  15:12
    92:21

**3**

**3**  6:21 42:3
    88:11
**30**  47:4 62:20
**30,000**  17:8
    19:3
**300**  7:5 102:22
**31**  4:1,22 5:6
    5:14,22 6:4
**32**  15:15
**330**  102:21
**3335**  9:18
**35**  83:1
**350,000**  52:24
**362**  85:11
**37**  16:20
**37,000**  18:9
**38th**  13:3

**4**

**4**  6:21 88:11
**4/18/2023**  6:17
**4000**  9:11
**42nd**  11:11
**45**  17:3
**45,000**  17:1
    18:1
**452**  49:9
**476**  56:16
**478**  49:9
**48075**  9:12
**49**  101:5
**49th**  11:11
**4th**  85:21

**5**

**5**  16:20
**50**  45:6 57:15
**500**  8:10 92:14
**503**  6:21,21
    88:11,11
**50th**  8:3
**5100**  12:10
**53**  101:7
**53711**  8:11
**55**  16:22
**555**  8:3 12:3
**570**  12:17
**58,000**  18:6,6
**59**  17:18
**590**  10:9

**6**

**60**  45:7
**600,000**  72:2
    82:17 84:20
    85:23

**601** 7:21
**60606** 12:11 13:4
**60654** 7:6
**65** 15:15
**654** 85:12
**655** 85:12
**668** 85:20
**68** 15:10
**6th** 10:9

**7**

**7** 17:21 84:6
**7/13/2022** 3:17 4:2,8
**7/14/2022** 4:14
**702.3** 84:7
**7023** 85:19
**72** 45:6
**72.5** 16:14 44:21,22
**737** 42:19

**8**

**8** 42:6,11
**80** 57:24 59:18
**83** 85:21 101:9
**85** 43:4 45:3
**85,000** 52:14
**89** 10:2 85:21

**9**

**9** 28:15
**90** 15:12
**900,000** 17:9
**90071** 8:4 12:4
**9014** 72:13 74:20 84:4,4

**9019** 43:10 49:3
**917** 6:12
**92** 63:21
**99** 36:14
**997** 6:12

**a**

**aaron** 12:6 54:4 98:9
**ability** 25:7 64:12 76:18
**able** 25:25 26:23 29:17 32:16 35:14 49:25 60:22 63:1 64:5 67:12 73:24 77:17 87:13 89:17,19 93:6 97:19
**above** 36:22
**absent** 52:6
**absolute** 84:10
**absolutely** 55:15 66:6
**access** 14:14
**accessible** 34:15
**accomplish** 57:21 62:24
**accordance** 16:10
**account** 3:9,11 9:10,17 10:8 15:7,10 16:14 16:17 34:22 45:17,25 54:10

54:11,13,25 55:12 56:5,6,9 58:10,14,15 59:1,18 62:15 62:17,20,23 65:9,16,22 66:1 82:9,17 92:14,25 99:23 100:3
**accountholders** 100:7
**accounts** 16:2 16:15 92:12,16 92:19 93:19
**accurate** 102:4
**acknowledged** 54:15
**acknowledges** 72:11
**act** 64:3 85:20
**action** 10:15 42:24 65:1,2 71:18 75:21 99:10
**actions** 54:23 62:23 63:16 64:10 70:15 84:2
**active** 33:15 87:9
**actively** 34:2 74:12
**actually** 23:22 30:21 33:4 48:6,8 53:18 60:12 70:12 74:16,23 77:2

77:19 78:5,23 82:11 91:12
**ad** 2:10 8:16 9:10,17 10:8 16:4 42:8,18 42:22,25 44:12 45:17 46:21 47:14,17 49:17 49:24 54:21 99:23
**added** 68:12
**addition** 16:7 19:25 26:9 45:21
**additional** 21:1 21:3 22:6 52:4 61:13 68:12 74:2 87:12
**address** 35:14 43:19 55:13 67:6 69:1 75:25 88:5,9 88:23 93:14 95:24 98:13
**addressed** 98:22
**addresses** 53:12
**addressing** 29:7
**adjourned** 28:17 67:17 87:14,19 88:13 88:20 89:14 100:14
**adjournment** 87:8

adjusted  17:9
  17:12,13
adjustment
  35:25,25 36:8
adjustments
  37:22 41:3,6
adler  8:20
administration
  60:25 61:1,4
  85:10
administrative
  65:15
admissible
  56:16,21
admit  64:6
admitted  51:5
  58:5
admitting  51:4
advance  82:1
advancing
  83:10
adverse  64:5,7
adversely  85:9
advertised
  60:10
advertising
  56:8 62:2
advice  96:20
  96:24
advise  22:25
  31:21
advised  29:22
  30:10 70:18
  82:20
advisor  2:4
  5:12 6:3 26:8

advisors  26:1
advisory  5:2
advocate  54:24
advocated
  79:19
advocating
  55:3
affect  60:24
  65:20 85:9
afternoon  54:4
  96:12 99:22,22
agenda  14:3
  19:16,18 20:21
  25:11,16 26:6
  28:24 29:17
  42:2,3 50:3,12
  54:2 86:21,25
  87:1,5,18
  90:18
aggregate
  43:23
aggregator
  44:5
agree  24:4
  30:25 48:21
  60:16,16,17
  67:21,24 68:15
  84:8 89:15
  91:10 99:9
agreed  32:11
  32:24 43:1
  68:22 79:18
agreement
  17:3 26:2
  39:16 42:7,12
  42:16 46:22
  51:16,17,18

52:12,13,16,19
  67:10 89:10,18
  98:1
agreements
  18:5 88:16
ahead  21:10
  24:15,22 25:13
  26:2,3 28:13
  31:6 37:11
  39:6 42:2
  46:12 48:16
  50:22,23 51:6
  51:8 54:7
  57:11 69:1
  81:16 87:2
  88:25 91:25
  94:24 96:2
  99:20
aid  61:1 81:22
  82:9
akin  3:21 4:1
alert  24:16
alex  69:18
  96:16
allegations
  54:19
allege  72:15
alleged  38:8
  52:1 84:16
alleging  51:25
allen  7:25
allow  28:17
  36:16,16 55:1
  95:15
allowance  3:23
  6:22 88:11

allowed  15:13
  36:18 37:1
  80:7 84:9
  96:15
allowing  62:13
  65:24 92:25
alongside
  61:10
alternate  77:10
alternative
  65:7 82:13
alternatively
  54:10
alvarez  4:13
amas  59:4 60:1
ambiguity  48:2
ambiguous
  48:2
amenable
  74:25
amended  14:3
  55:21,23 63:2
  70:11,19,21
  76:20,22 77:2
  82:15 83:1
  84:19,21 85:8
  86:12
america  4:13
american  86:5
americas  11:18
amount  32:22
  44:11 52:22
  53:20 67:3
amounts  45:13
amulic  11:23
  48:13,15,17,17
  48:20 50:4,7

analysis  32:23
  40:1 74:21
analyze  21:11
analyzing
  21:14 22:19
andrea  11:7,23
  27:9 31:7
  37:10 48:17
  80:25 81:12
  90:5
andrew  9:6
  10:19 67:15
angeles  8:4
  12:4
announced
  57:14
answer  46:8
  53:4 60:14,14
  80:10 88:1
  99:1
answers  93:9
anticipate
  66:13
anxious  95:16
anybody  27:24
  37:25 38:25
  39:11,13 40:22
  48:11 53:6
  83:18 90:20
  100:11
anymore  68:6
  68:14 75:1
  81:1
apap  9:14
apart  68:4
apologies
  24:19 50:7

apologize  75:9
  94:23
appealed  86:1
appeals  85:18
appeared
  75:10
applicable
  49:13,14
applicant  41:5
applicants
  28:16
application  2:2
  3:15,21 4:6,12
  4:18 5:2,10,18
  6:2,20 26:7,11
  26:14,21 27:16
  28:2,5 29:8,12
  36:2,18 38:3
  39:24 41:3
  88:6,10,12,20
  89:18
applications
  28:20,25 29:10
  29:14 31:23
  32:5,7,13
  35:21 36:9,14
  39:9,17 41:10
  41:16
applies  20:19
  84:4
apply  49:7
  52:5 72:13
  84:4,7,14
  96:22
appoint  3:9
appointed
  32:10 52:17

64:18 65:8
  66:12
appoints  79:6
appreciate
  24:4 32:2,4,5
  33:21 49:23
  81:14 91:15
  92:6 93:11
  94:13
appreciation
  17:12 99:24
appreciative
  32:16
approach
  54:25 55:2,4
  77:16
appropriate
  28:5 33:17
  35:17 45:12
  46:6 49:16,19
  52:5 67:16
  71:13,15 90:1
  95:9,11
approval  22:22
  29:11 35:22,23
  36:7 40:24,24
  41:10 43:20
  87:21 88:14
  92:6,8
approve  42:4
  49:20 53:7
  67:22 74:20
  87:7 101:6
approved  16:3
  28:5 31:3
  37:19 39:18
  41:10 52:17

66:3
approving  2:9
  2:14 6:10 16:7
  49:2 50:13
  53:12,17,23
  83:19
approximately
  17:22 36:25
  82:18
april  1:16
  15:14 16:20
  22:2 53:10
  58:17 59:13
  63:5 76:23
  102:25
apropos  33:24
argue  61:12
argued  75:15
  77:24,24 78:8
arguing  78:20
  82:11
argument
  30:19 57:10
  61:3 62:7 63:9
  71:14 74:17
  76:13,15 79:24
  83:10
arguments
  79:20,21 83:17
arie  11:14
  97:13
arises  86:19
arising  30:5
arose  20:23
articulated
  35:8

**asked** 33:12
52:2 61:7
87:25 94:19,25
**assert** 3:10
**asserted** 85:5
**asserting** 3:8
**asset** 46:2
**assets** 16:1,5
16:10,15 26:19
42:25 44:7,13
46:19 47:16
58:14 77:25
79:12,16 86:15
93:1 95:12,21
96:1
**associated**
44:15 52:25
**assume** 34:10
66:8,11
**assuming**
66:13
**assure** 22:11
25:1
**astonishing**
62:8 82:10
**attached** 42:13
52:12 53:8
**attaches** 91:19
**attempt** 92:19
**attempting**
93:10
**attorney** 3:17
**attorneys** 7:4
7:13,20 8:2,9
8:16 9:2,10,17
10:8,15 11:2
11:10,17 12:2

12:9,16 13:2
**attributable**
19:4
**auction** 21:18
22:16
**august** 5:5,13
5:21
**authority** 3:8
51:19 52:2
55:11 72:13
**authorized**
16:8,16
**authorizes**
84:5
**authorizing**
2:2
**automatic** 52:3
52:6 96:22
**available** 51:1
86:9 88:5
91:19 97:1
**avenue** 7:14,21
8:17 10:9
11:18
**average** 17:21
**averts** 44:1
**avoid** 95:15
**await** 37:5
**awarded** 35:18
**aware** 35:11
37:13 87:18
92:9

**b**

**b** 1:21 2:18
6:21,21 9:2
39:23 40:9
56:22 67:9

83:4 86:16
88:11,11
**b.r.** 63:21
85:11
**baby** 45:21
**back** 16:10
17:12 19:9
21:24 38:9
39:18 42:2,19
45:25 57:25
58:7 59:18
79:10 94:1
**background**
27:20 51:8
53:3
**backwards**
56:25 91:5
**bad** 81:11
**balance** 15:20
86:25 90:1
**balances** 15:19
95:13
**bank** 57:22
**bankruptcy**
1:1,12,23
43:10 49:4
56:15 64:14
84:2,3,4,5,9,12
85:18,20 86:14
**bar** 55:21,23
62:12,15 63:3
63:5 66:17
70:11 76:22
77:1 82:15,19
83:1 84:18,19
85:8,8 86:12
98:18,24

**based** 32:20
36:15 41:6
58:4 67:2
**basically** 91:4
98:21
**basis** 33:13
56:19 80:8
82:7 94:9
**bear** 67:5
**began** 61:17
92:3,11
**beginning**
15:12 33:11
60:12
**behalf** 3:9,10
26:5 27:8,10
28:1 35:16
38:1 42:1 44:8
46:14 49:24
50:11 54:5,9
54:11 55:12
60:21 62:1
65:8 71:11,12
71:21 72:1
81:3 83:11
87:4 97:13
98:10 100:6
**behlmann**
10:19
**belabor** 75:1
**believe** 24:25
27:12 31:12
42:19 43:9,25
44:6,12 45:20
46:1,5 52:20
53:1 54:17
60:18,25 64:24

65:12 66:18
67:1 68:5
69:13 70:2
71:19,23 73:3
74:16 81:10,20
82:5 83:2,6
87:4 88:4
89:13,23 90:17
92:20
**believed** 51:22
73:14 78:5
**believes** 75:19
**bellwether**
55:7 59:9,10
61:2,17 81:24
82:4 83:7
**belong** 47:16
**bench** 37:17
**beneficial**
100:5
**benefit** 44:16
75:20 89:5
**benefits** 48:22
51:12,14,19
89:21 90:2
**bernstein**
12:20 63:21
**best** 21:5 22:13
22:19 43:11
47:12 49:6
50:1 53:2,21
65:10 74:1
**better** 32:20
33:14 77:16
80:24
**bid** 19:21 22:5
22:13 23:21

25:2,6,7
**bidder** 23:4,11
23:22
**bidders** 21:5,9
23:9
**bidding** 21:1
22:6
**bids** 19:24 20:1
20:2,3,7,8,13
20:16 21:3,6
21:11,14,15,16
21:19,25 22:20
24:5,7 95:8
**billing** 25:20
**billion** 65:24
**billions** 58:20
**bit** 17:21 19:8
33:7 51:7
56:24,25 93:12
96:6
**bitcoin** 18:25
19:5,11,13
**bleeding** 45:22
48:10
**block** 40:3
**blockchain**
5:12
**blue** 24:6
**bob** 7:25
**body** 76:16
**borrowers**
8:16
**bottom** 18:1
34:4
**bound** 23:19
61:5

