CASE NO. 1:23-CV-03920-JHR

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

IN RE CELSIUS NETWORK LLC, ET AL.,
*DEBTORS.*

---

COMMUNITY FIRST PARTNERS, LLC, ET AL.,

APPELLANT,

V.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
CELSIUS NETWORK LLC, ET AL.,

APPELLEES.

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
BANKR. CASE NO. 22-10964 (MG)

---

## APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO DISMISS THIS APPEAL

---

May 30, 2023

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, NY 10020

Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        jweedman@whitecase.com

Michael C. Andolina (*pro hac vice* forthcoming)
Gregory F. Pesce (*pro hac vice* forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

Keith H. Wofford
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

Aaron E. Colodny (*pro hac vice* forthcoming)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of
Unsecured Creditors*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................1

BACKGROUND ....................................................................................4

    A.    The Chapter 11 Cases..............................................................4

    B.    The Customer Claims Order ....................................................5

    C.    The Class Claim Motion and Class Claim Order...................6

ARGUMENT ......................................................................................10

I.     THE CLASS CLAIM ORDER IS NOT A FINAL ORDER .......10

II.    THE CLASS CLAIM ORDER IS NOT SUBJECT TO
INTERLOCUTORY REVIEW ................................................11

III.   APPELLANTS LACK STANDING TO APPEAL .....................16

    A.    Appellants Are Not Aggrieved Persons ...............................16

    B.    Appellants Improperly Assert the Rights of Third Parties.................20

CONCLUSION ...................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*In re AMR Corp.*,
  2022 WL 1556398 (S.D.N.Y. May 16, 2022) ....................................................18

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013) ...................................................................3, 16, 17

*In re Bernard L. Madoff Inv. Securities LLC*,
  721 F.3d 54 (2d Cir. 2013) ................................................................................4

*In re Celsius Network LLC*,
  2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023)................................................2, 12

*In re Celsius Network LLC*,
  645 B.R. 165 (Bankr. S.D.N.Y. 2022)..............................................................3, 18

*In re Celsius Network LLC*,
  649 B.R. 87 (Bankr. S.D.N.Y. 2023)..........................................................5, 6, 19

*Chateaugay Corp. v. Iles*,
  930 F.2d 245 (2d Cir. 1991) ..........................................................................10, 11

*In re China Med. Techs., Inc.*,
  2013 WL 6667789 (S.D.N.Y. Dec. 17, 2013) ...............................................14, 16

*In re Cross Media Mktg. Corp.*,
  2007 WL 2743577 (S.D.N.Y. Sept. 19, 2007) ....................................................14

*In re DBSD N. Am., Inc.*,
  634 F.3d 79 (2d Cir. 2011) ..............................................................................17

*Freeman v. J. Reg. Co.*,
  452 B.R. 367 (S.D.N.Y. 2010) ....................................................................18, 20

*In re Gucci*,
  126 F.3d 380 (2d Cir. 1997) ..........................................................................16, 17

*In re Integrated Res., Inc.*,
  3 F.3d 49 (2d Cir. 1993) ................................................................................10, 11

# TABLE OF AUTHORITIES

*In re Johns-Manville, Corp.*,
   843 F.2d 636 (2d Cir. 1988) ...........................................................16, 17, 20, 21

*In re Liddle & Robinson, LLP*,
   2020 WL 4194542 (S.D.N.Y. July 21, 2020)................................................12, 13

*In re Major Model Mgt. Inc.*,
   641 B.R. 302 (Bankr. S.D.N.Y. 2022)..................................................................15

*In re Musicland Holding Corp.*,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007)......................................................14, 15, 16

*In re Ocean Rig UDW Inc.*,
   585 B.R. 31 (S.D.N.Y. 2018) ...............................................................17, 18, 19

*In re Old Mkt. Group Holdings Corp.*,
   2023 WL 2207667 (S.D.N.Y. Feb. 24, 2023) ...........................12, 13, 14, 15, 16

*In re Perry H. Koplik & Sons, Inc.*,
   377 B.R. 69 (S.D.N.Y. 2007) .......................................................................13, 16

*Picard v. Est. of Madoff*,
   464 B.R. 578 (S.D.N.Y. 2011) ...........................................................................12

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   2022 WL 4357548 (S.D.N.Y. Sept. 19, 2022) ...................................................12