**bowling** 1:13
**box** 50:21 64:8
**breakdown**
45:3
**breakup** 22:22
**brian** 9:21
**brief** 68:11
71:6 81:6
83:23
**briefing** 52:4
**briefly** 39:4
48:18 49:3
67:6 68:9
**bring** 40:11
54:11,23 56:1
62:1 65:8
66:10 71:11,18
74:5 92:7
**brings** 73:3
87:5
**broad** 12:17
78:19
**broadcast**
59:12 60:2
**broadcasts**
59:5
**brought** 54:20
55:14
**bunch** 21:12
**burden** 61:14
74:2
**burdensome**
100:2
**bureau** 12:16
**business** 17:11
43:11 53:1
56:5,11 60:10

60:11 62:2
96:17
**buy** 58:11
**bye** 41:18

**c**

**c** 7:1 14:1
96:15 102:1,1
**ca** 8:4 12:4
**call** 21:12
24:25
**called** 31:20
59:13 97:8
**calls** 24:6
60:15
**camera** 50:19
50:20
**canceled** 38:17
**capacity** 70:3,9
**capital** 63:11
**career** 32:19
**careful** 55:24
**carefully** 40:14
55:15
**carpenter**
12:15
**carries** 47:1
**case** 1:3 4:18
11:16 12:1,8
18:17 19:1,7
22:11 30:13,15
30:20,20 32:12
33:8,10,12,16
33:18,25 34:2
34:7,9,13
35:10,16,18
48:2,5,17 54:5
63:21 64:14

71:2 78:13
82:23 84:12
92:3 98:10
**cases** 53:16
55:1 60:12
64:6 71:10
72:16 78:12
80:7 84:11
**cash** 17:13,16
18:17
**cashflows**
19:14
**casual** 27:21
**cause** 51:13
**causes** 42:24
**cdp** 8:2
**cede** 28:8 50:7
54:1 86:24
**cell** 57:15
**celsius** 1:7 2:21
2:21 3:2,3 13:8
16:4,8,12
35:13,16 51:10
51:25 56:4,10
57:17,22,24
58:3,6,20,22
59:3,16,20,22
60:1,3,6,10,11
62:2 69:19
70:6,7 93:9
95:2,17 96:16
**censorship**
60:4
**center** 9:11
**centerview** 4:7
**ceo** 14:11,22
15:1 69:19,21

**cert** 97:20
**certain** 80:7
**certainly** 22:22
23:1 24:8 25:6
30:13,18,19,22
33:25 35:6,15
41:14 46:3
82:12,20 84:2
85:13 86:2,16
88:8,18 94:7
99:15,16
**certainties**
52:22
**certificate**
62:14
**certification**
61:13 66:10,19
66:23 67:4
74:21,22,25
77:19,20 80:15
84:1 85:9
98:19 99:11,14
99:17
**certified** 62:6
70:16 72:7,16
80:12 83:21
84:15 86:19
98:24 102:3
**certify** 61:23
**cetera** 96:17
**chance** 30:2
98:14
**change** 16:13
22:5 23:16
24:1 38:8 39:1
45:2

**changes** 23:5
**chaotic** 33:11
33:12
**characterizat...**
38:5
**charged** 63:14
**chicago** 7:6
12:11 13:4
**chief** 60:3,3
**choose** 99:13
**chris** 7:10 13:8
14:23 15:1
81:4 93:15
**christopher**
8:9 14:14,23
50:16
**cir** 85:21
**circle** 63:20
**circuit** 49:8
53:17 85:18
**circumstance**
79:17
**circumstances**
35:17 49:13
55:16 84:24
95:4
**cited** 63:20
**city** 17:20
**claim** 2:20 3:2
3:8,10 35:10
35:15 43:3,5,6
43:7 46:1
47:14 51:24
52:16,25 54:9
54:11,16 55:11
56:1,13,14,19
56:20,22 60:22

61:17 62:13
63:2,5,24 65:8
65:11,24 66:9
66:17 69:3
70:12,16 71:12
71:21,24 72:12
72:14 77:2,10
81:19,19 82:16
83:1,20 84:8
84:21,23 85:6
85:17 97:14,20
98:3,24 99:12
101:8
**claimants**
44:10 59:9,10
61:5 86:3,11
**claims** 3:9
42:24 43:1
45:21 46:4,19
51:16,25 52:23
54:13,21 55:5
55:8,17 56:12
56:24 61:15,16
61:18 62:1,9
63:4 64:2,8,9
67:11 69:10,11
69:13 70:19,21
70:25 71:25
72:25 73:15,16
73:18 74:6,8
74:12,14,16
81:23 82:1,4,7
82:8,16,18
83:8 84:14,25
85:1,3,4,4,5,25
86:2,12 96:14

clarify  57:7
class  3:8,10
  10:15 47:1
  54:9,11 55:11
  56:1 60:22
  61:12,23 62:6
  62:13,25 66:9
  66:10,19,22
  67:4 69:2
  70:15,16,17
  71:3,4,11,17
  71:18 72:8,11
  73:5 74:21,22
  74:25 75:21
  77:19,20,21,22
  78:24 80:11,12
  80:15 81:19
  83:20,21 84:1
  84:1,8,15,18
  85:5,9,17,23
  86:8,18 96:14
  97:14,20 98:19
  98:24 99:10,10
  99:11,14,17
  101:8
classes  47:7
  72:16
classified  47:8
classifying
  92:6
clear  21:17
  23:17 37:16
  39:19 53:18
  62:19 65:22
  69:14 72:22
  77:5 78:24
  79:2,22,23

85:2 89:6
clearly  77:13
clerk  14:17
  24:18
client  98:2
clients  66:25
  67:1
clock  41:15
close  55:9 80:5
  89:15
cnbc  59:7
cnl  57:1 58:5,7
  58:15 59:2
  65:1 69:14,18
  69:22 73:9,16
  73:23
cnl's  56:8
  57:13 59:14
code  56:15
  88:10
cohen  13:6
  26:9
coin  17:21
coins  43:22
  44:1
collateralized
  58:22 59:5
colleague
  14:13 25:15
  27:12 50:8
collective
  54:25 65:2,10
  65:16 86:8
  99:25 100:6
colloquy  75:12
colodny  12:6
  54:4,5,7,8 57:8

57:11,12 66:16
  67:13 75:10
  76:14 83:3,7
  83:16 86:20,22
  88:21,25 89:1
  98:5,7,9,9
colodny's
  70:13 75:22
come  24:5 32:8
  38:9 44:10
  65:13 67:9
  74:21 80:18
comes  18:7
  30:19
comfort  32:14
  97:22
comfortable
  30:6
coming  20:3
  21:23 27:14
  43:23 44:4
  55:24 71:1
  96:5,9
comment
  32:11 35:3
  55:13 81:14
  88:7
comments  24:4
  27:3,18 29:19
  32:20 33:24
  36:15,15 52:18
  55:4 56:23
  65:19
committee
  2:10,25 3:7
  4:20 5:4,13,20
  11:17 12:2,9

20:2,11,17
  21:4 23:10
  26:22 27:24
  28:1 34:22
  38:2 42:8
  45:18 48:18
  49:17,23,24
  52:19 54:1,6
  60:21 63:12,15
  63:19,22,24
  64:3,12 65:23
  66:9 67:8
  68:11 69:2,13
  70:13 71:5,8
  71:10,11,17
  72:1,22 73:13
  74:9,10,11
  75:19,20 76:9
  77:9,15,21,24
  78:3,13 79:5,6
  79:7,11,19
  80:9,11,13,17
  81:18,21 82:4
  82:8 83:4,5,10
  83:19 86:1
  87:10 88:22
  89:8,23 90:8
  98:10 99:25
  100:4 101:8
committee's
  34:15 55:2
  61:9 71:1
  75:16 86:7
  97:25
committees
  71:20

common  61:25
  82:8 83:10
  85:4
communicati...
  35:1
communicati...
  69:25
company  51:16
  56:6 58:11
  93:11
company's
  16:24 18:15
compare  21:11
  44:23
compared
  27:21 83:7
compares
  44:19
compel  65:4
compelling
  76:15
compensation
  3:15,23 4:6,12
  4:18 5:3,11,19
  29:2,21 30:1,3
  30:7
compete  21:20
  95:9
competing
  20:13 95:8
competition
  20:6
complaint
  56:20 62:23
  72:15 74:23
complete  34:8
  92:21

completed
  15:14 92:12
completely
  76:17,17 81:15
  86:5 89:15
complex  72:20
complexity
  48:5 61:13,14
compliance
  23:2 24:9
complicated
  49:16 100:2
concede  73:10
conceded  71:2
conceivably
  23:5
concern  65:14
  72:21
concerned  36:1
concerns  26:24
conciliator
  52:17
concluded
  37:21 49:15
  100:15
conclusion
  35:24
concretely
  35:14
condition
  51:14
conducive  61:4
conducted  61:9
conference  6:9
  6:16,20 86:25
  88:1,25

conferences
  59:4
confident  31:9
confidential
  20:8,9
confidentiality
  20:19
confirmation
  55:19 61:11
  66:23 73:5
confirmed
  30:17 61:2
confirming
  62:18
conflict  63:19
  64:4
conflicts  79:2
confusing  47:6
connection
  26:17 35:9
  43:6 46:25
  47:3 88:3
connor  6:20
  88:10
consensual
  28:15,19 38:4
  42:10 43:13
  45:19 46:6
  49:25
consensually
  32:11 90:13
consent  89:8
consequences
  64:13
consequently
  53:22

consider  84:13
  85:21 91:2
  95:5
consideration
  36:9 55:25
  94:19,25
considerations
  85:15,22
considered
  46:16 49:13
  53:14 55:16
  62:11 85:14
considering
  20:1 74:19,20
  85:16
consistent  29:1
  64:21 72:6
  75:16
constantly  59:3
constituencies
  63:13
constituency
  70:20 78:14,24
constituents
  55:21 75:20
  76:11 77:16,22
  79:8 100:5
constructive
  26:22 46:1
consulting  6:2
  6:5
consuming
  48:24 100:2
contact  29:20
  93:1,18 94:15
contemplates
  52:14

**contemplating**
21:4
**contest** 54:19
**contested** 84:2
84:5 90:14
**context** 36:13
**continue** 15:21
20:11 28:17
29:24 30:23
44:9 93:20,22
**continued** 90:7
**continues**
30:13
**continuing**
40:5 87:9
**contract** 3:8
55:17 61:15
85:3
**contractual**
48:2
**contractually**
73:18
**contrary** 78:13
**contribution**
6:23
**controversial**
91:13
**conversations**
20:11 26:22
62:20
**convince** 56:10
**cooperate**
87:23
**cooperation**
32:6 33:20
88:16 89:4

**cooperative**
32:25
**cooperatively**
89:9,11 100:4
**copy** 14:10
29:19
**core** 17:7 18:3
18:9
**cornell** 11:6
27:12,13
**cornell's** 55:14
56:23
**corp** 63:20
**correct** 30:10
43:21,25 44:4
44:24 50:25
61:18 78:5
92:10
**corresponding**
93:17
**cost** 44:15 46:4
48:6,7,22
52:21,22 77:12
77:13,14 100:9
**costly** 99:7
**costs** 17:15
44:9 45:22
**counsel** 3:22
4:2,20 5:4,20
23:10,10 27:17
27:21 29:18,20
32:6,8,16 34:6
34:14,15 35:11
35:12 37:6
39:17 40:2,4
41:8,12,14
43:19 52:18

57:2 63:22
67:21 77:20,21
77:22 78:3
79:21 80:9,12
80:17 85:24
87:9 88:4,8
91:9 97:25
98:14 99:3,8
**counsel's** 38:12
**counselor** 28:9
**count** 15:10
**country** 99:7
102:21
**couple** 19:9
20:22 33:24
43:18,21 57:19
59:10 68:25
**course** 22:4
34:5 78:18
81:18
**court** 1:1,12
14:2,8,12,16
14:18 15:3,6
16:3,24 18:14
18:24 19:15,20
20:22 22:21
24:11,15,22
25:10,13 26:2
27:7,23 28:3
28:11,13 29:11
30:9 31:6,11
31:15,18 32:1
32:13 33:23
36:24 37:2,11
37:16,21 38:9
38:14,20,23
39:4,11 40:6

40:11,22 41:20
41:24 43:18
44:7,17 45:14
46:7 47:17,20
47:22 48:11,14
48:16,19 49:1
49:5 50:9,18
50:21 51:3,3
51:22 52:3
53:5,12,22
54:3,7,16
56:21 57:4,8
57:10 60:21,23
61:7,25 64:18
65:6,15 66:3,6
66:9 67:5,14
67:18 68:13,22
69:7,21,24
70:10 73:12,24
74:17 75:7,14
75:24 76:1,3
76:20,22,25
77:5,23 78:8
78:11,17 79:10
79:16,19,24
80:2,14,21,23
80:25 81:12
83:13,16 84:3
84:5 85:18
86:19 87:2,16
88:7 90:3,11
90:14,20 91:8
91:20,25 92:2
92:5 93:4,13
93:23 94:3,8
94:16,21,24
95:18,23 96:10

96:19 97:4,7
97:11,24 98:7
98:20 99:1,4,9
99:19 100:10
100:13
**court's** 16:11
28:16 88:19
98:18
**courts** 84:8,13
**cover** 90:16
**covered** 17:25
**cramdown**
95:14
**created** 47:5
**creating** 47:11
**creditor** 13:9
13:10,11,12,13
13:14 46:5
47:25 62:21
63:12 64:4,15
64:16 70:7
79:3 80:9
82:14 90:24
92:2,9 95:19
96:24
**creditor's**
63:12,24 71:10
71:11 77:9
**creditors** 2:25
3:7 4:21 5:5,13
5:21 11:17
12:2,9 22:8
43:24 44:2,2
44:18,20 45:5
48:6,7 54:6,22
60:13 63:4,15
63:19,23 64:1