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
   757 F.3d 79 (2d Cir. 2014) .................................................................................20

*Ritzen Group, Inc. v. Jackson Masonry, LLC*,
   140 S. Ct. 582 (2020)................................................................................1, 2, 10

## STATUTES AND RULES

11 U.S.C. § 1103 .....................................................................................................21

28 U.S.C. § 158......................................................................................1, 10, 11

28 U.S.C. § 1292(b) ............................................................ 2, 3, 11, 12, 13, 15, 16

Fed. R. Bankr. P. 3001 ...........................................................................................21

## <u>TABLE OF AUTHORITIES</u>

Fed. R. Bankr. P. 9014(c) ........................................................................1, 9

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of Celsius Network LLC and its affiliated debtors (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**Celsius**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") respectfully moves to dismiss this appeal.[1]

## **PRELIMINARY STATEMENT**

This appeal seeks to reverse the Bankruptcy Court's order permitting the Committee to file a class claim pursuant to Federal Rule of Bankruptcy Procedure 9014(c) asserting non-contract claims against certain of the Debtors on behalf of all account holders.  The Committee has now filed that claim and a motion to certify the class under Federal Rule of Bankruptcy Procedure 7023, which incorporates Federal Rule of Civil Procedure 23 by reference.

This appeal by the Debtors' equity holders should be dismissed for at least three reasons.  *First*, the Class Claim Order[2] is not a final order that Appellants may appeal as of right under 28 U.S.C. § 158(a)(1).[3]  "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching

---

[1] "Dkt. " refers to the docket in this appeal, and "Bankr. Dkt." refers to the docket in Case No. 22-10964 (MG) (Bankr. S.D.N.Y.).

[2] *Order Granting the Committee's Class Claim Motion* [Bankr. Dkt. 2496].

[3] Despite the plainly interlocutory nature of the Class Claim Order, Appellants failed to seek leave to appeal.  *See* 28 U.S.C. § 158(a)(3) (providing that parties may only appeal interlocutory orders "with leave of the court").

bankruptcy case." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). The Class Claim Order does no such thing. The Class Claim Order authorized the Committee only to *file* a class claim. That's it. Appellants have not filed their objection to the class claim. The Bankruptcy Court has not ruled on the class claim. The Bankruptcy Court has not even certified a class. In other words, several potentially dispositive events remain pending in the Bankruptcy Court that may moot this appeal before this Court has a chance to rule on it. Accordingly, the Class Claim Order does not "definitively dispose of" any dispute in the Bankruptcy Court and is not a final order subject to immediate appeal. *Id.*

**Second**, the Class Claim Order is not suitable for interlocutory appeal. This Court may, in its discretion, accept an appeal from an interlocutory bankruptcy court order when all three factors identified in 28 U.S.C. § 1292(b) are present. But none of those factors exists here, much less all three. First, "an immediate appeal from the order" would not "materially advance the ultimate termination" of the litigation over account holders' non-contract claims. 28 U.S.C. § 1292(b). Those claims exist and will be brought (and litigated) regardless of whether the Bankruptcy Court permitted the Committee to bring them as a class claim. The Bankruptcy Court's order simply authorized the first step in how those claims may be asserted. Second, there is no "substantial ground for difference of opinion" regarding the order. *Id.* A "substantial ground for difference of opinion" exists where there is a

question about whether the Bankruptcy Court applied the proper legal standard. Here, there is no doubt the Bankruptcy Court correctly applied controlling Second Circuit precedent in entering the Class Claim Order. Finally, the Class Claim Order does not "involve[] a controlling question of law" because whether the Committee can file a class claim is not solely a legal question, but rather depends on the unique facts of this case. *Id.* Judge Oetken has already ruled in this case that similar questions are not the proper subject of interlocutory appeals. *In re Celsius Network LLC*, 2023 WL 2648169, at *1-2 (S.D.N.Y. Mar. 27, 2023) (applying section 1292(b) factors and dismissing interlocutory appeal).