64:2,6,25,25
65:5 70:12
71:12,20,21
75:17 76:9,16
77:2,15,21
78:2 79:3,5,7
79:13 80:11,13
80:17 82:20,24
83:9,11 85:17
86:6,13,15
91:3 92:4 93:9
95:3,12,14
96:4 98:11
**criteria** 25:4
**critical** 69:14
75:11
**cross** 51:2
**crypto** 26:16
59:20 61:20
**crystal** 77:5
**current** 15:6
18:15 23:4
42:16 87:23
**currently** 16:5
29:10,11
**curtailment**
17:19
**custodial** 9:17
**custody** 15:7,9
15:14 16:2,2,4
16:5,10,13,15
16:17 42:22
43:17 44:20,20
45:5,6 46:22
92:8,11,15
93:1

**customer**
73:15,16,18
85:25 86:1
92:21,23
**customers**
15:18,19,22
44:8 57:24,25
58:8,13,21
60:11 62:8
71:23 72:2
73:11,13 97:19
**cut** 24:11 75:8
94:10

**d**

**d** 6:21 14:1
88:11 101:1
**damages** 73:7
**daniel** 13:14
96:16
**date** 18:19
28:22 43:4
51:9,20 55:21
55:23 62:12,15
63:3,6 66:17
70:11 76:22
77:1 82:15,19
83:1 84:18,19
85:8 86:12
87:19 95:21
98:18,24
102:25
**dates** 52:8
**david** 8:20
11:21
**day** 7:24 8:1
42:18 47:4
55:24 57:14

**days** 20:4
21:10,23 62:20
67:24 68:25
71:3 72:19
83:1 96:5,9
**dc** 7:15 9:4,4
**dd'ing** 41:4
**de** 13:12 39:14
**deadline** 19:22
21:5 22:2,3,17
22:24 53:10
55:23
**deal** 17:6 26:3
40:17 48:4
68:10 71:25
81:23 82:7,8
86:19 90:14
98:2
**dealing** 33:15
37:8 74:7
**deals** 17:8
**dealt** 36:20
69:11,11,18
74:7 83:25
89:17 99:13
**deanna** 14:19
**deb** 45:16
**deborah** 9:14
**debtor** 1:9 7:4
7:13,20 13:2
15:2 21:4
34:22 35:12,12
40:2 49:18,23
51:9 67:11
73:13 78:4
81:3,5 89:7
92:12 96:23

| | | | |
|---|---|---|---|
| **debtor's** 3:17 | **decided** 22:15 | **deployed** 17:2 | 23:4 46:17 |
| 14:22 19:22 | **deciding** 20:3 | 18:1,3,5,6 | 50:22 71:5 |
| 26:6 29:4 | 88:24 | **deposit** 59:20 | **difficulties** |
| 43:11 53:21 | **decision** 22:1 | **depositors** 95:2 | 76:15 |
| 55:7 87:7,21 | 45:10 49:8,10 | 95:7 | **difficulty** 55:8 |
| 88:14 91:9 | 56:2 65:25 | **deposits** 95:12 | **diligence** 24:6 |
| 93:6,19 | 72:24 | **described** | **direct** 84:6 |
| **debtors** 2:1,10 | **declaration** | 53:15 71:5 | **directly** 21:20 |
| 2:15,22 3:22 | 26:11,12,14 | **design** 87:11 | 94:11 |
| 3:22 6:10,11 | 27:1,18 50:16 | **designate** | **director** 26:10 |
| 19:24 20:1,10 | 50:23 51:4 | 93:24 | **directors** 73:10 |
| 20:17 23:10 | 53:11 | **despite** 67:7 | **disability** 52:1 |
| 26:5,14,16,18 | **declined** 17:18 | **detailed** 89:22 | **disagree** 38:6 |
| 26:19 29:18 | **defend** 73:22 | **details** 17:24 | 61:24 |
| 34:14 42:2 | **defendant** | 20:13 | **disclose** 20:12 |
| 43:2 45:18 | 73:21 | **determination** | **disclosure** |
| 46:15 47:14 | **defending** | 47:15 60:24 | 20:25 22:2 |
| 50:12,14 51:11 | 52:23 73:21 | 89:22,24 | 23:23 26:18 |
| 51:15,18 52:2 | **definitely** | **determine** | 45:1 47:4 66:2 |
| 52:10,20,25 | 36:13 80:6 | 46:17 49:5 | 89:8 |
| 54:15,18 55:17 | **defrauded** 62:9 | 89:3 | **discontinued** |
| 60:19 61:16,17 | 71:24 | **determined** | 92:23 |
| 61:18 62:16 | **delay** 20:25 | 55:25 | **discovery** 61:4 |
| 64:19 67:1,17 | 65:14 66:21 | **determining** | 67:3 |
| 69:12 73:7,9 | **deliver** 22:13 | 84:13 | **discretion** 84:3 |
| 73:20,21 78:3 | **demonstrate** | **detriment** | 84:12 |
| 82:17 83:5 | 56:4 57:20 | 43:24 64:16 | **discriminated** |
| 87:4,22 89:1 | **demonstrates** | 86:12 | 52:1 |
| 89:23 90:18 | 56:18 | **deutsch** 12:15 | **discuss** 98:14 |
| 91:16 92:8,20 | **denial** 99:17 | **deviate** 31:1 | **discussed** |
| 93:15 98:15 | **denied** 55:20 | **devised** 73:1 | 17:24 74:24 |
| **december** | 97:20 99:11,15 | 83:8 | 95:25 |
| 19:11 45:25 | **dennis** 9:7 | **differences** | **discussing** 89:6 |
| **deceptive** | **deny** 73:1 | 43:16 90:8 | 97:18 |
| 54:14 62:2 | **denying** 86:10 | **different** 16:17 | **discussion** |
| **decide** 82:15 | **department** | 19:24 20:16 | 23:18 30:4 |
| | 10:1 11:1 | 21:16 22:5,20 | 85:12 |

discussions
23:12,19 28:18
30:23 32:25
37:7 40:5,7
87:9 88:22
90:7
dispute 47:14
92:10
disputed 55:18
disputes 60:19
66:24
dissatisfied
72:24
distinction
70:4
distributable
15:16 16:9
distribution
16:12 86:15
district 1:2
53:16
divergent
63:13
doc 2:11,16,23
3:4,11,17 4:2,8
4:14,22 5:6,14
5:22 6:6,12,24
docket 2:5
14:10 16:13
20:24 22:18
26:8,12,25
27:1,5 32:4
39:24 40:3,4
42:4,10,13,19
51:5 53:8 87:6
88:9,12,15
91:18

documented
58:18
documenting
42:12
doing 32:16
60:17 72:23
dollar 65:24
dollars 58:21
doubt 86:18
draw 70:4
drive 10:16
12:10 13:3
driven 17:14
due 17:18
dunne 9:7
duties 63:10
64:21 65:3
71:20
duty 63:14
75:16 76:10
78:4 79:8
dynamics 80:6

e

e 1:21,21 7:1,1
8:10 14:1,1
101:1 102:1
earlier 75:8
early 17:2,6,7
18:4 32:19
earn 10:8 43:6
43:24 44:2,20
44:25 45:4,5
46:2 70:11
77:25 79:12,16
92:15 99:23
100:3,7

earned 43:5
44:8
easier 44:23
ebitda 17:9,11
19:9,11
ecf 6:23 32:3
50:24 51:4
53:8,11 88:12
economic
17:19
ecro 1:25
edited 60:7
editing 60:1
effect 85:19
effective 2:4
52:21 100:8
effectively
17:11 19:12
92:5
efficiency
65:15 73:4
74:5 76:18
81:22 82:12
83:7
efficient 55:2
61:4 82:6,13
83:2,12 100:9
effort 35:9
79:9
efforts 38:11
38:12 49:23
either 23:3
28:2 30:14
41:6 46:8 64:9
88:3 89:17
90:12 93:23
94:11 99:12

elect 16:6
election 16:19
46:9,15,23
47:4
element 62:4
elements 74:19
elementus 5:10
eligible 15:12
15:22 16:5,9
16:17,21 96:4
eliminated
30:14
elizabeth 7:24
26:4 42:1
46:14
ellis 3:16,16
7:3,12,19 26:5
42:1 46:14
50:11 81:5
87:4
email 60:2
92:20
emailed 94:14
emails 15:21
15:24 60:14
82:21 92:24
93:5,7,8,21,25
embodied
52:12
embodies
98:17
employ 26:7
employee 6:11
50:14 87:7,20
88:4
employees
51:12,15 87:23

89:3

**employer** 51:9

**employment**
2:3 51:25
52:17

**empower**
95:11

**encouraged**
34:14 49:5

**encouraging**
74:12

**ended** 17:1

**energy** 17:15

**engage** 87:9

**england** 51:11

**english** 8:15
72:4

**enron** 71:9

**ensure** 65:4

**enter** 43:12
53:22,23 68:24

**entered** 41:12
47:2 49:22
86:21 99:14

**entire** 56:8
78:24

**entirely** 50:2
64:21 76:16

**entities** 73:14
96:18

**entitled** 51:22
88:18

**entity** 69:10
85:1

**entry** 2:2,9,14
2:19,25 6:10
27:5 29:25

43:2,15 52:19

**envisioned**
97:19

**equally** 25:7

**equitable** 44:6
46:18 49:6
53:2 65:4
85:15,19,21
86:15

**equitably** 64:1

**equity** 54:18
54:24 61:12,22
62:7 63:8 73:1
73:22

**ernst** 39:23

**essence** 62:22

**establish** 56:21
70:3

**establishing**
2:19 3:1 84:17

**estate** 25:21
44:8 45:11
46:3 49:7 53:3
53:19,21 61:5
65:12 73:9
77:12,13 78:1
78:6 79:12,17
85:10 89:5,21
90:2

**estates** 61:16

**estimate** 3:1

**estimated**
44:18

**estimating**
67:11

**estimation**
2:20 55:19

68:11

**et** 96:17

**etcetera** 23:9
77:12

**evaluate** 25:5

**evaluated**
79:20

**evaluating**
20:3

**event** 51:12

**everybody**
14:3 22:11,14
25:1 47:9
79:18

**evidence** 50:15
51:4,6 56:16
56:21 58:3
64:22

**evidentiary**
52:8

**exact** 41:11
88:15

**exactly** 21:15
61:16 79:17
94:5

**examine** 51:2

**examiner** 6:3
8:9 28:9,15,25
29:3,15,20
32:7,9,15 37:6
38:3,8 40:4
41:7 58:2
64:18,20

**examiner's**
29:7,9 32:3
54:17 56:3,15
58:18 60:8

62:22

**examiners**
32:12 39:1

**example** 41:2
66:13

**excellent** 33:1

**exchange** 43:1
52:15 92:20

**exchanging**
93:5,7,8,21

**exclusive** 49:7
57:20

**excuse** 18:3
57:2 76:22
99:20

**excused** 41:16

**execute** 51:15

**executed** 17:3
25:7

**executing**
42:13

**executives**
96:15,16

**exercise** 53:1
84:11

**exhibit** 39:23
52:12 53:9

**exist** 54:19
64:25

**existence** 64:24
69:20

**expect** 17:5
18:5,6 21:22
22:17 82:25
84:19 96:5,9

**expected** 15:18
52:22

expecting
   23:18
expeditious
   22:10
expense   22:23
expenses   3:24
   4:19 5:4,12,20
   6:22 44:9 89:4
   89:7
expensive
   49:17 53:19
experience
   34:1 55:6
   95:17
experienced
   56:18
expert   32:15
explain   43:15
explained
   26:13 27:1
   42:15
explaining
   20:25
explicit   97:21
explicitly   63:21
   65:19
explore   35:13
express   48:20
expressed   39:1
extend   99:24
extended   22:1
   98:25
extent   23:3
   31:24 36:8
   49:14 51:2
   65:6

extraordinarily
   90:25
extremely
   32:25 34:7
   89:22 91:7

### f

f   1:21 12:13
   102:1
f.3d   49:9 85:21
face   65:2
facility   17:20
fact   31:2 32:14
   34:3,11 37:19
   49:4 58:23
   59:21 60:6,19
   64:25 65:3
   67:7 71:23
   77:18 84:12
   89:22 92:11
   94:20 95:1
factor   62:5,11
   62:12 85:7,7
factors   46:17
   49:8,12,14
   53:14,16 84:13
   85:10,11,13
facts   55:11,16
   56:2,4 64:19
   64:23 84:16
   94:9
factual   56:19
failed   56:5
fair   44:1,6
   46:18 47:25
   49:6,15 53:2
   53:20 55:1,6
   61:7 80:4 83:3

86:14
fairly   31:9 78:1
   89:14
fan   32:12
faqs   74:13
far   16:20 35:25
   61:14 65:12
   68:4 82:13
   83:2,11
fashion   54:22
fate   95:15
favor   62:13
   85:16
favorable
   19:13
favored   49:4
fear   95:14
february   2:4
   15:8 17:2,10
   17:14 28:24
federal   22:25
   23:13 24:24
fee   3:21 4:18
   5:2,10,18 6:2
   8:9 25:18,21
   25:22,22,25
   26:1 28:9,15
   28:16,21,23,25
   29:2,5,6,9,12
   29:13,15,19
   31:13,14,22
   32:5,6,9,12,13
   32:15 33:13
   35:21 36:9,14
   36:18 37:6,23
   38:3,6,7 39:1,9
   39:17,24 41:7

41:15
feel   27:20
fees   6:22 16:17
   29:16,19,25
   35:5,9,18,23
   35:23,25 36:7
   37:1,14,15,19
   40:19,23 87:21
   87:22 88:12,14
   88:16 89:21
feld   3:21 4:1
fell   95:2
ferraro   13:8
   14:11,20,23
   15:1,1,3,4,5,8
   16:23 17:1
   18:12,14,16,24
   19:6 50:16,24
   51:1,4
ferraro's   53:11
fiduciaries
   66:11
fiduciary   3:10
   54:11 60:22
   63:10,14 64:21
   65:3,8 71:19
   75:16 76:10
   78:3 79:8
fight   55:1,6
   61:8 83:3
figure   24:17
file   3:8 22:2,17
   29:10 31:25
   33:10 35:9
   54:9 55:11
   56:13,14 60:22
   62:22 63:2,4