*Third*, Appellants lack standing to appeal the Class Claim Order. Appellants are not "person[s] aggrieved" by the Bankruptcy Court's decision to allow the Committee to file a class claim, as is required for bankruptcy appellate standing. *In re Barnet*, 737 F.3d 238, 241-42 (2d Cir. 2013). Appellants likely stand to recover nothing from the Debtors, which are most "likely insolvent" and cannot pay their creditors—much less their shareholders—in full for a number of reasons, including that creditors have non-contract claims against the entity where Appellants made their equity investment. *In re Celsius Network LLC*, 645 B.R. 165, 174 (Bankr. S.D.N.Y. 2022). The ability of the Committee to assert those claims in a collective fashion, if they can meet the applicable requirements, does not directly harm Appellants. Appellants' other arguments that were asserted before the Bankruptcy

3

Court largely pertain to whether the Committee's filing of the class claim violates the Committee's fiduciary duties to the Debtors' account holders, not Appellants. Appellants do not have third party standing to enforce the rights of other creditors of the Debtors, who did not object to the motion themselves. *In re Bernard L. Madoff Inv. Securities LLC*, 721 F.3d 54, 58 (2d Cir. 2013).

## BACKGROUND

### A.     The Chapter 11 Cases

On July 13, 2022, the Debtors filed chapter 11 cases before the Bankruptcy Court.  The Debtors included Celsius Network Limited ("**CNL**"), which was the indirect parent company of Celsius Network LLC ("**LLC**").  On July 27, 2022, the United States Trustee appointed the Committee, which is composed of seven account holders that transferred digital assets to the Debtors prior to the petition date.

The Debtors attributed their bankruptcy filing to severe losses sustained as a result of "poor asset deployment decisions" and a downturn in the cryptocurrency markets in early to mid-2022.[4]  Investigations by the Bankruptcy Court-appointed examiner and the Committee revealed that to be, at best, misleading.  The Debtors always operated at a deficit, never generated sufficient revenue to pay the rewards they promised to account holders, and failed to operate their business in a safe and

---

[4] *Declaration in Support of Debtors' First Day Motions* [Bankr. Dkt. 23] (the "**First Day Decl.**") ¶ 10.

prudent manner.[5]  In fact, the Debtors engaged in speculative, risky, and unsound investments, which were inconsistent with how the Debtors marketed themselves to account holders and which ultimately decimated the Debtors' liquidity and necessitated their bankruptcy filings.[6]

As of the petition date, the Debtors were hopelessly insolvent, faced a shortfall in customer assets exceeding $1 billion, and could not pay account holders and other creditors in full.[7]  As a result, the Debtors' current proposed plan of reorganization does not propose to pay anything to shareholders, including Appellants.[8]

### B.     The Customer Claims Order

CNL had originally been the only Debtor entity party to the terms of use.  In the late-summer of 2021, as part of an attempt to avoid regulatory action in the United Kingdom, the Debtors changed the entity that was a party to the terms of use from CNL to "Celsius Network LLC and its Affiliates."  *In re Celsius Network LLC*, 649 B.R. 87, 92 (Bankr. S.D.N.Y. 2023) (the "**Customer Claims Order**").

On March 9, 2023, the Bankruptcy Court resolved a dispute about which Debtor entities were liable for contract claims arising from the terms of use.  The Bankruptcy Court held that "only Celsius Network LLC is liable for customer

---

[5] *Final Examiner's Report* [Bankr. Dkt. 1956] at 3-33.

[6] *Id.*

[7] First Day Decl. ¶ 16.

[8] *Plan of Reorganization* [Bankr. Dkt. 2358] (the "**Plan**") Art. III.B.13.

contract claims under the Terms of Use" and "affiliates of LLC [such as CNL] are excluded from contract liability under the Terms of Use."[9]

The Bankruptcy Court's ruling was limited to contract claims. It explained that "the Terms of Use do not limit Customers (or the Committee) from asserting non-contract claims against CNL, or against other Debtor or non-Debtor affiliates, such as claims for fraud, negligent misrepresentation, or other statutory or common law claims." *In re Celsius Network LLC*, 649 B.R. at 91.

### C.    The Class Claim Motion and Class Claim Order

Following the Customer Claims Order, the Committee filed a motion seeking authority to file a class proof of claim on behalf of all customers, asserting statutory and common law non-contract claims against CNL and other Debtor entities, including claims for fraudulent and negligent misrepresentation.[10] The vast majority of the Debtors' customers are retail investors, many of whom do not live in the United States. It would be infeasible and burdensome on the Debtors and the Bankruptcy Court—and would impose substantial litigation costs—to require every account holder to file individual claims.[11] It is also unnecessary because all account holders have common non-contract claims based on the Debtors' prepetition

---

[9] *Order Regarding Which Debtor Entities Have Liability For Customer Contract Claims Under the Terms of Use* [Bankr. Dkt. 2265] ¶ 1.