66:9,17,20
69:2 70:16,19
71:20 72:1,17
74:12,14 77:2
77:9,18 78:23
81:6 82:16,22
82:25 83:5,20
84:20 91:2,18
97:19 99:12
101:8
**filed** 14:10
16:12 19:2
20:24,24 26:8
26:12,21 27:1
27:5,17 28:4
28:25 34:24
35:16 36:5
39:13,14,24
42:4,10,18
43:20 49:11
51:20,20,24
53:7,11 55:14
64:8 68:10
70:12,21,25
71:24 72:13
74:8,23 76:6,8
79:1 80:3
81:18,20,24,24
82:16,18 85:17
86:6 87:6 96:5
96:8,21 97:6
97:14 98:2,3
**filing** 20:25
26:24 29:18
63:10 75:21
82:22 91:15
96:4

**filings** 34:16
**final** 21:5
22:16,17 37:15
37:19,20,23
39:8
**finalize** 22:7
**finally** 65:18
**finals** 31:24
**financial** 6:3
10:1 13:9
18:15 58:23
**find** 57:12
82:10 89:25
**fine** 14:16
33:16 37:2,16
90:13 93:25
98:20
**finish** 40:1
**finished** 15:13
40:7
**first** 3:14,20
4:5,11,17 5:1
5:10,17 6:1
15:19 25:3,11
26:3 28:21
31:13 32:2
39:23 44:3,4
45:17 57:21
58:2 66:19
99:24
**firsthand** 65:3
**fixing** 58:11
**fled** 58:11
**floor** 8:3 10:2,9
11:11 13:3
**flow** 17:13 33:1

**flower** 8:3 12:3
**focus** 59:11
84:22
**focused** 21:13
22:12 25:8
**focuses** 75:17
**follow** 14:4
38:7
**following** 18:3
**forcefully**
77:24,25
**foregoing**
102:3
**foremost** 25:4
**forensics** 5:12
**forever** 20:14
**forgoes** 49:16
**form** 16:19
27:19 34:23
65:21 98:1
**formal** 52:6
78:24
**format** 49:21
86:20
**formed** 51:10
**former** 50:14
87:23
**forms** 89:12
**formulating**
2:22
**forth** 49:8 94:1
**forward** 6:16
21:6 22:5
23:21,22 25:2
31:16 32:24
33:21 42:3
43:5 52:21

57:16 63:1
66:13,18 80:8
89:19 91:5,7
94:8 97:23
99:25 100:3
**found** 44:7
58:2 59:13
62:7 63:11
92:19
**four** 15:20 20:1
72:19 92:12,13
92:16
**fours** 21:15
**fourth** 85:18
**fraction** 84:20
**framework**
89:2
**frankly** 81:21
82:10
**fraud** 54:14
61:15,19 62:10
69:10,13 73:11
74:12,14,16
84:17,23
**free** 25:25
**friday** 89:13
**frishberg**
13:14 39:4,6,7
**frishberg's**
35:4
**front** 14:3 32:3
42:9 93:14
**fruits** 74:15
**frustrating**
94:1
**frustration**
68:24

**full** 30:2 42:9
46:24 74:21
85:5 89:8
**fully** 23:1
35:20 46:6
52:25 57:15
**functioning**
64:12
**fund** 95:5,10
95:14
**fundamental**
79:7 86:14
90:8
**fundamentally**
56:4 58:13
**funded** 57:15
**further** 22:16
23:12 26:25
37:22 42:15
52:7 68:18
70:19 90:19
**furtherance**
2:22 21:25
**future** 87:19

**g**

**g** 14:1
**gallagher**
59:11,20,21,23
60:5
**general** 20:20
43:23 44:2,20
46:2,2 57:23
**generally**
63:15 84:13
91:8
**generating**
20:5

**gentry** 85:20
**getting** 18:20
44:21,22
**giant** 32:12
**give** 14:11
27:14 39:13
49:3 68:22
83:23 85:19
88:8 95:11
96:19,23
**given** 14:14
26:18 33:17
44:1,6,12,25
45:9 47:13
52:22 65:10
67:7 70:17,19
83:9 99:12
**gives** 54:25
**giving** 68:25
**glad** 49:25
**glenn** 1:22
94:19
**global** 52:3
60:23 71:1
84:10
**go** 14:24 23:10
24:15,22 25:2
25:13 26:2,3
28:13 31:6
32:24 37:11
39:5,20 42:2
46:12 48:16
49:11 50:22,22
51:6 54:7
56:24 57:10
65:10 69:1,6,7
80:8 81:15

85:12 87:2
88:25 91:25
94:24 96:2,15
99:20
**goal** 21:25
**godfrey** 8:8
**goes** 23:21 48:8
64:15 70:13
86:13
**going** 6:16 14:4
14:19 15:25
20:9 21:5,6,17
21:24 22:16
23:19 25:2,14
30:4 31:8,16
31:23 32:19,20
33:18,19,21
36:16,17,21
38:4 39:18
41:21 43:5
44:16 47:7
57:5 61:20
65:25 66:13
67:19 68:25
70:22 73:8,10
73:20,21 74:5
77:3,11,11,20
77:22 82:6,13
83:10,21,24
86:23 88:22
89:21 91:4,6
93:12 94:1
96:5,23 97:1
97:16,23 98:4
98:24 100:13
**good** 14:2,6
15:3,4 17:12

24:1 26:4
27:10 28:10,11
28:12 41:18,25
43:13 50:10
54:4 71:16
76:18 81:4
96:12 99:21,21
**government**
2:1,8,13,18,24
3:6,14,20 4:5
4:11,17 5:1,9
5:17 6:1,9
**gracious** 31:20
**grant** 80:15
**granted** 72:10
101:5,7,9
**granting** 2:5
2:11,15 3:3
6:11 83:19
85:16
**grants** 66:9
77:20
**graph** 18:1
**great** 14:9 15:5
18:22 19:17
25:19 32:14
86:13 91:20
94:16
**greatest** 52:22
**green** 1:13
**gregory** 12:13
28:1
**gross** 17:13
59:18
**group** 2:11
8:16 9:10,17
10:8 16:4 42:8

42:22,25 44:2
44:13 45:7,17
46:5,21 47:14
47:17 64:4,8
79:9 99:23
**group's** 42:18
**groups** 79:4
**guess** 40:6
97:24 99:20,22
**guide** 63:16
**gump** 3:21 4:1

**h**

**h** 91:24
**hadley** 9:1
**half** 45:7
**hallmark**
64:11
**halls** 55:22
**hamilton** 9:9
**hamlin** 7:17
**hand** 18:18
**handful** 37:18
37:21 70:21
**handle** 25:18
25:22 26:20
86:24
**handled** 88:17
**hands** 74:10
81:2,9
**happen** 70:22
72:6 77:3
78:11
**happened**
38:19 59:15
70:18
**happens** 52:21
71:15 78:15

**happy** 28:14
41:13 43:15
50:2 53:3
67:16 70:11,20
88:1 93:21
**hard** 42:11
46:16
**hardin** 17:4
**harmful** 47:6
**hashing** 17:5
**haste** 55:15
56:23 76:7
79:1
**hauer** 3:21 4:1
**healthier** 19:8
**hear** 14:7
24:12,13 30:18
54:6 68:14
69:5 78:10
81:1,2,13
83:18 88:2
91:24
**heard** 32:2,17
37:25 38:25
39:12 40:23
45:15 47:23
48:12 53:6
75:8 79:24
80:25 81:1,3
88:18 90:4
91:23 100:1,11
100:12
**hearing** 2:1,1,8
2:8,13,13,18
2:18,24 3:6,6
3:14,14,20,20
4:5,5,11,11,17

4:17 5:1,1,9,9
5:9,17,17 6:1,1
6:9,17,20,25
28:21 29:23
30:6,21 31:2,4
31:9 37:23
40:9,13,17
42:7 45:24
51:5 52:8,8
55:5 66:7
68:20 69:17
80:15 87:14,19
89:14 91:1,4
91:11
**hearings** 26:1
81:25 91:13
95:25
**heart** 56:11
**heavy** 48:24
**hedge** 95:5,10
95:14
**held** 6:17 16:10
39:18 42:25
51:16 85:18
**helpful** 43:17
57:6,6 76:6
90:25 91:3,7
**heras** 13:12
39:14
**hermann** 47:23
47:24 48:11
**herrmann**
13:11 47:25
90:22,23,23
91:10,14
**hershey** 11:22

**higher** 15:18
15:20 17:16
**highlight** 56:25
**highly** 85:22
86:7
**hirschberg's**
29:16
**historically**
51:11
**hit** 22:3
**hitting** 27:11
30:1
**hoc** 2:11 8:16
9:10,17 10:8
16:4 42:8,18
42:22,25 44:13
45:17 46:21
47:14,17 49:17
49:24 54:22
99:23
**holcomb** 91:22
91:22,24 92:1
92:2 93:4,8,18
93:24 94:2,4,8
94:13
**hold** 35:22
36:7 40:18
**holdback**
29:25 30:12,12
36:17
**holder** 79:3
**holder's** 2:19
**holders** 3:9,11
9:2,10,17 10:8
16:18 44:20,21
45:17 46:1,18
46:19 54:10,11

54:13,18,24,25
55:12 56:5,6,9
58:10,14,15
59:1,19 61:12
61:22 62:8,16
62:17,20 63:8
65:9,17,22
66:1,14 67:9
73:22 82:9,18
86:17 99:23
100:3
**hon** 1:22
**honor** 14:7,10
14:13,21 15:4
18:19 19:6,17
19:21,23 20:7
20:20 21:7,15
22:1,15 24:3
24:13,23 25:9
25:12,17 26:4
26:6,9,13,21
27:2,4,9,25
28:7,12 31:7
31:22 32:18
33:22 36:12
37:9 38:1
39:22 41:18,25
42:6,11,15,23
43:8,14 44:3
44:25 45:16,24
46:13,15 47:24
48:13 50:4,6
50:10,25 51:7
53:3,25 54:4,8
56:12 57:2,3
57:12 63:1,11
63:20 66:3,5

67:13,15,17
68:8,9 69:4,8
69:16,23 70:2
70:24 71:1,7
71:15,19,22
72:6,9 73:4,17
74:1,3,11,18
74:19,22,24
75:5,9 76:5
77:4,7,8,18,19
78:20 79:4
80:24 81:4,17
81:22 83:15
86:22,23 87:6
87:8,15,17,18
87:25 88:6
89:1,13,16
90:5,17,24
91:14,17 92:1
93:16 94:13
96:3 97:5,15
98:5,9 99:18
99:21
**honor's** 25:18
55:4 72:24
98:18
**hope** 89:25
95:15 100:7
**hoped** 20:5
**hopeful** 87:12
**hopefully**
23:23 28:18
33:21 82:22
90:12 100:4
**hoping** 22:3
97:21

**horse** 19:22,25
20:4 23:25
**hosted** 17:4
**hosting** 17:3,6
18:4
**huron** 6:2,5
**hyde** 102:3,8
**hypothetical**
66:8

**i**

**ico** 57:14
**idea** 33:14 92:4
**identify** 14:23
97:7,12 98:7,8
**idly** 63:20
**ignat** 11:10
97:6,14
**ii** 2:5,11,15 3:3
3:9 6:11
**il** 7:6 12:11
13:4
**illiquid** 26:16
**imagine** 36:22
**immanuel**
13:11 47:24
90:23
**immediately**
18:3
**impact** 18:8
19:13 23:5
**important** 20:8
20:16 23:3,7
23:20 25:6,7
34:8,17,21
35:2 59:25
**importantly**
20:7 61:24

**impose** 61:13
61:16 68:20
**imposing** 68:2
68:16
**impressing**
76:12
**improve** 21:24
**inappropriate**
81:15
**incentive** 6:11
87:7
**include** 63:25
84:25 87:19
98:16
**included** 72:14
87:11 98:5,12
**includes** 84:7
**including** 3:25
6:4 51:25 52:8
54:18 69:12
79:20 92:4
**income** 17:11
**inconsistent**
71:19
**increase** 18:2,5
18:18 19:3,4
**increased**
17:21 18:25
**incredible**
32:22
**incurred** 6:23
35:9
**independent**
54:10 56:18
64:18,20,23
65:7 66:11
77:17

indicate 39:19
indicated 52:4
indiscernible
  14:17 15:21
  16:19 17:18
  18:22 37:1
  50:17 65:18
  79:10 81:11
  93:2,3 97:4
individual
  39:21 61:15
  71:21 82:7,14
  83:9 87:20
  88:4 96:16
  97:20
induce 59:19
indulgences
  27:15
inefficient 75:2
inevitability
  61:21
inflating 74:6
inform 19:23
  55:20 56:5
informal 27:3
information
  29:20 33:1
informed 55:4
  55:6
initial 55:7
instance 63:23
  75:5
instances 30:14
  37:18 59:5
  71:12
institutions
  58:23,25

instruction
  40:21
instructive
  62:6
integrity 77:14
intend 62:1
intended 20:5
intensive 89:22
intent 75:12
intention 99:15
interactions
  33:13
intercompany
  2:20 3:2 67:11
interest 20:6
  43:11 49:6
  53:2,21 96:25
interested 21:2
  22:10
interests 63:14
  63:15
interim 3:15
  3:21 4:6,12,18
  5:2,10,18 6:2
  15:1 28:16,21
  28:23 29:2,13
  29:21,25 30:3
  30:7 36:14,19
  37:14,19 39:8
  39:24 40:24
  41:10 50:16
international
  3:16
interview
  59:12
introduce
  14:20 50:15,23

invariably
  67:22
investigate
  64:18
investigation
  56:3 61:9
  65:11
investigations
  87:24
investigator
  56:18
investing 58:22
  95:5
investment
  58:7 95:7
investments
  8:2
involved 24:8
  34:2 43:13
  100:9
iridium 49:9
  53:15
ish 19:12
issue 22:21
  29:22 30:22
  31:2 32:10
  35:8,14 36:4,6
  36:22 37:4,13
  38:13,23 39:8
  54:20 58:16
  59:17 64:9
  65:6 67:7,12
  68:10 69:1
  71:2,3 72:20
  81:23 83:20
  84:10 88:24
  92:7 93:11,19

94:5 95:23
issues 23:6
  25:22 32:8
  33:2,7 34:17
  35:6,15 37:18
  37:20 41:1,5
  44:10 55:9
  64:13 68:12
  73:5 74:3,25
  83:25 88:19
  90:20 91:5,6
  98:4
it'll 19:19 31:2
  33:21
item 17:25
  25:16 26:6
  42:3 87:5
items 87:17
ivene 13:10
  95:18,19,19