[10] *Motion of the Official Committee of Unsecured Creditors for Authority to File a Class Claim* [Bankr. Dkt. 2399].

[11] *Id.* ¶¶ 1-7, 26-29.

misconduct.[12] Many account holders (who are largely *pro se*) also lack resources to file well-pleaded and particularized non-contract claims by the claims bar date, which could result in the forfeiture of otherwise viable claims and unequal recoveries favoring the limited number of account holders able to timely file claims.[13]

Account holders and the Debtors supported the Committee's motion.  For instance, Ignat Tuganov, an account holder of the Debtors (who is now acting as a class representative), filed a response stating that he did "not object to the filing of an appropriate class claim on behalf of all account holders to protect customers and to avoid the administrative burden and attendant costs and delay of potentially tens or hundreds of thousands of additional proofs of claim being filed."[14]  Additional account holders, including Rebecca Gallagher (who is now acting as a class representative), noted that "bringing non-contract claims—such as those for fraudulent inducement, fraudulent misrepresentation, the violation of consumer protection laws, and more, one customer at a time—was a daunting prospect," and that they were "supportive of the [Committee's] collective process to enable

---

[12] *Id.* ¶¶ 1-7, 27, 38.

[13] *Id.* ¶ 27.

[14] *Ignat Tuganov's Response to the Committee's Class Claim Motion* [Bankr. Dkt. 2474] ¶ 17.  Mr. Tuganov requested modifications to the Committee's proposed order granting the class claim motion, including preserving account holders' rights to opt-out of the class and any settlement. The Committee incorporated Mr. Tuganov's requested revisions in the form of order the Bankruptcy Court approved.

customers to assert non-contract claims against [CNL] and other affiliates."[15]  No account holder objected to the motion.  In addition, the Debtors—the defendants to any non-contract claims—did not object to the filing of a class claim, but rather acknowledged that a collective process was necessary.[16]

In the face of unanimous creditor and Debtor support for the motion, Appellants objected.  They claimed to be protecting the interests of account holders and argued that the Committee had conflicts of interest precluding it from representing the class, that it could not adequately represent the class, and that it lacked standing under the Bankruptcy Code to file a class claim.[17]  They also argued that the factors governing the use of class claims in bankruptcy did not favor allowing the Committee to file the class claim and that the Committee would be unable to certify the class under Rule 23.[18]

On April 18, 2023, the Bankruptcy Court overruled Appellants' objection and entered the Class Claim Order, authorizing the Committee to file a class claim.[19]

---

[15] *Immanuel Herrmann, Daniel Frishberg, and Rebecca Gallagher's Response to the Committee's Class Claim Motion* [Bankr. Dkt. 2476] at 1.

[16] Apr. 18, 2023 Hr'g Tr. [Bankr. Dkt. 2576-B] (the "**Hr'g Tr.**") at 81:17-82:2 (explaining that, while the Debtors reserved rights to review the class claim that is filed, the Debtors "do believe that the [class claim] process that the Committee is proposing is very reasonable and frankly will aid efficiency").

[17] *Series B Preferred Holders' Objection to the Committee's Class Claim Motion* [Bankr. Dkt. 2467] (the "**Preferred Shareholder Obj.**") ¶¶ 7-10, 25-27, 32-38.

[18] *Id.* ¶¶ 11-31.

[19] Class Claim Order ¶ 3.

The Bankruptcy Court explained that Bankruptcy Rule 9014(c) grants bankruptcy courts the "discretion" to allow class proofs of claim in appropriate cases.[20]   The Bankruptcy Court then found that "equitable considerations weigh strongly in favor of granting this motion."[21]   It specifically noted that "[d]enying the motion is likely to result in only the sophisticated and represent[ed] claimants submitting their claims prior to the amended bar date to the detriment of the great majority of creditors.  That outcome goes against the fundamental tenet of bankruptcy, which is a fair and equitable distribution of assets to creditors."[22]   Finally, the Bankruptcy Court highlighted that Appellants' objection was "premature," as they could "litigate strenuously whether the class should be certified" after the class claim is filed.[23]

On April 28, 2023, the Committee filed the class claim on behalf of Mr. Tuganov, Ms. Gallagher, and Thomas DiFiore, the co-chair of the Committee, in their individual and representative capacities.[24]   On May 17, 2023, the Committee filed a motion seeking certification of the class claim under Rule 23.[25]   The Bankruptcy Court has not yet ruled on the Committee's class certification motion.