**j**

j 8:20
james 13:13
  98:22
january 17:7
  18:4
jason 10:12
  13:10 95:19
jeffrey 12:20
jenner 40:3
jennifer 10:5
jersey 12:16
job 73:24
joel 13:6 26:9
joined 14:22
joining 70:6

| | | | |
|---|---|---|---|
| joint 2:8 | kirkland 3:16 | 98:23 99:19 | kyc 15:9,11,13 |
| jones 7:24 8:1 | 3:16 7:3,12,19 | known 20:17 | 15:22 92:12,22 |
| 25:15 26:3,4,5 | 26:5 35:5,11 | 20:18 23:25 | **l** |
| 27:7 41:22,23 | 36:7,19 37:7 | 24:1 62:9 | la 7:5 |
| 41:25 42:1 | 42:1 46:14 | 84:17 | land 85:11 |
| 44:3,24 45:19 | 50:11 81:5 | knows 33:5 | language 72:4 |
| 46:7,11,12,13 | 87:4 94:12 | 81:22 | 98:6,12,17 |
| 46:14 47:19,21 | kirkland's | koenig 7:10 | large 72:18 |
| 48:21 | 35:23,25 | 14:14 81:3,4,5 | 75:18 |
| joshua 8:6 | knew 55:23 | 81:10,15,17 | largely 76:16 |
| joyce 99:22 | know 18:25 | 83:14 86:23 | las 13:12 39:14 |
| jude 63:21 | 19:7,7,11 | 91:17 93:13,15 | late 33:3 35:10 |
| judge 1:23 | 21:18,23 22:20 | 93:15 94:7,11 | 36:5 39:25 |
| 27:11,11 31:5 | 23:8,17,23,25 | 95:24 96:3 | 58:17 |
| 31:10,19 37:10 | 25:8 30:12,16 | 98:16 | latham 40:2 |
| 76:13 78:10 | 31:16 32:8,9 | kotliar 9:21 | law 70:15 85:4 |
| 79:23 80:4 | 33:10,11,15 | kovsky 9:14 | 99:10,16 |
| 81:8 94:18,19 | 34:3 35:19 | 45:14,16,16 | laws 51:10 |
| 94:22 96:12 | 36:10 37:17 | 46:12 49:24 | lawsuit 98:3 |
| judgment | 38:4,14 40:16 | 50:6 | 99:13 |
| 43:12 53:1 | 41:21 45:23 | kovsky's 48:21 | lawyers 32:23 |
| july 3:25 4:21 | 48:1,3,6 49:4 | ks 1:25 | 93:6,7 94:12 |
| 52:9 | 49:19,24,25 | kuhns 99:20,21 | layer 20:18 |
| jumped 24:19 | 53:14 58:1 | 99:22 100:10 | lead 60:21 |
| june 18:7 51:8 | 59:1,11,25 | kurman 10:7 | 65:14 83:3 |
| justice 11:1 | 60:5 62:18 | kwasteniet 7:8 | leah 7:17 |
| **k** | 63:2 65:10 | 14:4,6,9,19,21 | learned 92:3 |
| k 9:3 63:20 | 66:24 67:2,17 | 15:5 16:23 | leave 23:24 |
| kahn 8:8 | 67:19 68:3 | 18:10,13,22 | 24:2 38:20,23 |
| katherine 8:13 | 69:4 70:24 | 19:15,17,21 | 66:9 71:13 |
| 28:8 | 72:6,7 73:7,19 | 21:7 24:3,11 | 83:19 90:15 |
| keep 60:8 | 73:20 76:25 | 24:13,16,20,23 | 97:1 98:4 |
| keip 87:13 | 78:1 80:5,18 | 25:12,14 41:21 | leblanc 9:6 |
| kept 20:14 | 80:23 82:10,20 | 86:24 87:2,3,3 | 66:4,25 67:15 |
| key 6:11 56:25 | 82:20,22 85:4 | 87:17 89:5,10 | 67:15 68:8,13 |
| 87:7 | 88:21 90:11 | 90:17 | 68:13 69:1,4,8 |
| | 91:5 93:5 94:2 | | 69:23 70:2,10 |

70:24 73:17,25
74:1,18 75:7
76:25 78:22
80:19 82:11
84:22
**lectern**  28:8
86:24
**ledanski**  102:3
102:8
**left**  18:1 57:13
71:22 73:22
**legal**  86:5
87:21,22 96:19
96:24 102:20
**lehman**  71:9
**leon**  96:17
**level**  36:23
96:15
**levi**  13:9
**lexington**  7:21
**liability**  71:2
73:6,23
**liable**  73:10,13
73:14,16,18
**lied**  60:18 95:1
**lies**  58:20
**life**  59:22
**light**  21:1
22:19 46:4
52:10 55:10
56:22 82:4
**likely**  47:4 73:5
83:3 86:10
**limited**  2:21
3:3 51:10,21
61:19

**line**  14:22
25:20,23 26:10
27:13 53:16
60:9 66:23
81:12 88:5
101:4
**liquidation**
19:4
**list**  42:18
**listed**  39:22
**listening**  19:23
22:8,9 25:1
**litigants**  34:11
**litigate**  86:18
**litigated**  53:19
64:8
**litigating**  44:9
52:25
**litigation**  3:22
42:17,21 43:9
44:15 45:9,22
46:4 49:17
55:10 61:6,7
66:22,25 73:4
96:21
**little**  18:20
19:3,8 29:23
33:6 61:2
93:12 96:6
**live**  23:10
59:25 60:2,6
**lived**  86:4
**lives**  95:4
**llc**  1:7 2:3,21
3:2 4:7,13 6:2
6:5 49:9 69:19
70:7

**llp**  3:16,16,22
4:1,18 7:3,12
7:19,24 8:1,15
9:1,9,16 10:14
11:16 12:1,8
97:13
**loans**  58:16,21
58:22 59:6,7
59:17
**lock**  95:10
**log**  92:19
**logged**  34:5
**long**  46:16
53:16 73:5
**longer**  17:23
24:8
**look**  36:13 37:2
38:14 76:12
79:24 90:11
91:15 96:19
**looked**  62:14
**looking**  34:4
60:2 66:21
99:25 100:3
**los**  8:4 12:4
**losing**  18:20
**lost**  27:13
**lot**  21:10 24:5,9
33:19 34:25
37:2 46:17
48:1,6,7 59:9
83:17
**lots**  78:12
**loureiro**  7:9
50:8,10,11,20
50:25 51:7
53:25

**love**  77:1
**low**  19:10
**lowenstein**
10:14,16
**lp**  5:2,18
**lucas**  92:1

**m**

**m**  7:8
**m3**  5:2
**machines**  17:4
17:18
**made**  21:3
32:11 34:16
36:1,8 38:6
41:2,6 44:22
55:13 58:6,16
59:19 65:11
69:17 70:7
71:14 74:22
76:14 81:14
85:2 89:5
97:21
**madison**  8:11
10:9
**mailings**  82:21
**main**  8:10 10:2
**majority**  59:24
63:17 75:18
86:13
**make**  21:17
23:17 33:16,24
35:3 47:9 50:1
55:22 65:22
77:5 89:24
90:10 95:7
97:17 100:8

makes  25:17
  59:6
making  6:23
  21:25 22:12
  90:1
managing  26:9
manner  20:12
  55:2 85:19
march  15:12
  16:3 17:1,9,14
  17:22 18:2,18
  42:6,11 92:21
  92:24
margin  17:13
margins  19:7
mark  45:8
  55:18
marketing
  57:1,18 95:2
marsal  4:13
martin  1:22
mashinsky
  57:1,13,21
  58:15,16,24
  59:2,6,12,16
  60:5 69:18
  70:8 96:16,21
mashinsky's
  57:1 59:24
masumoto
  27:13
material  54:15
materially  22:5
materials  21:8
matter  1:5
  45:25 60:20
  82:2 93:3

matters  25:19
  25:21,25 55:10
  84:2,5
maximize  95:3
  95:15
mccarter  8:15
mccloy  9:1
mcelroy  12:15
mean  25:6
  37:20 63:18
  68:4 78:15
  88:17 90:13
  91:2 93:25,25
means  44:9
meant  65:20
  98:13
measure  73:3
  82:12
measured
  15:11
mechanism
  72:25
media  74:14
meeting  24:23
meets  43:10
megawatts
  17:3
member  63:14
  71:17
members
  42:25 43:2
  46:21 49:17
  70:17 71:4
  79:6 84:18
  85:23 93:17
  99:11

mendelson
  96:11,12 97:3
mention  37:12
mentioned
  78:22 97:18
  99:6
mere  64:25
merits  73:8
  83:4
message  58:13
  68:18
messaging
  15:22 56:8
mester  8:6
metrics  17:24
  87:11
mf  60:23 71:1
  84:10
mg  1:3
mi  9:12
microphone
  93:14
middle  45:4
migration
  59:14 70:5,5
milbank  9:1
million  15:15
  15:16 18:17,17
  18:18 19:9,10
  19:13 36:25
  44:13 57:15
mind  35:7
mindful  25:2
minds  25:4
mine  78:2
mined  17:21

mineola  102:23
mining  16:25
minority  63:17
  85:23
minute  19:19
  38:17,19
misleading
  62:2
mispronounc...
  97:11
misrepresent...
  54:14 61:19
misrepresent...
  56:7 57:13,17
misrepresented
  56:4 58:13
missed  31:14
missing  100:6
misstated
  42:20
mitigating  18:8
mnas  59:24
model  60:10
modifying  98:1
moment  38:15
  67:6
money  36:21
montana  17:5
month  17:22
  18:18 19:9,10
  19:14
monthly  29:12
months  38:11
  38:12 43:8
montpelier
  10:3

**morning**  14:2
14:6,12 15:3,4
21:13 26:4
27:10 28:10,11
28:12 31:21
35:4 41:25
50:10 81:4
87:1 99:21
**motion**  2:9,13
2:19,24 3:6
6:10,25 42:3
42:10,13,15,18
49:3 50:13
51:20,21 53:7
53:9 54:9,20
63:10 66:10,18
66:23 67:4
68:10 72:13
74:22 75:15
76:8 77:18
78:25 80:15
81:10,19 83:18
83:19 84:1
85:14,16 86:7
86:7,10 87:7,8
87:21 88:14,18
89:2,6 90:14
91:2,16 92:6
97:15,15 99:11
101:6,8
**motions**  84:6
**mouth**  70:1
**movant**  72:12
**move**  18:10
19:16,16 20:21
23:22 25:11
42:3 50:3

61:10 63:1
66:18 74:17
86:21 89:19
94:8 95:4
**moved**  67:17
93:13
**moving**  17:23
**mulvaney**
12:15
**music**  85:11
**musicland**
85:13
**mute**  24:18
66:5,6 81:12
**muted**  24:17
81:13 94:21
**mutually**  100:5

**n**

**n**  7:1,5 14:1
101:1 102:1
**nagi**  10:12
**name**  97:8
**narrow**  87:13
94:5
**nature**  26:18
50:2 52:3
63:11
**necessarily**
36:5 64:16
84:12
**necessary**
26:19 37:7
70:14
**need**  22:6
30:24 31:9
36:7,18 38:9
68:6 76:18

82:22 83:18
91:22 93:20
95:3
**needed**  48:3,4
**needs**  55:5
94:5
**negotiated**
38:4 41:3
**negotiating**
20:15 45:2
**negotiation**
20:10
**negotiations**
52:11
**neither**  68:2
**network**  1:7
2:21,21 3:2,3
13:8 17:16
51:10 70:6
**never**  32:12
41:4 61:23
64:5 69:17
72:2,3 75:2,3
78:22 92:18
95:5
**new**  1:2,14
7:22 8:18 9:19
10:10 11:4,12
11:19 12:16
17:3 18:4
23:15 29:24
30:10 59:4
**newark**  12:18
**nickel**  41:17
**night**  14:10
60:2 62:16

**nine**  17:10
29:10
**nj**  10:17 12:18
**nolan**  6:20
88:5,10,17
89:16
**nolan's**  88:8,20
**non**  3:8 49:7
53:15 55:17
61:15
**normal**  33:8
**north**  4:13
**note**  28:20 29:6
29:15 44:25
74:11 82:17
**noted**  42:6
63:22
**notes**  17:23
**notice**  22:18
40:15 82:15
83:1 84:18
85:8 91:18
**notifications**
15:24
**noting**  16:13
**notion**  72:1
**novawulf's**
95:10,14
**novel**  71:7 75:3
**november**
28:23
**nuke**  96:17
**number**  26:8
26:12,25 27:2
27:5 34:1
39:24 40:3,4
42:3,5,19

47:11 51:5
53:8 74:6 77:1
78:1 81:2
88:15 94:14
95:12
**numbers** 44:23
**nw** 7:14 9:3
**ny** 1:14 7:22
8:18 9:19
10:10 11:4,12
11:19 102:23

**o**

**o** 1:21 14:1
102:1
**object** 63:24
**objection**
27:17,22 28:2
34:20 35:4,5
36:5 39:5,13
39:14 51:5,21
51:23 55:8
83:8 86:17
98:13
**objections**
23:16 27:3
28:4 29:5,7,9
29:12,19 30:16
34:16 39:12
40:13,16 42:10
43:20 49:11
51:3 53:7,10
53:11 54:16
81:24 87:13
**obtain** 63:25
**obviously**
20:16 23:1
37:6 40:13

67:4 74:20
95:25 96:6
98:2 99:6
100:6
**occurs** 25:19
**october** 3:25
4:21 5:6,14,21
6:4,4 28:22
**odette** 2:15
**offered** 51:17
58:8
**offering** 46:20
**offers** 95:9
**office** 23:12
80:2 87:10
**officer** 60:3,4
**official** 2:24
3:7 4:20 5:4,12
5:20 11:17
12:2,9 54:5
98:10
**offit** 10:7
**oftentimes**
60:15
**oh** 48:14 50:7
50:21 70:10
77:10
**okay** 14:7,12
14:18,19 24:16
27:23 28:3,6
28:14 31:11,15
31:18 37:8,23
38:22 39:3,4
39:11 40:17,19
41:13,24 44:17
47:22 50:9,21
53:6 54:6 57:9