---

[20] Hr'g Tr. at 84:1-14.

[21] *Id.* at 85:15-86:15

[22] *Id.*

[23] *Id.* at 86:16-19.

[24] *Notice of Filing of Class Proof of Claim* [Bankr. Dkt. 2556].

[25] *Motion of the Official Committee of Unsecured Creditors to Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors* [Bankr. Dkt. 2670].

Class certification and merits-based discovery and litigation are in their early stages in the Bankruptcy Court.

## ARGUMENT

This appeal should be dismissed on at least three grounds: (1) the Class Claim Order is not a final order appealable as of right; (2) discretionary, interlocutory review of the Class Claim Order is inappropriate on the facts and circumstances here; and (3) Appellants lack standing to appeal.

## I.     THE CLASS CLAIM ORDER IS NOT A FINAL ORDER

Appellants cannot appeal the Class Claim Order as of right because it is not a final order within the meaning of 28 U.S.C. § 158.  District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" and "with leave of the court, from other interlocutory orders and decrees."  28 U.S.C. § 158(a).  "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Group*, 140 S. Ct. at 586. In other words, an order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief," to be a final order.  *In re Integrated Res.*, *Inc.*, 3 F.3d 49, 53 (2d Cir. 1993).  "An order allowing a class proof of claim to be filed is not a final order within the meaning of section 158(d)." *Chateaugay Corp. v. Iles*, 930 F.2d 245, 248 & n.2 (2d Cir. 1991) (recognizing that

10

an order allowing a class claim to be filed did not "finally determine[] the question whether the Claimants may proceed as a class").

The Class Claim Order is not a final order.  As in *Chateaugay*, the Class Claim Order only "allow[ed] a class proof of claim to be filed."  *Id.*  It did nothing more. It left decisions on class certification and the merits of the claim to be adjudicated at a later date, after appropriate discovery, briefing, and evidentiary presentations by all interested parties, including Appellants.  Litigation over class certification is in its early stages in the Bankruptcy Court, and litigation on the merits of the class claim has not even started.  Because the Class Claim Order leaves these substantial issues open, it does not "completely resolve all of the issues pertaining to [the class claim], including issues as to the proper relief," and is not a final order appealable as of right.  *Integrated Res.*, 3 F.3d at 53.

## II.   THE CLASS CLAIM ORDER IS NOT SUBJECT TO INTERLOCUTORY REVIEW

Appellants did not seek leave to appeal the interlocutory Class Claim Order; however, even if they did, such appeal would not be proper.  Under 28 U.S.C. § 158(a)(3), this Court has discretion to exercise jurisdiction over appeals from "interlocutory orders and decrees" issued by a bankruptcy court.  When considering whether to grant leave to appeal in bankruptcy cases, courts apply the standard set forth in 28 U.S.C. § 1292(b), which asks whether the order "(1) involves a controlling question of law (2) over which there is a substantial ground for difference

of opinion and (3) if an immediate appeal would materially advance the ultimate termination of the litigation." *In re Celsius Network LLC*, 2023 WL 2648169, at *1 (discussing section 1292(b) factors and dismissing interlocutory appeal). "All three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal." *In re Old Mkt. Group Holdings Corp.*, 2023 WL 2207667, at *4 (S.D.N.Y. Feb. 24, 2023).

Appellants face a "high bar" to proceed with an interlocutory appeal. *Id.* at *1. "[E]ven if the three criteria [in section 1292(b) are] met, the court retains the discretion to determine whether leave to appeal is warranted." *In re Platinum Partners Value Arbitrage Fund L.P.*, 2022 WL 4357548, at *3 (S.D.N.Y. Sept. 19, 2022). "[L]eave to appeal from interlocutory orders should be granted only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment." *Picard v. Est. of Madoff*, 464 B.R. 578, 582 (S.D.N.Y. 2011). Accordingly, district courts must exercise "great care" before finding that a party cleared the high bar for leave to file an interlocutory appeal. *Platinum Partners Value Arbitrage Fund*, 2022 WL 4357548, at *3.