66:8 67:6 68:7
68:21 69:1,8
69:24 70:22
75:23 77:3,4
80:4 81:2,15
87:2 90:11,15
90:20 94:6,8
94:12 95:23
96:10 97:3
98:20 99:2,19
**oklahoma**
17:20
**old** 102:21
**omissions**
54:15 56:7
**omnibus** 42:6
87:14
**once** 38:16
**ones** 32:23
39:20
**ongoing** 87:24
**online** 18:7
**open** 14:12
47:14
**opening** 24:21
60:8
**operated** 60:12
**operating** 49:9
53:15
**operations**
16:25 17:13
**opinion** 60:23
83:24 85:1,25
86:2
**opportunity**
33:4 46:24
47:10 70:17,19

88:8 99:12
**oppose** 66:14
**opposed** 74:6
78:2
**opposing** 63:13
81:7
**opt** 16:14,18
**opted** 16:21
**options** 55:16
**oral** 98:18
**order** 2:2,9,14
2:19 3:1 6:10
16:7,11 25:22
26:25 27:5,19
29:2,3,21 30:1
30:3,5,7,11
31:13,14 36:19
41:11,12 42:2
43:3 49:21
52:13 53:9,22
53:23 55:10
68:24 86:20
89:12 91:9,18
97:18,22 98:1
98:6,12,17
99:14
**ordering** 23:7
**orders** 34:23
38:6
**ordinary** 95:4
**organized**
54:25
**original** 26:11
26:13 82:19
**originally**
16:10

outages  17:20
outcome  46:6
  86:13
outlined  29:2
outset  34:14
outside  34:12
outweighed
  61:14 77:14
overlapped
  47:5
overruled
  34:20 51:23
own  41:17 56:3
  61:9 76:1,3
  89:18

**p**

p  7:1,1 11:22
  14:1
p.m.  16:20
page  56:17
  58:4,18 101:4
pages  85:12
paid  52:14
  89:7
paper  80:2
papers  42:16
  74:11,24 75:11
  83:6 86:6
paramount
  65:14
park  8:17
part  16:2 18:9
  21:22 30:11
  34:3 56:9
  57:18 72:7,18
  72:20 78:25
  84:6

participants
  33:13 34:5
participate
  16:6
particular
  63:23 64:4
  73:9 82:23
particularly
  33:12 62:8
  100:2
parties  19:23
  19:25 20:15,16
  20:18 21:2,24
  24:7 32:11
  33:6 40:5
  42:17 43:9,13
  44:16 47:13
  61:6 63:25
  74:12
partners  4:7
  5:2,18
party  3:10
  24:18 51:2
  54:17 70:6
  92:22
pass  66:4
passed  15:11
  57:24
passes  59:18
passing  58:6
past  59:10 73:5
path  22:5
  52:21 55:7
patience  67:19
  67:22 93:11
patricia  7:9
  50:8,11

pause  75:6
  82:3 83:14
  96:1
pay  43:2 51:19
  87:22
paying  44:14
payment  6:22
  51:21 52:14
  88:11 89:21
  90:2
payments
  16:17 46:24
pedaled  58:7
peled  11:14
  97:5,10,13,13
pending  42:17
  42:20 43:8
  85:14 98:19
penn  9:18
pennsylvania
  7:14
people  21:12
  35:11 48:7,9
  57:22 59:19
  69:13,17 70:5
  74:14,15 78:8
  78:14 84:20
  97:22 99:6
pepper  9:9
percent  15:10
  15:12,15 16:9
  16:15,20,22
  17:10,14,14,16
  17:18,21 29:25
  30:12 36:14,17
  36:23 43:3,4
  44:14,22 45:3

45:3,6,7 57:24
  59:18 82:19
percentage
  17:17
perella  5:18
perfectly  33:16
  49:19
period  3:17,25
  4:2,7,14,21 5:5
  5:13,21 6:3,6
  28:21,23 47:2
  47:4
permission
  25:18 28:16
  55:25 56:14
  91:17
permit  40:12
  40:15 69:2
  70:15 80:9
permits  63:1
permitted
  56:20 95:8
person  77:17
personal  55:6
pervaded  56:8
  57:1,17
pervasive
  54:14
pesce  12:13
  27:25 28:1
  37:25 38:1
petition  18:19
  19:2 28:22
  43:4 51:8,20
  62:7 72:16,17
  84:15,16 95:21

phase 42:21
48:25
phone 50:19
60:15 94:14
phx 13:9
pick 41:21
60:15
picking 41:22
pie 64:15
piece 64:14
pillay 40:3
pinch 27:11
30:1
pitch 56:9
57:18
place 20:12
36:17 60:25
77:9
plaintiff 60:21
62:3
plaintiffs 10:15
61:3
plan 2:22
23:24 30:17
43:6 46:25
47:1,3 65:20
65:23,25 87:7
95:10,15
plans 47:7
platform 15:23
61:20
plaza 9:18
pleading 81:6
please 15:6
18:12,14 29:19
48:19 50:22
68:4 81:12

94:3 95:7,10
pleased 42:9
49:20
plenty 67:8
78:8
podium 14:5
25:15 27:20
50:8 54:1 66:4
point 17:25
19:11 23:8
36:19 37:23
38:24 39:18
45:23 57:16
58:3 59:6
62:25 63:7
65:9 69:17,18
69:19 70:13
75:1 76:7 93:7
97:17
pointed 58:6
points 34:20
38:2 41:1
97:16
poor 80:8
porter 94:17
94:18,21,22,25
portion 86:3
position 30:24
41:4 64:20
73:7,12,16,17
73:20 78:2,4,5
78:13,14,17
79:11,13,14,19
80:16 81:18
83:5
positions 20:17
63:23 64:5,7

64:12
possession 3:23
possibility 22:4
possible 22:1
63:17 95:16
post 70:5
posted 91:1,12
posting 55:22
potentially
43:24 44:22
47:6 64:13
pound 52:14
pounds 52:23
52:24
practical 30:15
practice 30:10
30:25 31:13
practices 54:14
62:3
pre 17:11 62:6
70:5 72:16,17
84:15,16
precedent 80:8
preference
67:20
preferred 2:19
9:2 54:18,23
61:12,22 62:7
63:8 65:25
66:14 73:1,22
86:17
premature
86:17
prepared
39:14 56:17
61:10 66:18

present 14:14
54:9 92:10
presentation
14:11,15
presented
32:10 52:16
presentment
40:12,16
prevailed
73:15
prevents 65:1
previous 16:11
17:22
previously
16:16 20:24
42:21 87:6
prices 19:11
primarily
60:24
primary 25:4
principle 42:7
79:7
prior 81:25
82:18 86:12
95:25
pro 13:9,10,11
13:12,13,14
33:13,15 34:1
34:6,11,15,16
35:1,3 47:25
54:22 61:3
62:21 76:16
77:2 78:1
79:21 82:23
86:6 90:23
92:2,3,9 95:19
98:23

| | | | |
|---|---|---|---|
| **probably** 21:23 | 79:5 80:10 | 78:6 79:12,16 | **provides** 43:12 |
| **problem** 24:20 | 81:20 82:1,4,6 | **proportion** | **providing** |
| 31:17 57:9,9 | 82:9 83:2,8,25 | 75:18 | 65:16 |
| 58:11 65:2 | 84:14 86:8 | **propose** 21:16 | **proxy** 17:12 |
| 76:19 97:10 | 92:10,14,17 | 98:15 | **public** 59:4 |
| **problems** | 96:4 100:1,8 | **proposed** | **pull** 25:24 |
| 47:11 | **processing** | 26:25 27:5,19 | **pure** 16:2 92:8 |
| **procedure** 2:20 | 96:7 | 30:5 40:8 46:9 | 92:11,15 93:1 |
| 29:1 97:23 | **professional** | 46:23 52:13 | **purposes** 29:6 |
| **procedures** 3:1 | 3:15 4:6,7,12 | 53:9,20 61:8 | 30:15 55:19 |
| 66:2 67:10 | 4:13 6:5,22 | 68:9 75:4 | 85:20 |
| 87:22 89:2,17 | 88:12 | 77:10 87:13 | **pursuant** 6:21 |
| 89:19,25 93:20 | **professionals** | 89:2 97:17 | 16:7 42:23 |
| **proceed** 22:19 | 25:20 28:18 | 98:6,12,17 | 87:22 88:10 |
| 55:1 57:10 | 33:20 34:25 | **proposing** | **pursued** 46:3 |
| 66:23 67:2 | 40:18 65:13 | 71:22 78:21 | 54:21,21,24 |
| 86:8 | **profits** 58:6,9 | 81:21 | **pursuing** 55:7 |
| **proceeded** 52:7 | **program** 6:11 | **proprietary** | 96:25 |
| 56:23 | 59:12 87:12 | 17:15,19 18:7 | **pushed** 82:3 |
| **proceeding** | **progress** 90:9 | **prosecuting** | **put** 33:17 |
| 48:25 52:6 | **progressing** | 61:14 | 62:21 65:19 |
| 61:3 84:9 | 34:9 | **prospect** 74:5 | 74:2,13 91:10 |
| **proceedings** | **projecting** 45:5 | **prospective** | 95:16 |
| 14:12 92:3 | **promoting** | 21:9 | **putative** 70:16 |
| 100:15 102:4 | 59:3 | **protected** 63:5 | 84:17 85:23 |
| **process** 15:7,9 | **proof** 66:16 | **protracted** | 99:11 |
| 15:13,23 19:22 | 70:12 71:11 | 61:3 | **puts** 45:4,7 |
| 20:4,10 21:1,6 | 72:14 81:19 | **prove** 61:23,25 | **putting** 66:20 |
| 21:11,22 22:6 | 84:21 85:5 | 62:3 | |
| 46:9,15,23 | **proofs** 63:4,5 | **provide** 15:21 | **q** |
| 48:24 50:2 | 71:20,24 72:11 | 16:24 18:14 | **question** 18:25 |
| 55:5,8 60:4 | 77:2 84:8 | 26:15 49:21 | 44:4,6,17 |
| 61:2,8,17 | 85:17 | 52:21 61:8 | 54:12 61:1 |
| 65:10,11,16,20 | **properly** 54:23 | 62:15 89:2 | 73:6 76:9,19 |
| 71:9 72:9 73:4 | **property** 44:8 | **provided** 26:10 | 80:11 98:22 |
| 74:6 75:2 | 45:11 46:2 | 26:17 51:11 | **questions** |
| 76:19 77:10 | 47:16 77:25 | 56:17 | 14:25 20:22 |
| | | | 26:23 27:3,4 |

43:14,18,21
53:4,5 66:4
75:6 88:2
**queue** 96:8
**quick** 17:10
19:19 38:2
40:17 90:24
**quickly** 58:7
61:10 96:14
**quite** 33:7
**quote** 71:6

**r**

**r** 1:21 7:1 14:1
102:1
**rachman** 13:9
**raise** 22:21
35:6 62:9
90:21
**raised** 34:17,21
35:8 37:20
41:1 62:13
64:9 81:2
**raises** 35:15
98:3
**ran** 28:22
**range** 52:23
85:5
**rare** 40:25
**rate** 17:16
**rates** 58:4,8
**rather** 30:3
56:13 74:7
**reach** 28:18
89:10,18 94:4
**reached** 28:15
42:7 50:13

**read** 49:25
75:10 80:2
**reading** 75:14
75:22 76:3
**ready** 20:20
49:1
**real** 59:13
**really** 21:20
23:2,9 33:24
35:8 37:5
48:18,23 49:22
60:9 75:11
76:21 77:8
88:19,24
**reason** 24:1
47:1 60:5
68:17 71:16
72:23 78:25
**reasonable**
43:11 44:1
45:12,20 48:1
49:15,19 53:21
64:20 67:21
81:21
**reasons** 49:3
74:23 83:23
**recall** 19:2
**receive** 16:14
29:15 47:10
82:15
**received** 19:24
22:20 27:2
35:4 84:18
96:1
**receiving** 21:8
51:14 82:21

**recent** 29:16
35:4 39:5
**recently** 20:24
**recess** 100:13
**recharacteriz...**
43:5
**recitation**
64:23
**recognition**
52:6
**recognize** 52:2
**recommend**
29:8
**recommenda...**
29:9 35:24
37:5
**recommended**
29:11
**record** 29:5
30:2,4 38:24
50:11 65:19
95:6 98:8
102:4
**record's** 39:19
**recovery** 44:18
44:19,22,25
45:4,6 65:4
73:2 95:3,16
96:25
**redaction** 91:5
**reduced** 30:14
31:3
**reducing** 36:18
**reduction** 38:4
**refco** 71:9
**refer** 85:11

**referenced**
38:8
**referred** 39:25
60:4
**reflected** 34:3
**reflects** 52:18
**refresh** 15:9
**regard** 53:17
76:15
**regarding** 38:6
38:8 96:14
**regret** 27:19
**regularly**
24:24
**regulars** 58:10
**regulation** 10:1
**regulators**
22:24 23:13,18
24:25 58:6
**regulatory**
23:2,6 24:9
25:3 60:3
**reimbursement**
3:24 4:19 5:3
5:11,19 22:23
87:20 88:6,16
89:4,16
**reiterate** 34:24
**rejection** 17:7
18:4
**relate** 29:10,12
29:13
**related** 2:5,11
2:16 3:3 6:12
26:16 29:19
42:24 87:18

relative   48:23
release   25:25
  52:15
releasing   30:11
  51:16
relevant   85:22
reliance   61:23
  62:1 84:23,25
relied   70:3
  72:4,5
relief   2:5,11,16
  3:3 6:12 34:23
  65:7,22 66:14
  75:15 94:3
relying   70:8
  75:21 76:1
remain   20:8
  30:22 36:17
remaining
  15:16 16:1,9
  16:15 43:4
remarkably
  63:8
remarks   24:21
  83:14 88:2
remedy   65:1
remind   15:22
reminder
  15:24 17:10
  18:16
rendered   3:24
  4:19 5:3,11,19
reorganization
  2:23
repeatedly
  57:21,23 58:15
  58:24

repeating
  58:12
reply   62:14
  68:11 71:6
report   28:14
  29:1,8 32:3
  39:23 40:14
  41:9 54:17
  56:3,16,17
  58:5,19 60:9
  62:22 64:22
reported   29:23
reporting   29:7
represent
  15:12 63:12
  77:16 79:9
  92:5 97:5
representative
  86:11
represented
  71:8 79:21
  85:24
representing
  16:21 80:9
represents
  64:22
reputable
  58:23
request   14:13
  27:4 43:15
  55:25 63:3
  64:17 85:17
  87:20 91:9
  92:22
requested
  55:17 65:7
  87:8

requesting
  56:13
require   62:3
  66:11
required   16:19
  37:22 51:15
  52:4 56:14
  63:4 67:3
  84:23
requirement
  84:25
requirements
  43:10
rescap   63:20
research   18:9
  85:25
reservations
  39:1
reserve   30:21
  31:24 37:14
  38:5 39:9
reserved   23:1
  30:8 36:1
  37:18
reside   85:2
residential
  63:10
resolution
  22:10 28:15
  40:8 43:13
  45:19,21 47:12
  82:1,9 92:24
  93:3
resolutions
  28:19
resolve   26:24
  67:9,12 68:4