The Court should not permit Appellants to proceed with an interlocutory appeal. ***First***, an immediate appeal from the Class Claim Order will not advance the ultimate termination of the litigation. This factor primarily concerns judicial

efficiency and "is considered the most important of the section 1292(b) factors." *In re Liddle & Robinson, LLP*, 2020 WL 4194542, at *5 (S.D.N.Y. July 21, 2020). An immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial." *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 74 (S.D.N.Y. 2007). An appeal does not advance the termination of litigation if the appeal's disposition "simply invite[s] further litigation" among the parties. *Old Mkt. Group Holdings*, 2023 WL 2207667, at *6.

Here, an interlocutory appeal will not promote judicial efficiency or advance the ultimate termination of the litigation over account holders' non-contract claims. The Class Claim Order did not resolve any questions on the merits of account holders' non-contract claims. Instead, it only addressed a procedural question: should the Committee be permitted to seek class certification of account holders' non-contract claims, or should another party be permitted to file the class claim or all 600,000 account holders be forced to individually file common non-contract claims? Regardless of the outcome of this appeal, litigation over the merits of account holders' non-contract claims will need to occur. And a decision by this Court reversing the Class Claim Order would "simply invite further litigation" among the parties because it would result in either another party asserting the class claim or the disaggregation of the class claim into as many as 600,000 individual

actions.  *Id.*  That outcome would only delay a final adjudication of account holders'

non-contract claims and would not advance the termination of the litigation.

  **Second**, there is no substantial ground for difference of opinion regarding the

Class Claim Order.  "A substantial ground for a difference of opinion exists where

there is genuine doubt as to the correct applicable legal standard relied on in the

order."  *Old Mkt. Group Holdings*, 2023 WL 2207667, at *5.  "Genuine doubt" as

to the appropriate legal standard is present where "(1) there is conflicting authority

on the issue, or (2) the issue is particularly difficult and of first impression" for the

Second Circuit.  *In re China Med. Techs., Inc.*, 2013 WL 6667789, at *11 (S.D.N.Y.

Dec. 17, 2013).  "Merely claiming that the bankruptcy court's decision was incorrect

is insufficient to establish substantial ground for difference of opinion."  *In re Cross

Media Mktg. Corp.*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007).

  Here, no substantial ground for difference of opinion exists because the

Bankruptcy Court applied the correct legal standard.  The question of whether

bankruptcy courts should permit the filing of a class claim is not novel in the Second

Circuit, and there is no conflicting authority on the issue in this circuit.  The

Bankruptcy Court cited the leading authority on this topic in the Second Circuit—*In*

*re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007).[26]  Appellants

agree that this is the controlling standard.[27]

*Musicland* explained that the decision whether to permit a class proof of claim

is "committed to the court's discretion" and informed by three factors: whether the

class claim will unduly delay administration of the case, whether a class was certified

prepetition, and whether claimants received notice of the deadline to file bankruptcy

claims.  *Id.* at 650, 654-55.  *Musicland* has been consistently followed by courts in

the Second Circuit in the more than 15 years since it was published.  *See, e.g.*, *In re*

*Major Model Mgt. Inc.*, 641 B.R. 302, 320 (Bankr. S.D.N.Y. 2022) (applying

*Musicland* factors).  And the Bankruptcy Court faithfully applied it here, explaining

why each of the *Musicland* factors supported allowing the Committee to file the class

claim.[28]  There is no substantial ground for a difference of opinion about the legal

standard that the Bankruptcy Court applied in entering the Class Claim Order, and

the Bankruptcy Court applied it correctly.

**Third**, the Class Claim Order does not involve any controlling question of

law.  For purposes of an interlocutory appeal under 28 U.S.C. § 1292(b), a "question

of law" must "be a pure question of law that can be decided quickly and cleanly

---

[26] Hr'g Tr. at 84:1-86:15.

[27] *Appellants' Statement of Issues on Appeal* [Bankr. Dkt. 2651] ("**Appellants' Statement of Issues**") at 12 (citing "the *Musicland* factors").

[28] Hr'g Tr. at 84:1-86:15.

without detailed study of the record." *In re Old Mkt. Group Holdings*, 2023 WL 2207667, at *4. "Questions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under section 1292(b)." *Perry*, 377 B.R. at 74.