83:20 87:13
  93:10
resolved   31:10
  35:20 67:7
  68:5 90:12
  94:2,5
resolves   42:16
resource   48:24
resources
  33:17 54:22
  65:12
respect   16:1
  27:16 29:9
  30:8 31:22
  35:5,21 37:14
  40:14,23 42:18
  42:21 43:16
  44:3,5 46:2,9
  66:22 67:3,10
  74:4 85:3,14
  97:17,23 99:17
respectfully
  27:4 43:14
respond   26:23
  65:18 72:19
responded
  93:9
responding
  92:24
response   75:24
  97:6,14,24
responses   29:5
rest   19:18
result   22:6
  34:19 46:18
  49:25 51:18
  86:10 100:5

results 47:6
52:11
retail 95:2
retain 26:15,19
99:7
retained 99:3
retention 2:3
25:16,17,23,24
26:7 27:16
28:5
return 16:5,8
60:20
returning 60:8
revenue 58:4
revenues 57:25
59:18
review 29:1
30:2 36:4
40:14 81:20
85:25
reviewed 28:1
28:4 29:4,4
32:14 36:2
39:8
reviewing 32:5
revised 16:12
22:23 26:24
27:5 31:13
89:12
rewards 58:3
rhythm 33:9
right 16:23
19:8,10,15
20:12,15 22:12
22:13 25:10,11
28:3 32:1
34:14 36:24

37:24 39:12
40:6,22,24
41:20 45:4,14
47:13,23 48:12
50:3 61:10
67:5,14 70:23
73:19 76:2,24
77:6 78:16
79:10 83:16
84:9 87:16
90:3,15 91:21
94:16 99:4,19
100:11,13
rights 14:14
23:1 30:7
31:24 39:9
65:17 82:21
rigs 17:2,4,5,8
18:1,5,6,9
rise 19:12
36:22
risius 2:3
risk 52:24 56:6
58:14 60:3
road 48:4
102:21
role 97:2
roll 27:21
rood 10:5
roseland 10:17
ross 2:3 7:8
15:8 87:3
round 15:24
23:15 36:13
rule 39:15
43:10 49:2
71:18 72:6,14

74:19 84:1,4,4
84:14 85:19
91:8 94:9
ruled 22:23
79:19 97:15
rules 84:6
ruling 30:21
54:16 55:21
85:2 98:18
rulings 101:3
run 70:11 73:5
running 41:14
67:20,22
runs 76:10
rushed 72:21

s

s 7:1 8:3 14:1
65:18
s.c. 8:8
safeguard
63:16
safer 57:22
sale 19:22
sales 56:9
57:18
salle 7:5
samuel 11:22
sanders 9:9
sandler 10:14
satisfactory
36:10
satisfied 38:24
41:9
satisfies 80:18
saturday 68:11
savings 48:22
56:10 59:22

saying 54:12
78:10,21 79:13
80:5
scale 61:24
scarce 72:11
scenario 46:20
schedule 16:12
52:7 55:17
66:22,25 67:10
67:12,21,25
68:2,5,10,16
68:16,21 74:4
96:4
scheduled 6:25
scheduling
55:10
scheme 58:7
95:2
schwartz 11:7
27:7,9,10,23
28:7 29:22
30:1,9 31:5,6,7
31:8,12,16,19
37:10,10,12,24
38:18 41:19
57:2,4,5,9
71:13 75:7,9
75:23,25 76:2
76:4,21,24
77:4,6,23 78:7
78:10,16,19
79:15,22 80:1
80:4,20,22,24
81:8,11 88:23
90:3,5,6
schwartz's
36:15

| | | | |
|---|---|---|---|
| **scientific** 17:7 18:4 | **seeing** 29:17 50:21 | **seriously** 86:16 | **settling** 42:24 43:1 44:19 |
| **score** 40:7 | **seek** 51:18 | **serve** 63:15 | **seven** 43:8 49:7 |
| **screen** 14:15 14:18 34:4 97:9 | 55:18 64:1 94:3 | **served** 62:15 62:17 | 49:12 53:15 |
| | **seeking** 26:7 | **service** 29:16 | **several** 88:13 92:11 93:9 |
| **se** 13:9,10,11 13:12,13,14 33:13 34:11 47:25 54:22 61:3 62:21 76:16 77:2 78:2 79:21 82:23 86:6 90:23 92:2,4,9 95:19 98:23 | 26:15 31:1 51:21 66:15 72:13 | 62:14 92:21,23 | **severance** 51:12,14,19,22 |
| | **seeks** 75:15 | **services** 3:24 4:19 5:3,11,19 6:2,5 | **shape** 65:21 |
| | **seem** 61:22 | | **shara** 11:6 |
| | **seems** 85:15 | **ses** 33:15 34:1 34:6,15,16 35:1,3 | **shared** 20:2 |
| | **seen** 15:18 37:4 72:2,9,10,12 95:21 | | **shareholders** 22:9 |
| | | **set** 40:17 49:8 52:8 58:3 65:13 | **shoba** 40:3 |
| | **segal** 9:16,16 | | **shortly** 66:17 66:20 |
| | **select** 23:15 | **settle** 52:10 | |
| **second** 17:6 25:15 28:23 29:13 33:5 44:5 49:8 59:8 62:5 66:19 79:11 85:7 | **selection** 23:11 | **settled** 33:8 42:22 | **should've** 62:9 62:17 |
| | **sense** 21:18 25:17 | **settlement** 2:9 2:14 16:3,7,8 16:14,18,21 42:4,12,16,23 43:3,9,17,20 43:22,25 45:3 45:12 46:10,21 46:23,25 47:2 47:10 48:21,23 49:2,6,15,19 50:12,13 52:12 52:13,16,19,20 53:2,8,13,20 53:23 101:5,6 | **showing** 74:13 74:14 |
| | **sent** 15:23 89:12 95:21 | | **shut** 32:19 39:3 81:9 |
| | **separate** 37:4 80:10 85:12 | | **shutting** 81:14 |
| **section** 87:1 | **separated** 51:9 | | **side** 78:9 |
| **secured** 58:22 | **separately** 89:18 | | **sides** 68:10 70:1 |
| **securities** 10:15 12:16 23:13 | **separation** 51:15,17 | | **siegel** 85:20 |
| | **september** 42:19 | | **sign** 51:18 |
| **see** 14:5,7 18:1 34:4 37:24 38:25 50:22 67:9 71:8,23 74:15 81:8 83:5,22 85:20 90:9 93:13 94:4,10 95:8 95:20 97:8 | **series** 2:18 9:2 14:24 56:22 67:9 83:4 86:16 | **settlement's** 47:25 48:3 | **signal** 24:21 |
| | | **settlements** 48:4 49:4 50:1 53:18 | **signature** 102:6 |
| | **serious** 36:6 54:13 76:8 | | **signed** 17:7 46:22 |
| | | | **significant** 21:8 56:6 83:6 86:3 |

significantly
  44:14
signing  42:12
silent  74:10
similar  48:4
  79:17 82:24
similarities
  43:16
similarly  37:13
simple  68:16
simply  29:18
  79:18
singapore
  38:15
single  76:10
sir  95:3
sit  63:19 72:25
  89:20
site  18:7
sites  17:15,19
sitting  74:10
situated  82:24
situation  18:15
  71:5
situations  48:2
six  16:9 51:8
sizable  18:2
size  44:12 46:5
sizeable  78:1
slide  16:22
  17:23 18:12,13
slow  83:24
small  46:4 64:4
  77:1 95:13
smaller  44:2
smooth  33:21

social  74:14
sold  57:15
  60:11
solicitation
  47:3 66:2
solution  80:18
solutions
  102:20
somebody
  31:14 70:3
somewhat
  27:20 71:6
  75:3
sontchi  8:9
  31:10,20 32:1
  32:17,18 33:25
  35:20 36:4,10
  36:12,25 37:9
  38:10,15,16,20
  38:22 39:3,25
  41:18
sonya  102:3,8
soon  22:1
  95:16
sophisticated
  32:22 86:11
sorry  18:20
  39:7 46:12
  47:20 48:14,15
  50:23 57:4
  91:24 98:9
sort  41:4 45:20
  96:1
sought  34:23
  35:22 52:10
  55:11,20

source  96:25
south  12:3,10
  13:3
southern  1:2
southfield  9:12
sparsely  72:10
speak  27:24
  67:16 68:8
  72:4 93:6,24
  94:4 98:8,16
speaking  24:19
  31:9 94:11
speaks  62:12
special  3:22
  4:1 40:2
specialist  26:19
specific  26:15
  30:11 53:15
  84:12
specifically
  26:16 39:19
  59:6
specify  56:24
spend  56:24
  79:9
spending  22:11
spent  24:5,9
  33:14 59:9
  83:17
split  45:20
  92:16
spoke  62:16
spoken  60:13
sponte  91:3
st  9:3
stadler  8:13
  28:8,10,11,12

28:14 31:10,19
  35:19 36:4,10
  39:15,22 40:10
  40:20
stadler's  32:21
staffing  33:8
stage  30:20
  35:14 94:10
stalking  19:22
  19:25 20:4
  23:25
stand  45:9
  100:13
standard  29:24
  31:12
standards
  53:17
standing  14:5
  63:25
standpoint
  25:3
start  15:22
  19:1 34:2
  72:19 92:17
  94:22
started  15:9
  18:16 19:7
  57:14 92:13
starting  60:1
state  22:24
  23:13 24:24
  99:5,16
stated  27:17
  60:23
statement
  20:24,25 22:2
  23:23 26:18

29:16 45:1
47:4 55:14
57:23 66:2
83:23
**statements**
48:22 58:17
59:19 70:7
72:5
**states**   1:1,12
11:1 23:12
34:12,12 58:12
59:16,17 63:8
64:17 79:6
86:4 89:11,24
**status**   6:9,16
6:20 15:6
86:25 88:1,24
**statutory**   62:1
84:24 85:4
**stay**   41:16 52:3
52:6 96:22
**steps**   20:3
**sticks**   77:1
**stipulate**   65:21
**stn**   63:25
**stop**   44:23
58:12 78:11
80:25 81:1
97:7
**stopping**   45:21
**stout**   2:3 13:1
25:16,17,23,23
26:3,7,10,15
**strategy**   56:8
60:16
**strauss**   3:21
4:1

**streamline**
100:8
**street**   7:5 8:3
8:10 10:2 11:3
11:11 12:3,17
58:24
**strenuously**
66:14 86:18
**strike**   90:1
**strong**   67:20
**strongly**   85:16
**structure**
21:19,20 23:4
23:16,22,25
77:14
**structures**
21:17 23:8
**struggling**
81:23
**style**   22:20
**sua**   91:2
**subject**   45:1
**submit**   16:19
30:5 41:11,11
64:11 86:20
**submitted**   24:7
32:6
**submitting**
86:11
**subordinate**
64:1
**subsection**
75:17,18
**subsequent**
22:17
**substance**
50:15

**substantial**
6:23
**substantially**
19:1 59:21
**successful**   23:3
23:11,21 78:6
**successfully**
15:11
**succinctly**   60:9
**sue**   63:25
**suffered**   56:7
**sufficiently**
35:13
**suggested**
69:12
**suggesting**
57:6 82:5
**suitable**   95:6
**suite**   8:10 9:11
9:18 11:3 12:3
12:10 96:15
102:22
**summarizing**
21:14
**summary**   32:3
**sums**   60:9
**supplemental**
26:12,14 27:1
27:18
**support**   26:11
48:1,10,20,25
52:19 81:6
**supported**   56:2
**supportive**
69:5 86:7
**sure**   19:20
22:12 27:14

32:1 33:16
36:15 37:6
41:12 47:9,24
55:23 70:10,20
73:24 90:1
91:10 95:7
**surprise**   23:14
**suspended**
92:19 93:19
**switching**   22:4
**synthesize**
62:21
**system**   24:17
74:2 77:15
86:5