But, here, the dispositive question in this appeal is whether the Bankruptcy Court abused its discretion applying the *Musicland* factors to authorize the filing of a class claim. *Musicland*, 362 B.R. at 654. The Bankruptcy Court made a series of discretionary, fact-bound decisions that the *Musicland* factors supported the use of a class claim.[29] To review those decisions, this Court will have to take a "detailed study of the record" and the unique facts of this case, rather than review any pure questions of law. *China Med. Techs.*, 2013 WL 6667789 at *10. The interlocutory appeal factors therefore do not support permitting this appeal to proceed.

## III.   APPELLANTS LACK STANDING TO APPEAL

### A.   Appellants Are Not Aggrieved Persons

Under long-established Second Circuit law, a party to a bankruptcy case can appeal a bankruptcy court's order "only if the order directly affects his pecuniary interests." *In re Johns-Manville, Corp.*, 843 F.2d 636, 642 (2d Cir. 1988); *accord In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997). Mere "potential harm" from a bankruptcy court order is "insufficient to justify appellate standing." *Barnet*, 737

---

[29] *Id.*

F.3d at 243.  Instead, an appellant must show that its injury is both "'direct' and 'financial.'"  *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011).

The "aggrieved person" test is "stricter" than Article III standing rules that govern non-bankruptcy civil litigation: an "injury-in-fact" is sufficient for Article III standing but not for "aggrieved person" standing.  *Gucci*, 126 F.3d at 388.  As a result, not every party in interest with a right to be heard in the bankruptcy court has standing to prosecute an appeal.  *Barnet*, 737 F.3d at 242.  Otherwise, "marginal parties," *Johns-Manville Corp.*, 843 F.2d at 642 n.3, could mire bankruptcy cases in "endless appeals," *Barnet*, 737 F.3d at 243, and "sound the death knell of the orderly disposition of bankruptcy matters."  *Gucci*, 126 F.3d at 388.

Pursuant to the "aggrieved person" standard, appellate courts regularly dismiss shareholders' appeals from bankruptcy court orders in cases where a debtor will not be able to pay its creditors in full, much less make any distributions to shareholders.  For instance, in *In re Ocean Rig UDW Inc.*, the district court dismissed a shareholder's appeal from a bankruptcy order after finding that the debtor "was insolvent."  585 B.R. 31, 37–38 (S.D.N.Y. 2018).  It explained that, because of the debtor's insolvency, the estate's "total value . . . would go to [its] creditors *pro rata*, with no value left for its pre-restructuring shareholders."  *Id.*  As a result, the appellant, "as a purported shareholder, did not stand to lose anything from, and thus had no pecuniary interest in, [the debtor's] restructuring" and lacked standing to

appeal. *Id.* The Second Circuit affirmed. 764 Fed. App'x 46, 48 (2d Cir. 2019) (affirming order dismissing appeal because appellant did not "show that, as a shareholder, she has a pecuniary interest in the reorganization of the insolvent Cayman Islands corporation"); *accord In re AMR Corp.*, 2022 WL 1556398, at *6 (S.D.N.Y. May 16, 2022), *aff'd*, 2023 WL 2770228 (2d Cir. Apr. 4, 2023) (dismissing shareholder's appeal because shareholder could not explain how the appealed order would "have an adverse effect on the final distributions on equity payouts to shareholders"); *Freeman v. J. Reg. Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010) (dismissing shareholder's appeal and noting, "here where various classes of creditors received less than their full recoveries, the appellant, as an equity holder, has no basis for recovery and, accordingly, no pecuniary interest at stake").

Appellants are not aggrieved persons entitled to appeal the Class Claim Order because the order does not directly and financially injure them. As the Bankruptcy Court has noted, the Debtors are "likely insolvent." *Celsius Network*, 645 B.R. at 174. The Debtors' liabilities to account holders and other creditors exceed their assets by billions of dollars.[30] As a result, the Debtors' proposed plan of reorganization proposes to pay creditors a fraction of their claims and to pay nothing to shareholders, including Appellants.[31] Whether the Class Claim Order is affirmed

---

[30] First Day Decl. ¶ 16.
[31] Plan Art. III.B.13.

or reversed will not change that fact.  Accordingly, Appellants do "not stand to lose anything from, and thus ha[ve] no pecuniary interest in" entry of the Class Claim Order.  *Ocean Rig UDW*, 585 B.R. at 38.