**t**

**t**   102:1,1
**take**   19:19
24:20 59:8
63:22 64:5,12
64:14,20 68:17
73:20 77:11
80:16 83:5
94:19,25
**taken**   34:21,25
37:24 64:7
86:16 96:6
**takes**   32:14
78:13
**talk**   59:8 68:6
74:3
**talked**   20:23
69:9,16 81:25
85:8
**talking**   68:17
69:25 81:13
91:16

| | | | |
|---|---|---|---|
| **tall** 62:23 | 86:23 90:5,17 | 69:14,24 70:4 | 33:14 34:17,18 |
| **task** 62:23 | 90:24 91:15,20 | 70:13,14 71:14 | 34:25 35:7,21 |
| **taught** 32:18 | 92:1 93:16 | 72:10,18,20,21 | 36:20 37:17,22 |
| **tax** 17:11 | 94:7,13,15,18 | 74:18,24 76:14 | 39:3 40:1 47:2 |
| **team** 32:21 | 95:17 96:3,10 | 77:8 78:19,25 | 48:24 54:1 |
| 93:18,24 | 97:3,5 99:18 | 80:7 83:11 | 56:24 58:3 |
| **telephone** | 100:10 | 88:13 89:9,14 | 59:9 61:25 |
| 93:25 | **thanks** 15:8 | 89:20 90:25 | 63:18 67:8 |
| **tell** 15:6 44:7 | 16:23 18:21 | 91:3,6 98:15 | 68:17,18 69:18 |
| 60:7 | 27:23 41:20 | 98:21 99:2 | 69:19 77:12 |
| **telling** 60:6 | 96:12 | 100:5 | 78:12,15 83:18 |
| 68:1,14 70:22 | **themes** 56:25 | **thinking** 47:3 | 85:25 87:12 |
| **tenet** 86:14 | **theories** 86:1 | **third** 3:10 10:2 | 95:9 96:6,13 |
| **termination** | **thing** 31:21 | 33:5 62:12 | 100:1 |
| 51:13 | 37:12 60:17 | 63:25 85:7 | **timeline** 66:12 |
| **terms** 20:5,13 | 62:19 77:7 | 92:22 | 66:15 |
| 20:20 41:11 | 90:24 | **thirteen** 47:19 | **timely** 35:16 |
| 48:24 96:22 | **things** 32:19,20 | 47:21 | **times** 15:20 |
| **testify** 51:1 | 33:19 80:7 | **thorough** | 37:21 88:14 |
| **texas** 18:7 | **think** 18:10 | 64:22 | 93:10 |
| **thank** 14:2,8,9 | 19:1,12 23:7 | **thought** 45:11 | **today** 14:22 |
| 14:18 15:5 | 23:20 25:17 | 46:16,17 47:12 | 18:21 19:3 |
| 24:3 25:10 | 31:8,17 34:7 | 58:21 75:13 | 25:1 27:12,14 |
| 27:7,9 28:6,7 | 34:16,20 35:1 | 76:5 88:17 | 27:22 28:2,21 |
| 28:10 31:7 | 35:11 36:3,5 | 97:25 | 28:24 32:24 |
| 32:21 33:22,23 | 36:14,20 39:15 | **thousands** | 34:5 40:24,24 |
| 38:2,10 39:9 | 39:15,16,16 | 61:15 63:3 | 42:9 56:12 |
| 39:11 40:20 | 40:25 44:21 | **three** 19:24 | 68:17,24 70:22 |
| 41:13,18,19 | 47:25 48:3,3,5 | 21:2 24:6 | 70:25 88:1,9 |
| 45:14,16,18 | 48:7,9 49:18 | 28:17 42:17 | 88:24 90:15,19 |
| 46:13 47:22 | 50:1 53:20 | 82:19 84:13 | 91:9 100:1 |
| 48:11 49:1,22 | 54:1,12 57:20 | 85:10 | **today's** 30:5 |
| 50:3,4,6 51:7 | 60:9 62:5,10 | **tied** 58:9 | 91:1 |
| 53:23,25 54:8 | 62:12 63:2 | **time** 17:17,17 | **together** 62:21 |
| 57:12 75:7 | 65:3,9 66:4,16 | 18:21 20:9,12 | 67:2 88:17 |
| 81:5,17 83:13 | 66:20,21 67:20 | 20:19 22:7,11 | 89:23 |
| 83:15,16 86:22 | 67:23 68:22 | 24:5,10 33:4 | |

togut   9:16
token   57:15
told   33:6 57:22
  57:24 58:15
  59:2 98:19
tolled   63:3
took   25:22
  27:18 56:6
  73:12,17 78:4
  79:11,14
top   55:13
topic   68:9
tort   61:19
total   17:8 20:1
  44:18
totally   84:19
touch   57:19
tough   64:13
tougher   33:7,7
town   9:11
  55:22
track   33:12
  95:6
traditional
  21:18
tranche   16:3
transcript
  90:25 91:9,12
  91:18,19 102:4
transcripts
  91:4
transfer   56:10
transferred
  59:21
transformer
  17:20

transparency
  34:8 91:6
trend   17:24
tribunal   51:25
  52:2,4,7,18
trip   38:16
troutman   9:9
true   43:22
  55:15 56:22
  57:16,25 58:1
  58:25 60:6
  63:17 72:15
  91:14 102:4
truly   32:15
trust   46:1
trustee   11:2
  23:13 26:23
  27:8,10 30:6
  30:23 31:8,23
  38:5,7 41:3
  64:17 75:15,19
  78:17 79:6
  80:16 89:11,24
  90:6
trustee's   41:7
  63:9 87:10
try   21:24 60:14
  60:15 68:23
  72:22 73:1
trying   24:18
  33:2 47:6
  57:21 76:13
  81:25 90:9
tuganov   11:10
  97:6,14
tuganov's
  98:13

turetsky   11:21
turning   16:22
turns   60:24
turpin   13:13
  98:20,21,23
  99:2,5,18
tweed   9:1
tweet   72:22
tweeted   72:23
twitter   55:22
two   15:24
  16:17 17:8
  33:2 36:11
  38:2,6 40:1,5
  45:13 48:25
  67:24 68:12
  76:7
type   26:20
typical   49:7
  95:1

## u

u.k.   51:24 52:7
  52:17 58:5,10
u.s.   1:23 11:2
  26:23 27:8,10
  30:6,23 31:8
  31:23 38:5,7
  41:2,7 75:15
  75:19 78:17
  80:16 87:10
  88:10 90:6
u.s.c.   6:21
ubierna   13:12
  39:14
ucc   16:4 29:5
  95:11

ultimately
  47:12 48:23
  97:20
unable   93:2
unbelievably
  72:20
uncertainty
  52:24
uncollaterali...
  58:16,21 59:7
  59:17
uncontested
  25:24
uncovered
  56:2 62:10
  64:19
under   18:20
  20:14 36:19
  51:10 72:13
  74:20 84:24
  93:19 95:4
underlying
  73:8
underpinnings
  56:19
understand
  23:2 47:7 52:5
  56:15 62:16
  67:23 70:14
  76:14,17,17,23
  77:6 79:25
  80:6,6 87:25
  95:23
understanding
  99:10,16
undertaking
  58:14

unfair 82:25
unfamiliar
  86:5
unfortunate
  23:14
unfortunately
  92:18
unique 26:18
united 1:1,12
  11:1 23:12
  34:11,12 58:12
  63:8 64:17
  79:6 86:4
  89:11,24
unlicensed
  58:7
unmute 24:17
  66:7,7 91:22
unnecessarily
  35:22 40:18
  65:14 99:8
unprecedented
  71:7
unrealistic
  84:19
unrepresented
  61:6
unsecured 2:25
  3:7 4:20 5:5,13
  5:20 11:17
  12:2,9 54:6
  63:19 64:24,25
  77:15 79:5
  98:11
unsuccessful
  77:24

unsuspending
  92:25
untimely 35:6
  39:5,7
unusual 34:1
update 16:24
  17:2 18:14
  19:19 20:20
  24:25 95:20
updates 95:22
upload 30:5
urge 23:9
use 68:23 82:1
used 64:19
  71:10 75:3,4,4
user's 16:9
users 15:10,11
  15:13 16:6,14
  16:21
uses 77:15
using 2:1,8,13
  2:18,24 3:6,14
  3:20 4:5,11,17
  5:1,9,17 6:1,9
  25:5 29:20
usual 50:1
  53:14
usually 30:15

**v**

v 85:20
vacation 71:3
valuation 2:4
  26:8,15,17,20
  45:1
value 15:11,16
  16:22 17:21
  18:25 19:4

22:13 25:6
  43:3 44:14
  61:20
varick 11:3
various 55:9
  79:3 87:24
varying 63:12
venable 11:9
  97:13
verification
  92:13,22
veritext 102:20
vermont 10:1
versed 35:13
victor 13:12
video 50:20
  59:13,16
videos 60:7
  72:3
view 30:18
  36:6 37:3 39:2
  41:6 88:19
views 22:25
vigorously
  48:25
vindicate 65:16
violate 78:3
violating 63:9
virtually 25:20
vision 59:13
voice 18:20
  27:14 100:6
volatile 17:15
volume 21:8
  32:13
vote 47:7 65:23
  65:24

voting 23:23
  23:24 43:6
  65:20
voyager 35:10
  35:12,16 36:22
vt 10:3

**w**

w 11:11
wacker 12:10
  13:3
wading 55:8
wages 51:20,21
wait 30:4 36:3
  40:8 78:11
  79:10 80:14
waived 31:3
wales 51:11
wall 58:24
wallets 43:22
  43:23 44:5
walsh 7:9
want 17:25
  19:16 23:21
  27:8,11,24
  28:20 31:24
  32:2,17,21
  33:24 35:22
  37:12,25 38:10
  38:18 40:18
  41:4,16 43:19
  45:15 47:23
  50:23 53:6
  55:13 56:24
  59:8,11 62:25
  63:7 67:6
  68:13,18 69:7
  74:3 75:8

78:23 81:1,3
83:24 90:3,21
91:23
**wanted**  19:23
29:6 38:2
45:18,23 47:9
48:20 69:4,5
76:5 91:1
95:20 97:16
98:23 99:24
**wants**  38:25
80:17 88:23
**washington**
7:15 9:4
**waste**  65:12
**watch**  59:23,24
**watched**  59:11
**watching**  92:2
**watkins**  40:2
**wave**  81:8
**way**  18:8 30:6
65:10,19,20
75:3,5 79:20
89:25 90:11
**we've**  15:23
21:9 22:1,15
22:20 24:4,6,9
28:1,4 33:6,12
34:7 42:6 64:6
65:11 68:9
69:8 81:22,25
82:3,3,5 89:6,9
91:11,13 93:18
93:21 96:7
**weather**  18:21
**website**  55:22
59:14

**week**  15:25
21:23 28:25
66:19 96:9
**weekend**  21:9
89:12
**weekly**  24:24
**weeks**  51:8
59:10 76:7
**weigh**  85:15
**weighting**
95:11
**weinberg**  5:18
**went**  56:11
75:12
**white**  4:18
11:16 12:1,8
48:17 54:5
98:10
**who've**  32:6
34:1,5
**wholly**  71:7
**wi**  8:11
**wide**  61:24
**willing**  65:21
**wind**  23:14
**wish**  39:11
48:12
**wishes**  40:23
51:2 100:12
**withdraw**
15:19,23 92:25
**withdrawal**
15:7,10 16:6
16:16 52:15
92:11,14,17
**withdrawals**
15:14,15 92:8

92:18 96:7
**withdrawn**
15:17,19
**withheld**  36:21
**withhold**  2:10
9:10 42:4,8,24
42:25 43:7,22
44:10,12,13,18
45:7,10,17,25
46:19,19,21
47:14,16,18
48:8 64:7
**withholder**
45:4
**withholding**
29:24
**witness**  65:2
**wohlman**  2:15
51:9,17,19,20
51:24 52:11,15
53:8 101:6
**word**  49:21
86:20
**worded**  30:7
**words**  29:8
45:24 66:7
**work**  21:10
25:3 26:15,20
32:4,22 33:2
37:3,3 38:11
38:12 41:7,7
41:11 45:1
46:9 68:7,15
68:19 90:9
93:20 97:25
**worked**  42:11

**working**  20:4
21:13 22:18
32:7 38:3
45:18 89:9,10
96:7 100:4
**worry**  36:18
**worthy**  91:11
**wrap**  24:21
**wraps**  20:14
**write**  83:24
**written**  84:10
**wrong**  73:19
79:14
**wrote**  82:11
85:1

| x |
|---|
**x**  1:4,10 101:1

| y |
|---|
**y**  91:24
**yeah**  15:1
18:16 31:6
37:18 48:19
67:18 76:4
**years**  40:25
**yep**  54:3
**yesterday**
16:13 19:21,24
21:9 55:14
**yielding**  25:15
**york**  1:2,14
7:22 8:18 9:19
10:10 11:4,12
11:19 29:24
30:10
**young**  39:23

**[zero - zoom]**

| z |
|---|
| **zero**   19:12 |
| **zoom**   2:1,8,13 |
| 2:18,24 3:6,14 |
| 3:20 4:5,11,17 |
| 5:1,9,17 6:1,9 |
| 24:19 34:4,5 |
| 51:1 |

JS 44C/SDNY
REV.
10/01/2020

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**
Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, CDP Investissements Inc.

**DEFENDANTS**
Official Committee of Unsecured Creditors for Celsius Network LLC, et al.

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**
Milbank LLP, 55 Hudson Yards, New York, NY 10001, (212) 530-5000
Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, CA 90071, (213) 489-3939

**ATTORNEYS (IF KNOWN)**
White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, (212) 819-8200

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 158 (appeal from judgment made by Bankruptcy Court), Federal Rules of Bankruptcy Procedure 8001-8005

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [✓] Yes [ ]   Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?   No [x]   Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*          **NATURE OF SUIT**

**TORTS**                    **ACTIONS UNDER STATUTES**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE

**PERSONAL INJURY**
[ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING

[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463 ALIEN DETAINEE
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**CIVIL RIGHTS**
[ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 448 EDUCATION

**PRISONER CIVIL RIGHTS**
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION
[ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690 OTHER

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840 TRADEMARK

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 740 RAILWAY LABOR ACT
[ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[x] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

[ ] 880 DEFEND TRADE SECRETS ACT

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375 FALSE CLAIMS
[ ] 376 QUI TAM
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 485 TELEPHONE CONSUMER PROTECTION ACT
[ ] 490 CABLE/SATELLITE TV
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 896 ARBITRATION
[ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN  x  IN ONE BOX ONLY)* **ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from (Specify District)  ☐ 6 Multidistrict Litigation (Transferred)  ☐ 7 Appeal to District Judge from Magistrate Judge

☐ a. all parties represented

☐ b. At least one party is pro se.

☐ 8 Multidistrict Litigation (Direct File)

*(PLACE AN  x  IN ONE BOX ONLY)* **BASIS OF JURISDICTION**    *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☐ 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☒ MANHATTAN

DATE 05/02/2023        /s/ Dennis F. Dunne
                SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED Mo. _____ Yr. _____)
Attorney Bar Code # 2414373

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)