Even if the Debtors were not insolvent, Appellants would still lack standing to appeal the Class Claim Order.  The Class Claim Order does not directly or financially impact their rights.  The Class Claim Order simply authorizes the Committee to file the class claim.  The Class Claim Order neither certifies the class, nor adjudicates the merits of the class claim.  Appellants will have a full and fair opportunity to "litigate strenuously" in the Bankruptcy Court over class certification and the class claim's merits.[32]  Appellants might—*potentially*—suffer a direct and financial injury *only if* the Bankruptcy Court determines that the Debtors are solvent and able to pay their creditors in full, and that the class claim should be allowed in an amount exceeding the Debtors' equity value otherwise distributable to Appellants.  But that harm relies on numerous, uncertain rulings that the Bankruptcy Court may issue in the future.  Accordingly, the Bankruptcy Court has noted that, as a result those rulings, Appellants "may very well end up recovering nothing."  *In re Celsius Network LLC*, 649 B.R. at 91.

For these reasons, Appellants are not aggrieved persons with standing to appeal.

---

[32] Hr'g Tr. at 86:16-19.

## B.      Appellants Improperly Assert the Rights of Third Parties

Appellants cannot avoid dismissal by asserting the rights of third parties—namely, the rights of account holders who uniformly supported entry of the Class Claim Order.  As the Second Circuit has explained, longstanding principles of third-party standing preclude a litigant from appealing a bankruptcy order "based on the rights of third parties who apparently favor" the appealed order.  *Johns-Manville Corp.*, 843 F.2d at 644; *see also Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (explaining that prudential standing rules "bar[] litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves").  To be heard on appeal, a party to a bankruptcy case must "assert his own legal rights and interests," not those of others.  *Freeman*, 452 B.R. at 371.

As they did in the Bankruptcy Court, Appellants oppose the Class Claim Order based on account holders' rights.  Appellants' statement of issues on appeal asks whether the Bankruptcy Court erred in allowing the Committee to file the class claim "even though the Committee cannot act on behalf of individual creditors and even though the Committee is not and cannot be a class member."[33]  Appellants raised the same arguments in the Bankruptcy Court.  *See Preferred Shareholder Obj.* ¶ 27 ("[S]erving as a class representative for the account holders is fundamentally at odds with the Committee's fiduciary duties.  The Committee cannot fulfill the

---

[33] Appellants' Statement of Issues at 12.

obligation to fairly and adequately represent the proposed class."); *id.* ¶ 34 ("[T]he Committee is inherently conflicted, and therefore cannot prosecute [the class claim] without breaching its fiduciary duties.").

These issues go to whether the Committee may act as the class representatives' authorized agent under Bankruptcy Rule 3001 to file and prosecute the class claim, and whether the Committee is otherwise authorized under section 1103 of the Bankruptcy Code to act on behalf of all account holders. Yet no account holder complained about the Committee acting on their behalf through the class claim. Appellants lack standing to appeal an order based on allegations that the Committee's actions violate the rights of account holders—***all of whom*** "favor[ed]" entry of the Class Claim Order. *Johns-Manville Corp.*, 843 F.2d at 644.

## CONCLUSION

For the reasons set forth above, the Committee respectfully requests that the Court dismiss the appeal.

Dated:   May 30, 2023
         New York, New York


**WHITE & CASE LLP**

By:   */s/ Samuel P. Hershey*
      David M. Turetsky
      Samuel P. Hershey
      Joshua D. Weedman
      1221 Avenue of the Americas
      New York, NY 10020

Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        jweedman@whitecase.com

Michael C. Andolina (*pro hac vice* forthcoming)
Gregory F. Pesce (*pro hac vice* forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

Keith H. Wofford
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

Aaron E. Colodny (*pro hac vice* forthcoming)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the type-volume limit of Federal Rule of Bankruptcy Procedure 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains less than 5,200 words.  This document complies with the typeface and type-style requirements of Federal Rule of Bankruptcy Procedure 8013(f)(2) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:    May 30, 2023

New York, New York

**WHITE & CASE LLP**

By:    */s/ Samuel P. Hershey*
Samuel P. Hershey